**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 20-80545-CIV-MARRA**

SHARON PROLOW and
MARK LEMMERMAN,
on behalf of themselves and
all others similarly situated,

                        Plaintiffs,
            v.

AETNA LIFE INSURANCE
COMPANY,

                        Defendant.

_____/

## SECOND AMENDED CLASS ACTION COMPLAINT[1]

Plaintiffs Sharon Prolow and Mark Lemmerman, individually and on behalf of all others similarly situated, bring this Class Action Complaint against Defendant Aetna Life Insurance Company ("Aetna"), pursuant to Rule 23 of the Federal Rules of Civil Procedure, and allege as follows:

### INTRODUCTION

1.      This is a class action on behalf of beneficiaries of ERISA plans administered by Aetna who were denied Proton Beam Radiation Therapy ("PBRT") because of Aetna's uniform application of an unlawful medical policy to deny as experimental or investigational such treatment for cancer, despite PBRT being

---

[1] This amended complaint is being filed with written consent of Aetna Life Insurance Company pursuant to Rule 15(a)(2) of the Federal Rules of Civil Procedure. It has been amended to add an additional class representative and individual allegations pertaining to him.

recognized for decades by the medical community as an established, medically appropriate treatment for cancer, including breast cancer and prostate cancer.

2.      Instead of acting solely in the interests of the participants and beneficiaries of its health insurance plans, upon information and belief, Aetna denied coverage for PBRT to treat cancer because, on average, PBRT is significantly more expensive than traditional Intensity Modulated Radiotherapy ("IMRT") or other treatments.

3.      In denying coverage, Aetna follows its Clinical Policy Bulletin No. 270 ("Proton Beam, Neutron Beam, and Carbon Ion Radiotherapy"), which was initially created in 1998 and reviewed most recently on July 29, 2019, (the "PBRT Clinical Policy Bulletin"). While Aetna's PBRT Clinical Policy Bulletin considers PBRT "medically necessary" for persons 21 years old or younger for all types of cancer, it mandates the denial of coverage for PBRT as "experimental and investigational" to treat most cancers on patients over 21 years old for all plans insured or administered by Aetna.

4.      When relying on its PBRT Clinical Policy Bulletin to reach its desired outcome, Aetna ignores or disregards recent clinical studies demonstrating the effectiveness of PBRT, the patient's medical records, and the recommendations of treating physicians that request PBRT as the proper treatment for their patients.

5.      By promulgating and applying its PBRT Clinical Policy Bulletin, Aetna has sacrificed the interests of insureds like Ms. Prolow and Class members so that it can artificially decrease the number and value of claims it is required to pay from its own assets (i.e., with respect to fully insured plans as well as self-funded plans with

2

12W4126

stop-loss provisions requiring Aetna to cover benefits above a certain threshold) and the assets of its employer-sponsored customers (i.e., with respect to other self-funded plans), as well as to profit from the interest income in accounts maintained on behalf of self-funded plans.

6.     Under ERISA, Plaintiffs and Class members are entitled to equitable and declaratory relief enjoining the application of Aetna's PBRT Clinical Policy Bulletin and awarding such other relief the Court finds appropriate.

## THE PARTIES

7.     Plaintiff Sharon Prolow is a citizen of Florida who resides in Palm Beach Gardens, Palm Beach County, Florida.

8.     Plaintiff Mark Lemmerman is a citizen of Florida who resides in Hobe Sound, Martin County, Florida.

9.     Defendant, Aetna Life Insurance Company, is a Connecticut corporation with its principal place of business in Hartford, Connecticut.

10.    Aetna offers health benefits plans to employers and individuals in Florida and across the country.

11.    Aetna is a global health care benefits company, which, along with its wholly owned and controlled subsidiaries, offers, insures, underwrites, and administers health benefits plans, including Plaintiffs' current health benefits plan, as detailed herein.  Aetna offers, insures, underwrites, and administers such health benefits plans for consumers nationwide, including within Palm Beach County and Martin County.

## JURISDICTION AND VENUE

12W4126

12.     Aetna's actions in administering employer-sponsored health care plans, making coverage and benefit determinations under the terms and conditions of the health care plans, or processing appeals of coverage and benefit determinations under the terms and conditions of the health care plans are governed by ERISA.  This Court has jurisdiction of this case under 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 1132(e) (ERISA).

13.     This Court has personal jurisdiction over Aetna pursuant to § 48.193(1), Florida Statutes, because Aetna has operated, conducted, engaged in, and carried on a business in Florida and has an office in Florida.  Aetna is also subject to personal jurisdiction pursuant to § 48.193(4), Florida Statutes, because it contracted to insure Plaintiffs within Florida at the time of contracting.

14.     Venue is proper in this judicial district under 28 U.S.C. § 1391(b)(1), because Plaintiffs reside in this judicial district, and under 28 U.S.C. § 1391(b)(2) and 1391(d), because a substantial part of the events or omissions giving rise to Plaintiffs' and Class members' claims occurred in this judicial district.

## FACTUAL ALLEGATIONS

**A. Aetna Acts as a Fiduciary for its ERISA Plans.**

15.     Many health plans underwritten or administered by Aetna, including the Plaintiffs' health plans, are employee welfare benefit plans sponsored by private-sector employers governed by ERISA ("ERISA plans").

16.     The ERISA health insurance plans administered by Aetna are either fully insured or self-funded. With respect to fully insured plans, Aetna both administers the plan by making all benefit determinations and pays the benefits out

12W4126

of its own assets.  With respect to self-funded plans, Aetna administers the plan, but the underlying plan sponsor or employer through which the insurance is provided is generally responsible for reimbursing Aetna for the benefit payments. Self-funded plans with stop-loss provisions require Aetna to pay from its own assets benefits above a certain threshold.  Thus, with both fully insured plans and self-funded plans with stop-loss provisions, a structural conflict of interest exists where Aetna both determines whether a beneficiary is eligible for benefits and also pays benefits out of its own funds. Aetna also has a conflict of interest as it profits through the increased interest generated (and retained by Aetna) in self-funded accounts when PBRT treatment is denied.

17.     When processing benefits for a self-funded plan, Aetna makes all benefit determinations and authorizes benefit checks to be issued out of bank accounts that Aetna controls.  Periodically, Aetna will notify the sponsors of the self-funded plans of the need to replenish their accounts so that benefits can be paid.  But Aetna nevertheless continues to control these accounts and is fully responsible for processing the insurance claims and making the determination whether to issue the check from these accounts.

18.     Thus, irrespective of whether a particular ERISA plan is fully insured or self-funded, Aetna is the proper party for Plaintiff, and the putative Class, to sue because Aetna—not the underlying plan sponsor or employer—made all the relevant decisions and wielded the authority to issue benefit checks under the ERISA plans.

19.     During all relevant times, Aetna acted as a fiduciary with respect to its administration of ERISA plans.  In particular, Aetna interpreted and applied ERISA

12W4126

plan terms, adjudicated and handled benefit claims, made coverage and benefit decisions under the ERISA plans within its discretion, and provided payment under the ERISA plans to participants/beneficiaries and their providers. Accordingly, Aetna was required to comply with the requirements ERISA imposes on fiduciaries.

20.     ERISA requires a fiduciary such as Aetna to discharge its duties consistent with 29 U.S.C. § 1104, which requires (among other things) that it do so "solely in the interest of the participants and beneficiaries" and for the "exclusive purpose" of "providing benefits to participants and their beneficiaries" and paying reasonable expenses of administering the plan. It must do so with the "care, skill, prudence, and diligence" and in accordance with the terms of the plans it administers. Aetna violated these requirements.

21.     As an ERISA fiduciary, Aetna receives medical records evidencing a beneficiary's need for PBRT, including assessments and recommendations by the beneficiary's treating physicians and medical studies and materials demonstrating that PBRT is not experimental for the treatment of the beneficiary.

22.     Part of Aetna's fiduciary responsibility to its beneficiaries is as a claims administrator.

23.     Rather than afford its beneficiaries a full and fair review of the medical records and materials presented by them or their treating physicians, Aetna conducts a claim adjudication and handling process with a singular focus—denial.

24.     In some areas of the United States, the cost to administer PBRT far exceeds the cost for traditional IMRT for the same condition; the cost for PBRT can be double that of traditional IMRT.

25.     Aetna did not act "solely in the interests of the participants and beneficiaries" when it denied coverage for PBRT.

26.     Rather, upon information and belief, Aetna denies coverage for PBRT to treat certain cancers because, on average, PBRT is more expensive than traditional IMRT or other treatments.

27.     In violating its fiduciary duties during the claims adjudication and handling process and wrongfully denying claims, Aetna elevated its own interests above the interests of plan participants and beneficiaries, reflecting its conflict of interest when determining whether to cover PBRT.  By promulgating and applying its PBRT Clinical Policy Bulletin and ignoring information provided by plan participants and their treating physicians, Aetna sacrificed the interests of insureds like Plaintiffs and the Class so that it could artificially decrease the number and value of claims it was required to pay from its own assets (i.e., with respect to fully insured plans and self-funded plans with stop-loss provisions requiring Aetna to cover benefits above a certain threshold) and the assets of its employer-sponsor customers (i.e., with respect to other self-funded plans); moreover, by prioritizing the assets of its employer-sponsor customers, Aetna also advanced its own interests in retaining and expanding its business with such customers.

**B. Proton Beam Radiation Therapy.**

28.     PBRT is a procedure that uses protons to deliver a curative radiation dose to a tumor, while reducing radiation doses to healthy tissues and organs, which results in fewer complications and side effects than traditional IMRT.

29.     With PBRT, protons deposit their energy over a very small area called the

12W4126

"Bragg peak."  The Bragg peak can be used to target high doses of proton beams to a tumor, while doing less damage to normal tissues in front of and behind the tumor.  The concentration of proton beams enables patients to tolerate higher total doses of radiotherapy compared with photons, which are used for traditional IMRT.

30.     There is overwhelming evidence that PBRT is safe and effective and is a generally accepted standard of medical practice for the treatment of cancer, including breast cancer, within the medical community.

31.     PBRT has been around and well-accepted for over 30 years.  The Food and Drug Administration ("FDA") approved PBRT in 1988 with the following specific statement of indications for intended use: "The [Proton Therapy System] is a medical device designed to produce and deliver proton beam for the treatment of patients with localized tumors and other conditions susceptible to treatment by radiation."

32.     The National Association for Proton Therapy, Alliance for Proton Therapy and other nationally-recognized medical organizations, and numerous meticulous peer-reviewed studies have validated the safety and effectiveness of PBRT.

33.     Additionally, many respected cancer facilities and providers, including Baptist Hospital's Miami Cancer Institute, MD Anderson Cancer Center, Loma Linda University, University of Florida, Harvard Medical School/Massachusetts General Hospital, University of Maryland, Northwestern University, Mayo Clinic, Emory University, Case Western Reserve University, Washington University in St. Louis, University of Washington, New York Proton Center, and the Texas Center for Proton Therapy recommend and use PBRT on a regular basis.

34.     Other insurers, including Medicare, cover PBRT as a safe and effective

8

12W4126

treatment for cancer that is not "experimental."

### C. Aetna's PBRT Clinical Policy Bulletin.

35.     Aetna drafted and implemented the PBRT Clinical Policy Bulletin based on outdated medical evidence and ignoring accepted medical peer-reviewed evidence that it is safe and effective for the treatment of cancer. The revisions of the PBRT Clinical Policy Bulletin throughout the years has been entirely divorced from careful analysis and application of medical science.

36.     Prior to 2013, Aetna considered PBRT medically necessary for non-metastatic prostate cancer in individuals with an intact prostate. In August 2013, the PBRT Clinical Policy Bulletin was revised to state that PBRT was not medically necessary for localized, non-metastatic prostate cancer.  The PBRT Clinical Policy Bulletin in effect from January 2020 to October 9, 2020 likewise stated that Aetna did not consider PBRT medically necessary for individuals with localized prostate cancer. The review of that policy took place on March 12, 2020.  On October 9, 2020, Aetna stated that PBRT and IMRT are clinically equivalent for localized cancer of an intact prostate.

37.     There are no medical studies that support that PBRT would be a proven, safe, effective, and medically necessary treatment for non-metastatic prostate cancer before 2013, but not after 2013.

38.     Additionally, the PBRT Clinical Policy Bulletin provides that Aetna considers PBRT "experimental and investigational" for most types of cancers in "adults (over age 21) . . . because its effectiveness for these indications has not been established"; on the other hand, Aetna considers PBRT "medically necessary" to treat

12W4126

all "[m]alignancies in children (21 years of age and younger)," as well as certain listed types of tumors. Aetna's PBRT Clinical Policy Bulletin does not consider PBRT "experimental and investigational" when treating children (21 years of age and younger), and approves PBRT for these patients. There are no medical studies that support a conclusion that PBRT would be a proven, safe and effective treatment for the same cancer in one age group, but not the other.

39.     Aetna employs the PBRT Clinical Policy Bulletin as part of its prior authorization review and adjudication of members and beneficiaries' claims to deny claims for coverage of PBRT as "experimental or investigational" or not "medically necessary" without ever engaging in any reasonable review of clinical records prior to rendering the determination of coverage.

40.     In other words, Aetna cites the PBRT Clinical Policy Bulletin to categorically deny prior authorization requests and claims for reimbursement for PBRT to most cancers on the grounds that PBRT is not medically necessary without regard to the recommendation and assessment of the patients' own oncologist or medical records.

<u>**INDIVIDUAL ALLEGATIONS**</u>

**A. Plaintiff Sharon Prolow.**

   **1. Ms. Prolow's Plan.**

41.     Ms. Prolow participates in an employee welfare benefit health plan (the "Plan") established by Ms. Prolow's employer, AllianceBernstein P.L. ("AllianceBernstein"). The Plan is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.

12W4126

42.     While the Plan is offered and funded by AllianceBernstein, it is administered by Aetna.  Aetna exercises discretionary authority or discretionary control with respect to the management of the Plan and has discretionary authority or discretionary responsibility in the administration of the Plan.

43.     Ms. Prolow continues to be a beneficiary of The Plan.

44.     The Plan includes a list of "Exclusions," which are deemed to be services that are not covered under the Plan. One such Exclusion is for services deemed "Experimental or Investigational" (the "E/I Exclusion"). "Experimental or Investigational" is defined as:

> A drug, device, procedure, or treatment that is found to be experimental or investigational because:
> - There is not enough outcome data available from controlled clinical trials published in the peer-reviewed literature to validate its safety and effectiveness for the illness or injury involved
> - The needed approval by the FDA has not been given for marketing
> - A national medical or dental society or regulatory agency has stated in writing that it is experimental or investigational or suitable mainly for research purposes
> - It is the subject of a Phase I, Phase II or the experimental or research arm of a Phase III clinical trial. These terms have the meanings given by regulations and other official actions and publications of the FDA and Department of Health and Human Services
> - Written protocols or a written consent form used by a facility provider state that it is experimental or investigational.

45.     Radiation therapy is a procedure, and therefore, is not subject to FDA regulation.

46.     The accelerators and other equipment used to generate and deliver PBRT are regulated by the FDA.  On February 22, 1988, the FDA approved the Proton Therapy System, and designated it as a Class II Device for radiological treatment.

11

12W4126

This classification was codified at 21 C.F.R. § 892.5050 and describes the Proton Therapy System as a "device that produces by acceleration high energy charged particles (e.g., electrons and protons) intended for use in radiation therapy." Thus, at least as of February 22, 1988, PBRT no longer fit within the E/I Exclusion to the Plan.

47.    PBRT has long been recognized as an established, medically appropriate treatment for the treatment of cancer, including breast cancer.

**2. Aetna's Denial of Coverage for PBRT for Ms. Prolow.**

48.    Ms. Prolow was first diagnosed with breast cancer in October 2017. She underwent a double mastectomy in November 2017 and remained cancer-free until August 2018, when she suffered a recurrence of her breast cancer.

49.    Although cancer recurrence rates vary based on several factors, overall, there is a 30% rate of recurrence of breast cancer in survivors.[2]

50.    After undergoing chemotherapy in late 2018, Ms. Prolow's radiation oncologist, Dr. Marcio Fagundes of Miami's Cancer Institute ("MCI") at Baptist Health South Florida, recommended that Ms. Prolow undergo PBRT as an alternative to IMRT because, among other things, the likelihood of achieving a better outcome was greater for PBRT.

51.    Aetna denied Ms. Prolow's request for pre-authorization of PBRT, and Ms. Prolow appealed the decision.

52.    On March 6, 2019, Aetna upheld the denial of Ms. Prolow's request for pre-authorization of PBRT based on its application of the PBRT Clinical Policy

---

[2] *See* Blevins Primeau, Andrea, PhD, MBA, Cancer Recurrence Statistics, available at https://www.cancertherapyadvisor.com/home/tools/fact-sheets/cancer-recurrence-statistics/

12W4126

Bulletin:

> We reviewed information received about the members condition and circumstances.  We used the [PBRT Clinical Policy Bulletin, or "CPB"].  Based on CPB criteria, and the information we have, we are denying coverage for proton beam radiotherapy.  Clinical studies have not proven that this procedure is effective for treatment of the member's condition.

53.     On March 14, 2019, Dr. Fagundes appealed on Ms. Prolow's behalf, asking that Aetna reconsider its decision to deny coverage or payment for PBRT on the basis of the PBRT Clinical Policy Bulletin.

54.     Dr. Fagundes asked that Aetna overturn its decision because of the FDA's approval of proton therapy on February 22, 1988.  He further noted that Ms. Prolow "is a perfect example of a very complex scenario" that would benefit from PBRT in order to avoid "significant cardiac exposure."

55.     Moreover, Dr. Fagundes emphasized that "Baptist Health in an effort to minimize price as a factor in any coverage determination and to allow decision making to focus on the clinical efficacy and best treatment for the patient has set the charge for proton beam therapy at the same rate as for IMRT."

56.     Aetna refused to overturn its denial of PBRT coverage to Ms. Prolow. In denying coverage, Aetna failed to discuss or even acknowledge the information provided by Dr. Fagundes supporting PBRT, including the many studies verifying its safety and efficacy.  Indeed, Aetna provided Ms. Prolow with no basis for its negative coverage determination aside from its reliance—to the exclusion of all contrary evidence—on Aetna's PBRT Clinical Policy Bulletin.

57.     Aetna adjudicated the claim and handled Ms. Prolow's claim adjustment process without a full and fair review of the materials provided by Ms. Prolow and her

treating physicians.

58.     At every step of the claims and appeals process, Aetna exercised the discretionary authority given to it by AllianceBernstein to interpret the Plan terms and make claims decisions.  Ms. Prolow then requested an external review of Aetna's decision to deny her request for PBRT to treat her breast cancer.

59.     On April 1, 2019, the so-called independent review organization, Medical Care Management Corporation ("MCMC"), rejected Ms. Prolow's request for reconsideration of Aetna's denial and concluded that PBRT was not covered.

60.     During the external appeal process, MCMC did nothing more than rubber stamp Aetna's denial decision without conducting an independent evaluation of whether PBRT is a proven and effective treatment for breast cancer.

61.     MCMC and other so-called independent, or external, review organizations are, in fact, paid by and unilaterally selected by Aetna. As a result, to continue their business relationship with Aetna, these organizations have a disincentive to overrule Aetna's denial decisions.

62.     Pursuing all avenues of appeals available from Aetna caused Ms. Prolow and her family significant stress and anguish, particularly as it further delayed her receipt of life-saving PBRT treatment. Because of Aetna's delays during the appeals process, Ms. Prolow did not begin PBRT until around 3 months after concluding chemotherapy.

63.     Ms. Prolow ultimately decided to follow the recommendation of her radiation oncologist and received PBRT to treat her breast cancer, with success. She was forced to personally pay approximately $85,000 for the treatment out-of-pocket.

14

12W4126

Aetna has not reimbursed Ms. Prolow for the PBRT treatment. Additionally, because she received PBRT treatment 100 miles away from her home, she had to stay at a hotel throughout her treatment, which was unreimbursed. As a result, in all, Ms. Prolow incurred out-of-pocket expenses of around $100,000 for PBRT treatment.

64.     If Ms. Prolow's breast cancer recurs again and her oncologist recommends PBRT treatment she will again follow her oncologist's advice.

**B. Plaintiff Mark Lemmerman.**

**1. Mr. Lemmerman's Plan.**

65.     Mr. Lemmerman participates in an employee welfare benefit health plan (the "Plan") established by his employer, Covanta Projects LLC ("Covanta"). The Plan is governed by the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.

66.     While the Plan is offered and funded by Covanta, it is administered by Aetna.  Aetna exercises discretionary authority or discretionary control with respect to the management of the Plan and has discretionary authority or discretionary responsibility in the administration of the Plan.

67.     Mr. Lemmerman continues to be a beneficiary of The Plan.

68.     The Plan includes a list of "Exclusions," which are deemed to be services that are not covered under the Plan. One such Exclusion is for services deemed "Experimental or Investigational" (the "E/I Exclusion"). "Experimental or Investigational" is defined as:

> A drug, device, procedure, or treatment that is found to be experimental or investigational because:
> - There is not enough outcome data available from controlled clinical trials published in the peer-reviewed literature to

validate its safety and effectiveness for the illness or injury involved

- The needed approval by the FDA has not been given for marketing
- A national medical or dental society or regulatory agency has stated in writing that it is experimental or investigational or suitable mainly for research purposes
- It is the subject of a Phase I, Phase II or the experimental or research arm of a Phase III clinical trial. These terms have the meanings given by regulations and other official actions and publications of the FDA and Department of Health and Human Services
- Written protocols or a written consent form used by a facility provider state that it is experimental or investigational.

69.     Radiation therapy is a procedure, and therefore, is not subject to FDA regulation.

70.     The accelerators and other equipment used to generate and deliver PBRT are regulated by the FDA.  On February 22, 1988, the FDA approved the Proton Therapy System, and designated it as a Class II Device for radiological treatment. This classification was codified at 21 C.F.R. § 892.5050 and describes the Proton Therapy System as a "device that produces by acceleration high energy charged particles (e.g., electrons and protons) intended for use in radiation therapy."  Thus, at least as of February 22, 1988, PBRT no longer fit within the E/I Exclusion to the Plan.

71.     PBRT has long been recognized as an established, medically appropriate treatment for the treatment of cancer, including prostate cancer.

**2. Aetna's Denial of Coverage for PBRT for Mr. Lemmerman.**

72.     Mr. Lemmerman was first diagnosed with non-metastatic prostate cancer in January 2020.

73.     Mr. Lemmerman's radiation oncologists recommended that he undergo PBRT as an alternative to IMRT to avoid delivering radiation to critical normal organs

16

12W4126

and tissues, including the bowel, the bladder, and the rectum.

74.    Aetna denied Mr. Lemmerman's request for pre-authorization of PBRT in January 2020. Mr. Lemmerman appealed.

75.    Aetna received Mr. Lemmerman's first appeal on February 14, 2020, and upheld the decision within one day—on February 15.

76.    Aetna received Mr. Lemmerman's second appeal on April 10, 2020, and again upheld the decision within one day—on April 11.

77.    In support of his appeal, Mr. Lemmerman submitted a letter from his oncologist, Dr. Scott A. Gasiorek.

78.    Dr. Gasiorek provided the opinion that, in the case of Mr. Lemmerman, PBRT "is medically necessary and will provide him with a good chance of cure while simultaneously limiting his chances of developing significant acute and late treatment-related morbidities to the greatest extent possible."

79.    Dr. Gasiorek explained:

> It should also be noted that the clinical appeal of and desire to employ proton therapy is motivated by the same rationale which has underlain virtually all advances in radiation therapy, namely, the desire to reduce to the lowest extent possible radiation of healthy normal tissue. Radiation is a known toxin and there is no benefit whatsoever to depositing radiation in tissue uninvolved with cancer.

80.    Aetna refused to overturn its denial of PBRT coverage to Mr. Lemmerman. In denying coverage, Aetna failed to discuss or even acknowledge the information provided by Dr. Gasiorek supporting PBRT, including the many studies verifying its safety and efficacy.  Indeed, Aetna provided Mr. Lemmerman with no basis for its negative coverage determination aside from its reliance—to the exclusion of all contrary evidence—on Aetna's PBRT Clinical Policy Bulletin.

12W4126

81.     Mr. Lemmerman then requested an external review of Aetna's decision to deny his request for PBRT to treat his prostate cancer.

82.     On June 17, 2020, the so-called independent review organization, Medical Care Management Corporation ("MCMC"), concluded that PBRT was not covered.

83.     During the external appeal process, MCMC did nothing more than rubber stamp Aetna's denial decision without conducting an independent evaluation of whether PBRT is a proven and effective treatment for prostate cancer. Neither Aetna nor MCMC properly applied the terms in Mr. Lemmerman's Plan.

84.     Aetna adjudicated the claim and handled Mr. Lemmerman's claim adjustment process without a full and fair review of the materials provided by him and his treating physicians.

85.     At every step of the claims and appeals process, Aetna exercised the discretionary authority given to it by Covanta to interpret the Plan terms and make claims decisions.

86.     In each decision to uphold the denial of Mr. Lemmerman's request for pre-authorization of PBRT, Aetna cited its PBRT Clinical Policy Bulletin as the basis for its decision. MCMC likewise cited Aetna's PBRT Clinical Policy Bulletin as the basis for its decision.

87.     There were no significant clinical developments in PBRT from the time Aetna denied Plaintiff's second appeal of PBRT in April 2020, until October 9, 2020, the effective date of the revisions to the PBRT Policy, which recognized that PBRT and IMRT are clinically equivalent for localized cancer of an intact prostate.

18

12W4126

88.     MCMC and other so-called independent, or external, review organizations are, in fact, paid by and unilaterally selected by Aetna. As a result, to continue their business relationship with Aetna, these organizations have a disincentive to overrule Aetna's denial decisions.

89.     Notwithstanding Aetna's denial of coverage, Mr. Lemmerman proceeded to have PBRT, with positive results. However, Mr. Lemmerman ultimately was forced to personally pay approximately $ 35,000 (after deducting applicable and negotiated discounts from his treatment provider) for PBRT out-of-pocket. Aetna has not reimbursed Mr. Lemmerman for the treatment.

90.     Although cancer recurrence rates vary based on several factors, there is about a 20-30% rate of recurrence of prostate cancer in survivors.[3]

91.     If Mr. Lemmerman's prostate cancer recurs again and his oncologist recommends PBRT treatment he will again follow his oncologist's advice.

## CLASS ACTION ALLEGATIONS

92.     The proposed PBRT Class meets all requirements of Fed. R. Civ. P. 23(a) and 23(b).

**A. The Class.**

93.     Plaintiffs bring claims on their own behalf and on behalf of a nationwide "PBRT Class," defined as:

> All participants or beneficiaries in ERISA Plans underwritten or administered by Aetna who, citing the application of the PBRT Clinical Policy Bulletin, were denied health insurance coverage for Proton Beam

---

[3]     *See* Johns Hopkins Medicine, Prostate Cancer Prognosis, available at https://www.hopkinsmedicine.org/health/conditions-and-diseases/prostate-cancer/prostate-cancer-prognosis.

12W4126

Radiation Therapy to treat their cancer, on grounds that included the assertion that it was "experimental or investigational" or not "medically necessary."  The PBRT Class includes both persons whose post-service claims for reimbursement were denied and persons whose pre-service requests for authorization were denied.

94.    The definition of "experimental or investigational" services or treatment in Aetna's health insurance policies at all relevant times has been substantially similar to the definition in the Plan and is interpreted by Aetna as having the same meaning as, comparable exclusions included in the Aetna plans applicable to all Class members.

95.    The PBRT Class excludes (a) Aetna, including any entity or division in which Aetna has a controlling interest, as well as its agents, representatives, officers, directors, employees, trustees, and other entities related to, or affiliated with Aetna, (b) Class Counsel, and (c) the Judge to whom this case is assigned and any members of the Judge's staff or immediate family.

**B. Numerosity.**

96.    The members of the PBRT Class are so numerous that joinder of all members is impractical.

97.    While the precise number of members in this Class is known only to Aetna, Aetna is the ERISA fiduciary and has issued the policies providing coverage under tens of thousands of employer-sponsored ERISA plans, and PBRT has become so widespread that at a minimum, requests numbering in the hundreds, if not thousands, must have been submitted to and denied by Aetna for coverage of this therapy.

98.    The PBRT Class is ascertainable because its members can be readily

identified using Aetna's claims data.  PBRT therapy is described with a discrete set of procedure codes under the Current Procedural Terminology ("CPT") promulgated by the American Medical Association.  Accordingly, Class members can be readily and objectively ascertained through use of records maintained by Aetna.

99.     Finally, PBRT Class members are dispersed geographically throughout the United States, such that joiner of all members is impracticable.

**C. Predominance of Common Issues.**

100.     This action satisfies the requirements of Fed. R. Civ. P. 23(a)(2) and 23(b)(3) because questions of law and fact that have common answers predominate over questions affecting only individual Class members.   These include, without limitation:

      a.   Whether PBRT therapy is an "experimental or investigational" service or treatment;

      b.   Whether the Aetna PBRT Clinical Policy Bulletin is based on outdated medical evidence;

      c.   Whether Aetna improperly denied coverage for PBRT treatment under its plans' E/I Exclusion;

      d.   Whether Aetna acted as an ERISA fiduciary when it adjudicated claims of Plaintiffs and class members;

      e.   Whether Aetna categorically applied the Aetna PBRT Clinical Policy Bulletin to deny coverage to PBRT Class members;

      f.   Whether PBRT Class members' claim denials were based in whole or in part on the Aetna PBRT Clinical Policy Bulletin;

12W4126

g.  Whether Aetna breached its fiduciary duty to PBRT Class members by failing to consider or not granting the proper weight to information provided by PBRT Class members and their treating physicians to Aetna during the claims adjudication and handling process;

h.  Whether Aetna's application of the Aetna PBRT Clinical Policy Bulletin constituted a violation of ERISA; and

i.  Whether PBRT Class members are entitled to the relief sought if Plaintiffs establishes liability.

**D. Typicality.**

101.    Plaintiffs' claims are typical of the claims of PBRT Class members because Plaintiffs are beneficiaries of an ERISA Plan administered by Aetna, they submitted claims for coverage of PBRT for treatment of their cancers, and, like other PBRT Class members, Aetna denied their claims based on the PBRT Clinical Policy Bulletin while failing to conduct a full and fair review of the information provided them and their treating physicians during the claim process.

**E. Adequacy of Representation.**

102.    Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs' interests do not conflict with the interests of the members of the Class. Further, Plaintiffs have retained counsel who are competent and experienced in complex class action litigation, and Plaintiffs and their counsel intend to prosecute this action vigorously on behalf of the Class members and have the financial resources to do so.  Neither Plaintiffs nor their counsel have any interest adverse to those of the Class members.

12W4126

**F. Superiority.**

103.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(1) because the prosecution of separate actions by individual Class members would create a risk of inconsistent or varying adjudications that could establish incompatible standards of conduct for Aetna.

104.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(2) because by applying a uniform policy treating PBRT as "experimental, investigational or unproven," Aetna has acted and refused to act on grounds that apply generally to the Class, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct towards Class members, and making final injunctive relief or corresponding declaratory relief appropriate respecting the proposed Class as a whole.

105.    This action satisfies the requirements of Fed. R. Civ. P. 23(b)(3) because a class action is superior to other available methods for the fair and efficient adjudication of this controversy.   Questions of law and fact common to the Class members predominate over any questions affecting only individual members.

106.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all Class members is impracticable.  Further, because the unpaid benefits denied Class members are small relative to the expense and burden of individual litigation, it would be impossible for the members of the Class to redress individually the harm done to them, such that most or all Class members would have no rational economic interest in individually controlling the prosecution of specific actions, and the burden imposed on the judicial system by individual litigation by even a small fraction of the Class would be

enormous, making class adjudication the superior alternative under Fed. R. Civ. P. 23(b)(3)(A).

107.    The conduct of this action as a class action presents far fewer management difficulties, far better conserves judicial resources and the parties' resources, and far more effectively protects the rights of each Class member than would piecemeal litigation. Compared to the expense, burdens, inconsistencies, economic infeasibility, and inefficiencies of individualized litigation, the challenges of managing this action as a class action are substantially outweighed by the benefits to the legitimate interests of the parties, the court, and the public of class treatment in this court, making class adjudication superior to other alternatives, under Fed. R. Civ. P. 23(b)(3)(D).

## COUNT I

### IMPROPER DENIAL OF BENEFITS
### ON BEHALF OF PLAINTIFFS AND THE CLASS

108.    Plaintiffs incorporate by reference paragraphs 1 through 107 as if fully stated herein.

109.    This count is brought pursuant to 29 U.S.C. § 1132(a)(1)(B).

110.    Aetna denied the insurance claims for PBRT submitted by Plaintiffs and other Class members in violation of the terms of the Plan and the other Aetna plans that insure members of the Class. Aetna denied these claims based on its E/I Exclusion, which does not properly apply to PBRT.

111.    PBRT is neither experimental nor investigational.

112.    Plaintiffs and Class members have been harmed by Aetna's improper

12W4126

benefit denials because they were deprived of insurance benefits they were owed.

113.    Plaintiffs and Class members seek the relief identified in the Prayer for Relief to remedy this claim.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs demand judgment in their favor and against Aetna as follows:

i.    Certifying the Class, as set forth in this Complaint, and appointing Plaintiffs as Class Representatives and undersigned counsel as Class Counsel;

ii.    Declaring that Aetna wrongfully denied benefits for PBRT treatment to Plaintiffs and members of the Class.

iii.    Declaring that Aetna's claims adjudication and handling of Plaintiffs and PBRT Class members' claims fails to adequately consider all relevant and important information before making a claim determination;

iv.    Awarding Plaintiffs and PBRT Class members their unpaid benefits and ordering Aetna to create a common fund out of which it will make payment, with interest, of any unpaid benefits to Plaintiffs and PBRT Class members;

v.    In the alternative, ordering Aetna to reprocess Plaintiffs' and PBRT Class members' claims for pre-authorization or reimbursement of PBRT for the treatment of cancer without the application of the PBRT Clinical Policy Bulletin and granting full weight to information provided to Aetna by Plaintiffs, PBRT Class members, and their treating physicians.

25

12W4126

vi.     Ordering Aetna to institute a claims process for future claims that does
        not apply the PBRT Clinical Policy Bulletin and grants full and fair
        weight to information provided to Aetna by Plaintiffs, PBRT Class
        members and their treating physicians.

vii.    Awarding Plaintiffs disbursements and expenses of this action, including
        reasonable attorneys' fees pursuant to 29 U.S.C. § 1132(g)(1), in amounts
        to be determined by the Court; and

viii.   Granting such other and further relief as is just and proper.

DATED: April 28, 2021.

Respectfully submitted,

**COLSON HICKS EIDSON**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
E-mail: eservice@colson.com

**Stephanie A. Casey**
Stephanie A. Casey, Esq.
Florida Bar No. 97483
scasey@colson.com

– and –

**KOZYAK TROPIN & THROCKMORTON,
LLP**

2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

By: **Maria D. Garcia**
     Harley S. Tropin
     Florida Bar No. 241253
     Email: hst@kttlaw.com

26

12W4126

Maria D. Garcia
Florida Bar No. 58635
Email: mgarcia@kttlaw.com
Robert Neary
Florida Bar No. 81712
Email: rn@kttlaw.com
Frank A. Florio
Florida Bar No. 1010461
Email: fflorio@kttlaw.com

*Counsel for Plaintiffs and the Putative Class*

12W4126