**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 20-80545-CIV-MARRA**

SHARON PROLOW and
MARK LEMMERMAN,
on behalf of themselves and
all others similarly situated,

                      Plaintiffs,

      v.

AETNA LIFE INSURANCE
COMPANY,

                    Defendant.

_____/

**<ins>PLAINTIFFS' MOTION FOR PARTIAL SUMMARY JUDGMENT</ins>**

Pursuant to the Court's Amended Scheduling Order (ECF No. 77), Fed. R. Civ. P. 56, and Local Rule 56.1, Plaintiffs Sharon Prolow and Mark Lemmerman submit this motion for partial summary judgment on Aetna's liability for the wrongful denial of Plaintiffs' claims.

### INTRODUCTION

In 2019 and 2020, Plaintiffs Sharon Prolow and Mark Lemmerman were faced with news any person dreads—a cancer diagnosis. For Sharon Prolow, it meant that a double mastectomy she had undergone the year before had not prevented her breast cancer from coming back. She had another surgery to remove the recurrent cancer followed by six cycles of chemotherapy. For Mark Lemmerman, it meant facing and accepting a cancer diagnosis for the first time. Prior to receiving the diagnosis, he assured himself the results of his tests would be negative because he considered himself a healthy person. The months following his diagnosis were "mental anguish."

In the case of both Plaintiffs, a team of radiation oncologists determined that PBRT was their best shot at beating their cancer and continuing to live a healthy life. Both Plaintiffs submitted claims for coverage of Proton Beam Radiation Therapy ("PBRT") for the life-saving cancer treatment recommended by the doctors. Both Plaintiffs' claims were denied by Aetna, citing the same Aetna policy, Clinical Policy Bulletin No. 270 ("CPB No. 270").

The Honorable Robert N. Scola, Jr. has remarked about PBRT:

> It is undisputed among legitimate medical experts that proton radiation therapy is not experimental and causes much less collateral damage than traditional radiation. **To deny a patient this treatment, if it is available, is immoral and barbaric**.

Order of Recusal, *Cole v. United Healthcare Ins. Co*., No. 19-cv-21258 (S.D. Fla. Apr. 29, 2019) (ECF No. 6) (emphasis added). Aetna's denial of PBRT to Ms. Prolow and Mr. Lemmerman was, at best, wrong and unreasonable. Aetna applied more stringent criteria than the terms in Plaintiffs' Plans and ignored the evidence presented by Plaintiffs' radiation oncologists for a singular purpose—to find a way to deny the claims.

Plaintiffs have filed this class action, individually and on behalf of others who were similarly denied PBRT on the basis of CPB No. 270, for damages and/or injunctive relief, including that Aetna reprocess class members' claims for PBRT. At this stage of proceedings in accordance with the Court's Amended Scheduling Order (ECF No. 77), Plaintiffs respectfully request that this Court enter summary judgment in their favor and find that Aetna wrongfully denied their claims for PBRT.

<u>**FACTUAL BACKGROUND**</u>

**I.    Plaintiffs' Plans.**

Sharon Prolow and Mark Lemmerman participated in employee welfare benefit health plans established by their respective employers. (SOF[1] ¶ 23, 30.) A document titled "Benefit Plan Prepared Exclusively for AllianceBernstein L.P. Choice POS II" establishes Ms. Prolow's plan (the "Prolow Plan"). (*Id.* ¶ 24.) A document titled "Benefit Plan Prepared Exclusively for Covanta Projects LLC Aetna Choice POS II" establishes Mr. Lemmerman's plan (the "Lemmerman Plan"). (*Id.* ¶ 31.)

The Plans each cover "medically necessary" health care services, which are defined the same in both Plans as follows:

> Health care services that a provider exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are:
> - In accordance with generally accepted standards of medical practice
> - Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease
> - Not primarily for the convenience of the patient, physician, or other health care provider
> - Not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease

(*Id.* ¶ 42–43.) Additionally, the Plans each contain an exclusion from coverage for "experimental or investigational" treatments. (*Id.* ¶ 45–46.) The Plans contain the same definition of "Experimental or Investigational" (the "E/I Exclusion"):

> A drug, device, procedure, or treatment that is found to be experimental or investigational because:
> - There is not enough outcome data available from controlled clinical trials published in the peer-reviewed literature to validate its safety and effectiveness for the illness or injury involved
> - The needed approval by the FDA has not been given for marketing
> - A national medical or dental society or regulatory agency has stated in writing that it is experimental or investigational or suitable mainly for research purposes
> - It is the subject of a Phase I, Phase II or the experimental or research arm of a Phase III clinical trial. These terms have the meanings given by regulations and other official actions and publications of the FDA and

---

[1] Plaintiffs' Statement of Undisputed Material Facts in support of this Motion is hereinafter cited as "SOF."

Department of Health and Human Services
- Written protocols or a written consent form used by a facility provider state that it is experimental or investigational.

(*Id*. ¶ 46.)

## II.     Proton Beam Radiation Therapy.

Proton Beam Radiation Therapy is an FDA-approved procedure that uses protons to deliver a curative radiation dose to a tumor, while reducing radiation doses to healthy tissues and organs, in some cases by up to 80% compared to intensity-modulated radiation therapy ("IMRT"), thus minimizing damage to adjacent normal tissues. (*See* SOF ¶ 1–12.)  The concentration of proton beams enables patients to tolerate higher total doses of radiotherapy compared with photons, which are used for traditional radiation therapy, but reduces the risk of radiation-induced cancers, heart disease, or other damage to healthy tissues. (*Id*. ¶ 1–8.) Thus, PBRT has been shown to be particularly useful in treating tumors near vital organs or structures. (*Id*. ¶ 9.)

## III.    Plaintiffs' Diagnoses, Treatment, and Claims Denials.

### A.  Sharon Prolow.

Ms. Prolow was first diagnosed with breast cancer in October 2017. (SOF ¶ 48.) She underwent a double mastectomy in November 2017 and remained cancer-free until August 2018, when she suffered a recurrence of her breast cancer. (*Id*. ¶ 49.)



(*Id*. ¶ 51–52.) Ms. Prolow's team of specialists at Miami's Cancer Institute ("MCI") at Baptist Health South Florida, recommended that she undergo PBRT because

. (*Id*. ¶ 53–54, 58–59, 65–67.)

On March 4, 2019, Dr. Fagundes, Ms. Prolow's radiation oncologist, made a request to Aetna for pre-authorization of PBRT for the treatment of Ms. Prolow's breast cancer (*Id*. ¶ 55.) Aetna denied the request on March 6 on the basis that the treatment was "experimental or investigational," citing CPB No 270. (*Id*. ¶ 56.) On March 14, 2019, Dr. Fagundes appealed Aetna's decision on Ms. Prolow's behalf. (*Id*. ¶ 57.) Dr. Fagundes explained that:

(*Id*. ¶ 58.) Dr.

Fagundes also explained that: 

(*Id*. ¶ 59.) Dr. Fagundes opined that, in Ms. Prolow's case, PBRT could

(*Id*. ¶ 66.) Dr. Fagundes provided substantial data regarding the advantages of PBRT, particularly in the context of Prolow's

(*Id*. ¶¶ 53–54, 58–59, 65–67.) The letter included color graphics, PET scans, CT scans, and images regarding PBRT for treatment of breast cancer and demonstrating

and the faxed transmittal letter included the following note in all caps: "THIS FAX CONTAINS COLOR IMAGES + AVAILABLE TO EMAIL IF ONE IS PROVIDED." (*Id*. ¶¶ 62–63.) The record does not contain a color version of the letter. (*Id*. ¶ 64.)

On March 19, 2019, Aetna sent Ms. Prolow's appeal for review by a vendor called Medical Review Institute of America, LLC ("MRIOA"), who recommended one day later that Ms. Prolow's claim should be denied because PBRT treatment was experimental or investigational under CPB No. 270. (*Id*. ¶¶ 69–73.) On March 21, Aetna sent a letter to Ms. Prolow upholding the denial of her appeal, citing CPB No. 270: "As per the CPB notes above, Aetna considers proton beam radiation experimental and investigational for the treatment of breast cancer, as the effectiveness in this condition has not been established." (*Id*. ¶ 76.)

On March 26, 2019, Ms. Prolow appealed Aetna's decision for a second time. (*Id*. ¶ 78.) That appeal was denied by Aetna just over 4 hours later, citing CPB No. 270. (*Id*. ¶ 79.) Ms. Prolow then requested an external appeal on March 29, 2019. (*Id*. ¶ 80.) Aetna unilaterally selected the external reviewer, a vendor called MCMC, which upheld the denial of benefits two days later, on April 1. (*Id*. ¶¶ 81–82) Finally, on October 21, 2019, Aetna issued its final decision of the appeal, stating: "Aetna considered proton beam radiation therapy experimental and investigational for Breast cancer because its effectiveness for these indications has not been established." (*Id*. ¶ 83.) The final denial does not reference any Plan provisions that were not met. (AETNA 727.)

Ms. Prolow proceeded with her radiation oncologists' plan and received PBRT for treatment of her breast cancer and incurred the cost of the treatment out-of-pocket. (*Id*. ¶¶ 84–85.)

### B.  Mark Lemmerman.

Mr. Lemmerman was diagnosed with localized, non-metastatic prostate cancer in January 2020. (SOF ¶ 86.) Mr. Lemmerman's team of radiation oncologists at the South Florida Proton Therapy Institute ("SFPTI") recommended that he undergo PBRT as an alternative to IMRT to avoid delivering radiation to critical normal organs and tissues, including his bowel, bladder, and rectum. (*Id*. ¶ 87.) His radiation oncologist opined that, for Mr. Lemmerman's particular cancer, PBRT would give him ███████████████████████████████████████████████████████

███████████████████████████████████████████████████████████████

(*Id*. ¶ 88.)

On January 21, 2020, Mr. Lemmerman's radiation oncologist, Dr. Scott Gasiorek, made a request for pre-authorization of PBRT on Mr. Lemmerman's behalf.  (*Id*. ¶ 89.) Aetna referred the request to a vendor, eviCore, whose reviewer recommended that Aetna deny PBRT coverage to Mr. Lemmerman in little over an hour after Mr. Lemmerman's records were processed for review and before conducting a peer-to-peer conference. (*Id*. ¶ 90–97.) The eviCore physician acknowledged that "[b]oth photon and proton beam radiation are effective at achieving high conformal radiotherapy with acceptable and similar biochemical control and long-term side effect profiles," but recommended the denial of the treatment anyway because "[p]er Aetna CPB on Proton Beam Radiation Therapy (number 0270), the use of proton beam therapy for this member is considered not medically necessary." (*Id*. ¶ 92–93) Aetna accepted the recommendation and denied the request for coverage, citing CPB No. 270 and stating that "[m]edical studies do not prove that this procedure is better than other radiation treatment for prostate cancer." (*Id*. ¶ 97–98.)

On February 14, 2020, Dr. Gasiorek appealed Aetna's decision on behalf of Mr. Lemmerman. (*Id*. ¶ 99.) Together with medical records, Mr. Lemmerman's oncologists also submitted a letter discussing peer-reviewed medical literature and studies supporting their recommendation that Mr. Lemmerman undergo PBRT for treatment of his prostate cancer. (*Id*. ¶ 100.) Dr. Gasiorek explained that "[r]adiation is a known toxin and there is no benefit whatsoever to depositing radiation in tissue uninvolved with cancer." (*Id*. ¶ 101.) Dr. Gasiorek provided a summary of clinical data to support prostate cancer, from 1979 to the present, including citation to 16 sources, including studied published in the International Journal of Radiation Oncology, Biology, Physics, the Journal of the National Cancer Institute, and the Journal of the American

6

Medical Association ("JAMA"). (*Id*. ¶ 102.) Dr. Gasiorek pointed to dosimetric and clinical evidence demonstrating that PBRT can substantially reduce the risk of patients developing a subsequent radiation-induced malignancy (secondary cancer) and clinical studies that show the use of PBRT resulted in fewer, if any, bowel, urinary irritative, and/or urinary obstructive symptoms or urinary continence. (*Id*. ¶ 102–104.)

Aetna referred the appeal to a vendor called AllMed; in less than 4 hours, AllMed's reviewer recommended the denial of Mr. Lemmerman's appeal be upheld. (*Id*. ¶ 105–107.) AllMed's decision reasoned that CPB No. 270 "does not consider prostate cancer as a diagnosis for which proton beam therapy is necessary over other radiotherapy modalities. Therefore, the requested therapy is not medically necessary." (*Id*. ¶ 108–111.) On February 15, 2020, Aetna sent a letter to Mr. Lemmerman upholding the denial of his appeal because the "medical necessity criteria is not met per Aetna's [CPB No. 270]." (*Id*. ¶ 112.)

On April 10, 2020, Mr. Lemmerman submitted his second appeal, which Aetna denied the next day. (*Id*. ¶ 114–115.) Aetna explained: "Both photon and proton beam radiation are effective at achieving a higher dose of radiation to the cancer without causing so much damage to surrounding tissues with acceptable and similar biochemical control and long-term side effect profiles. The National Comprehensive Cancer Network (NCCN) believes that there is no clear evidence to support a benefit of proton therapy over intensity-modulated radiation therapy (IMRT) for either treatment efficacy or long term toxicity." (*Id*. ¶116.)

On May 6, 2020, Mr. Lemmerman requested an external review of his request for coverage. (*Id*. ¶ 117.) As with Ms. Prolow, Aetna unilaterally selected MCMC to conduct the external review, and, as with Ms. Prolow, the denial decision was upheld. (*Id*. ¶ 118–119.)

Mr. Lemmerman proceeded with his radiation oncologists' plan and received PBRT for treatment of his prostate cancer and incurred the cost of the treatment out-of-pocket. (*Id*. ¶ 120.)

## LEGAL STANDARD

Summary judgment is appropriate where there is "no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." *Shaw v. Connecticut Gen. Life Ins. Co.*, 353 F.3d 1276, 1282 (11th Cir. 2003) (quoting Fed. R. Civ. P. 56(a)). The moving party bears the initial burden of demonstrating that there is no genuine dispute as to a material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

<u>ARGUMENT</u>

I.     **The *De Novo* Standard of Review Applies.**

The default standard of review of the administrator's decision to deny benefits is *de novo*. *Alexandra H. v. Oxford Health Ins. Inc. Freedom Access Plan*, 833 F.3d 1299, 1312 (11th Cir. 2016). Under *de novo* review, the court does not defer to the administrator's decision, but determines "whether the claim administrator's benefits-denial decision is 'wrong' (i.e., the court disagrees with the administrator's decision)." *Capone v. Aetna Life Ins. Co.*, 592 F.3d 1189, 1195 (11th Cir. 2010); *see* Order, ECF No. 103, 15 n.8. In other words, the Court must "stand in the shoes of the administrator and start from scratch, examining all the evidence before the administrator as if the issue had not been decided previously." *Stiltz v. Metro. Life Ins. Co.*, No. 1:05-CV3052-TWT, 2006 WL 2534406, at *6 (N.D. Ga. Aug. 30, 2006).

Aetna's decision to deny Plaintiffs' claims is subject to *de novo* review. When reviewing a benefits decision, a court will only depart from *de novo* review when "the plan *expressly* gives the administrator discretionary authority to make eligibility determinations or to construe the plan's terms." *Shaw*, 353 F.3d at 1284 (emphasis in original); *see* Order, ECF No. 103, 14 n.7. Under ERISA, the "plan document" "is one which a plan participant could read to determine his or her rights or obligations under the plan." *Fritcher v. Health Care Serv. Corp.*, 301 F.3d 811, 817 (7th Cir. 2002). The Lemmerman Plan and the Prolow Plan (the "Plans") each explain that there are two documents "that together describe the benefits covered by your Employer's self-funded health benefit plan": one is the booklet, which sets out the covered benefits, and the other is the schedule of benefits, which provides how expenses are shared and what the coverage limits are on the plan. (SOF ¶ 39–41.) The Plan documents each designate Aetna as the administrator, but neither the Prolow Plan documents nor the Lemmerman Plan documents expressly grant Aetna discretionary authority to determine eligibility for benefits or to construe the terms of the Plans. (*Id.* ¶ 26–26; 32–33.) The *de novo* standard of review thus applies. *See Shaw*, 353 F.3d at 1284 ("[A]bsent any express grant [of discretion to the administrator], under controlling precedent, we apply a *de novo* standard of review to a claims administrator's benefits decision.").

Moreover, the standard of review to determine whether the administrator provided a full and fair review of a claim is *de novo*, <u>even if the administrator is expressly given discretionary authority to make benefits decisions</u>. *Boysen v. Illinois Tool Works Inc. Separation Pay Plan*, 767 F. App'x 799, 806 (11th Cir. 2019). Here, Plaintiffs, individually and on behalf of a class, contend

that Aetna failed to provide a full and fair review of their PBRT claims. Whether Aetna provided a full and fair review of Plaintiffs' claim is subject to *de novo* review by this Court, regardless of whether the Plan document grant discretionary authority to Aetna.

Should the Court determine that the *de novo* standard of review does not apply, then it would apply the arbitrary and capricious standard of review, which looks at whether the administrator's decision was reasonable. *Id.*; *Conkright v. Frommert*, 559 U.S. 506, 508 (2010) ("Applying a deferential standard of review also does not mean that the plan administrator will always prevail on the merits. It means only that the plan administrator's interpretation will not be disturbed if reasonable.") (internal quotations omitted). In the case of Mr. Lemmerman, the Court should consider as well that Aetna made performance guarantees to Covanta regarding pre-authorization claims, which are relevant to whether Aetna operated under a conflict of interest. (AETNA 37–38.)

Here, even applying the arbitrary and capricious standard of review, summary judgment in favor of Plaintiffs is appropriate.

## II.  Aetna Is the ERISA Fiduciary.

The undisputed evidence establishes that Aetna is the appropriate ERISA fiduciary here. ERISA defines a "fiduciary with respect to a plan" as one who "exercises any discretionary authority or discretionary control" respecting the "management" of the plan or "exercises any authority or control" over the "administration" of the plan or "disposition of its assets." 29 U.S.C. § 1003(21)(A); *Garren v. John Hancock Mut. Life Ins. Co*., 114 F.3d 186, 187 (11th Cir. 1997) ("The proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan."). As this Court explained, "[t]he key question is whether the entity sued has 'sufficient decisional control over the claims process that would qualify it as a plan administrator.'" Order, ECF No. 103, at 9 (quoting *Hamilton v. Allen-Bradley Co*., 244 F.3d 819, 824 (11th Cir. 2001)).

A review of the record demonstrates that Aetna received the evidence from Plaintiffs, made decisions about what evidence it would weigh, made findings with respect to the claims, and ultimately made the final decision to deny Plaintiffs' claims, all without any involvement by Plaintiffs' employers, Covanta or AllianceBernstein. (*See, e.g*., SOF ¶ 55–83, 89–119.) In its Answer to the Complaint, Aetna "avers that it acted as third-party administrator" for both Plans and "was vested with discretionary authority to make benefit determinations and interpret the

Plan." (ECF No. 104, at 7 ¶ 35, 11 ¶ 65.) The contracts between Plaintiffs' employers and Aetna contemplate that ███████████████████████████████████████████████████████ ███████████████████ (SOF ¶ 27–29; 34–36.) Thus, although the <u>ERISA plan documents</u> do not expressly grant discretionary authority to Aetna (which is the applicable inquiry for purposes of the application of de novo standard of review), Aetna undeniably <u>exercised</u> discretion in denying Plaintiffs' claims for pre-certification and subsequent appeals, including making findings of fact and making the final decision to deny the claims (which is the inquiry for purposes of determining whether an entity is an ERISA fiduciary). *See* Order, ECF No. 103, at 12 n. 5, 13–14; *Perez v. First Bankers Tr. Servs., Inc.*, 12-cv-8649, 2014 WL 521370, at *5 (S.D.N.Y. Jan. 13, 2014) ("[A]n individual may be a fiduciary as to plan functions for which the plan affords him no discretionary authority if he nonetheless *'exercises ... discretionary authority.'"*).

In short, Aetna performed fiduciary acts with respect to both Plaintiffs' claims. *See Hamilton*, 244 F.3d at 827 (entity that "made a decision" on whether to convey information to an insurance company "performed a fiduciary act"); *Landry v. Air Line Pilots Assn Int'l AFL-CIO*, 901 F.2d 404, 418 (5th Cir. 1990) ("fiduciary status is to be determined by looking at the actual authority or power demonstrated"). The record conclusively establishes that Aetna is the ERISA fiduciary here.

## III.   Plaintiffs Were Entitled to Health Benefits.

The Planss define "medically necessary" treatment as:

Health care services that a provider exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms, and that are:
- In accordance with generally accepted standards of medical practice
- Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for the patient's illness, injury or disease
- Not primarily for the convenience of the patient, physician, or other health care provider
- Not more costly than an alternative service or sequence of services at least as likely to produce equivalent therapeutic or diagnostic results as to the diagnosis or treatment of that patient's illness, injury or disease

(SOF ¶ 43.) The definition does not state whether the bullet-point list of criteria is conjunctive (i.e., all criteria must be satisfied) or disjunctive (i.e., any one of the criteria must be satisfied). The bullet-point list contains no punctuation or indicative words like "or" or "and," or some other

contextual language like "including" or "the following."[2] Therefore, there is an ambiguity in the Plan language.  Under Eleventh Circuit precedent, any ambiguity <u>must be</u> resolved against the plan drafter[3] and in the light most favorable to the insured. *See Alexandra H.*, 833 F.3d at 1307; *Tippitt v. Reliance Standard Life Ins. Co.*, 457 F.3d 1227, 1235 (11th Cir. 2006); *Evanston Ins. Co. v. Dillard House, Inc.*, 2:16-CV-249-RWS, 2017 WL 3498953, at *7 (N.D. Ga. June 28, 2017) (ambiguity in policy as to whether provision was conjunctive or disjunctive was resolved against insurer).  Thus, the Court should read the bullet-point list of criteria as disjunctive—an insured needs to satisfy the first criterion (that the health care services is one that a provider exercising prudent clinical judgment, would provide to a patient for the purpose of preventing, evaluating, diagnosing or treating an illness, injury, disease or its symptoms) and any one of the criteria in the bullet-point list. Plaintiffs[4] satisfy these criteria.

*First*, as set forth more fully in respect to the criteria discussed below, a provider exercising prudent clinical judgment would provide PBRT to a patient for the purpose of treating breast or prostate cancer. PBRT is an established, recognized treatment for the purpose of treating localized tumors, such as non-metastatic breast and prostate cancer. Indeed, PBRT has been approved by the Food and Drug Administration (FDA) since 1988 "for the treatment of patients with localized tumors and other conditions susceptible to treatment by radiation." (SOF ¶ 10–12.) And, even CPB No. 270 acknowledges that PBRT is effective to treat cancer. (SOF ¶ 1, 5, 9.)

*Second*, PBRT for the treatment of breast and prostate cancer is in accordance with generally accepted standards of medical practice. "Generally accepted standards of medical practice" are defined in the Plans as standards that are based on credible scientific evidence published in peer-reviewed medical literature generally recognized by the relevant medical community and "consistent with the standards set forth in policy issues involving clinical judgment." (SOF ¶ 44.) As noted above, PBRT is an FDA-approved treatment for localized

---

[2] In other places in the Plan, provisions with lists contain language that provides some indication that the list is conjunctive. (*See, e.g.*, "home health care" (*see* AETNA 470, 1265), "specialty prescription drugs" (*see* AETNA 485, 1281).)

[3] The Plan indicates on its face that Aetna prepared it. (*See* Aetna 446, 448, 1245 (including the word "Aetna" at the top and indicating the booklet was "prepared exclusively for" the employer.)

[4] Ms. Prolow's claim was not denied on the grounds that it was not medically necessary under the terms of the Plan, but Plaintiffs address those criteria in relation to her claim in this Section as well.

cancers. (SOF ¶ 10–12.) PBRT is provided at well-regarded medical centers across the country, including: the Ackerman Cancer Center; Emory University Winship Cancer Institute; Georgetown University Hospital; Johns Hopkins Kimmel Cancer Center; the Mayo Clinic; MD Anderson Cancer Center; the University of Miami Sylvester Comprehensive Cancer Center; and the University of Florida Health, to name a few. (*See* https://www.proton-therapy.org/map/.) The administrative record contains numerous citations to peer-reviewed medical literature, guidelines, and studies that support the use of PBRT to treat prostate cancer and breast cancer. (SOF ¶ 50–61, 100–104.) Aetna itself admits that "Both photon and proton beam radiation are effective at achieving a higher dose of radiation to the cancer without causing so much damage to surrounding tissues with acceptable and similar biochemical control and long-term side effect profiles." (SOF ¶ 116.) This admission is consistent with CPB No. 270's consideration of PBRT as medically necessary for the treatment of all malignancies (e.g., breast cancer and prostate cancer) in persons 21 years old or younger. (*See* SOF ¶ 14; AETNA 334–335). If PBRT were not a generally acceptable medical practice to treat breast or prostate cancer, Aetna presumably would not permit it to be used at all, regardless of age. And the current version of Aetna's CPB No. 270 "considers proton beam radiotherapy and IMRT clinically equivalent for localized cancer of an intact prostate." (SOF ¶ 17.)

*Third*, the record contains overwhelming evidence to show that the recommended treatment plan for both Plaintiffs was clinically appropriate and considered effective for the treatment of their cancers.  The specialist teams at the Miami Cancer Institute ("MCI") and the South Florida Proton Therapy Institutes ("SFPTI") submitted detailed treatment plans for Ms. Prolow and Mr. Lemmerman, respectively, along with substantial and compelling evidence of the medical necessity of the course of treatment. (SOF ¶ 53–68, 87–88, 99–104.) Oncologists at MCI recommended PBRT in Ms. Prolow's case based on her history of



(*See id*. ¶ 58–68.)  Thus, in her case, PBRT could ████████████████████████████████████ (*Id*. ¶ 66.) Oncologists at SFPTI recommended PBRT as an alternative to IMRT to avoid delivering radiation to critical normal organs and tissues, including

the bowel, the bladder, and the rectum. (*See id.* ¶ 87–.88, 99–104) According to his specialist team, PBRT would give Mr. Lemmerman ███████████████████████████████████

███████████████████████████████████████████████████████████

██████████ (*Id.* ¶ 88.)  Moreover, as set forth above, Aetna admits that PBRT is effective for the treatment of prostate cancer.

    **Fourth**, there is no evidence in the record to suggest that the Plaintiffs were undergoing PBRT simply for their convenience or the convenience of any other person.  Their treatment plans were crafted to target their cancers while minimizing damage to surrounding healthy organs and tissues, and they incurred substantial amounts out-of-pocket to obtain the life-saving treatment. (*See supra*.)

    **Fifth**, the record does not reflect that PBRT was more costly than an alternative service at least as likely to produce equivalent results as to the treatment of the patient's illness. In the case of both Plaintiffs, PBRT was recommended because it was <u>superior</u> to the alternative treatment, namely, indiscriminate IMRT. In other words, the record evidence submitted by Plaintiffs demonstrates that IMRT was not "at least as likely to produce equivalent results"—it would produce inferior results. CPB No. 270 itself recognizes that: "Proton beams have the ability to penetrate deep into tissues to reach tumors, while delivering less radiation to superficial tissues such as the skin. This may make PBRT <u>more effective</u> for inoperable tumors or for those individuals in which damage the healthy tissue would pose an unacceptable risk." (AETNA 339, 1115 (emphasis added).) Moreover, there is no indication that PBRT would be more costly in the case of either of the Plaintiffs. In the case of Ms. Prolow, MCI made clear that it would charge the same for PBRT and IMRT. (AETNA 272.) In the case of Mr. Lemmerman, the record contains no evidence of the cost charged by SFPTI for PBRT versus the cost of IMRT. Thus, there is no evidence that PBRT was more costly in Mr. Lemmerman's case.

## IV.    Aetna Wrongfully Denied Benefits to Plaintiffs.

    ERISA requires that "[e]very employee benefit plan shall be established and maintained pursuant to a written instrument," 29 U.S.C. § 1102(a)(1), which enables an employee to determine "exactly what his rights and obligations are under the plan." *Curtiss-Wright Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995). As set forth above, an administrator cannot import requirements that are additional or different from those in the Plan when determining whether a benefit is covered. *Florence Nightingale Nursing Serv., Inc. v. Blue Cross/Blue Shield of Ala.*, 41

F.3d 1476, 1484 (11th Cir. 1995.). Under federal common law rules of construction, courts must apply the plain and ordinary meaning of the Plan's terms, and any ambiguities are construed against the drafter. *Alexandra H.*, 833 F.3d at 1307; *Tippitt*, 457 F.3d at 1235.

Moreover, ERISA requires administrators issuing adverse benefit determinations to "set forth, in a manner calculated to be understood by the claimant...[t]he specific reason or reasons for the adverse determination" and "[r]eference to the specific plan provisions on which the benefit determination is based." 29 C.F.R. § 2560.503-1(g),(j). In cases involving medical necessity decisions, the administrator must provide "an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances." *Id*. Aetna's internal policy requires: "for denial decisions, it is very important that you specifically outline what has been met and not met when comparing the clinical information with the criteria or guideline." (SOF ¶ 21.) In short, if an administrator is denying a benefit claim based on plan provisions, it must identify those provisions and explain why they were not satisfied.

### A. Aetna's Decision to Deny Mr. Lemmerman's Claim on the Basis That PBRT Was Not Medically Necessary Was Wrong and Unreasonable.

Aetna's determination that PBRT was not medically necessary in Mr. Lemmerman's case is, on its face, wrong and unreasonable because Aetna applied a criterion that was more stringent than the Plan's terms. *See Florence Nightingale Nursing Serv.*, 41 F.3d at 1484 (an abuse of discretion to apply medical necessity criteria set forth in guidelines policy rather than criteria contained in the Plan). Thus, Aetna's denial of Mr. Lemmerman's claim for PBRT based on lack of medical necessity is wrong and arbitrary and capricious. *See id*.; *Harrison v. Aetna Life Ins. Co.*, 925 F. Supp. 744, 748 (M.D. Fla. 1996) ("The plan administrator must analyze whether a procedure is 'necessary' or 'medically necessary' under the terms of the plan without importing an additional definition or different requirements.").

The version of the CPB No. 270 applied in Mr. Lemmerman's case provided: "Aetna considers [PBRT] not medically necessary for individuals with localized prostate cancer because it has not been proven to be <u>more effective</u> than other radiotherapy modalities for this indication." (AETNA 1112 (emphasis added.)) That language or reasoning was parroted back to Mr. Lemmerman in every denial letter sent to him. (*See* SOF ¶ 95, 113, 116.) Drawing from the language in CPB No. 270, Aetna's initial denial of Mr. Lemmerman's claim for PBRT stated: "Based on the CPB criteria and the information we have, we're denying coverage for proton beam

radiotherapy. Medical studies do not prove that this procedure <u>is better</u> than other radiation treatment for prostate cancer." (SOF ¶ 95(emphasis added).)  Mr. Lemmerman's first appeal was denied because CPB No. 270 "does not consider prostate cancer as a diagnosis for which proton beam therapy is necessary <u>over</u> other radiotherapy modalities for this indication," and "Therefore, the requested therapy is not medically necessary." (SOF ¶ 111 (emphasis added).) Aetna provided the following rationale for the denial of Mr. Lemmerman's second appeal: "Both photon and proton beam radiation are effective at achieving a higher dose of radiation to the cancer without causing so much damage to surrounding tissues with acceptable and similar biochemical control and long-term side effect profiles. The National Comprehensive Cancer Network (NCCN) believes that there is no clear evidence to support <u>a benefit</u> of proton therapy <u>over</u> intensity-modulated radiation therapy (IMRT) for either treatment efficacy or long term toxicity." (*Id.* ¶ 116 (emphases added).)

The definition of medical necessity in Lemmerman's Plan, however, does not require Mr. Lemmerman to prove that PBRT is <u>more effective</u> than an alternative treatment. Although Aetna conceded (as it must) that PBRT was an effective treatment for prostate cancer that was at least equivalent to IMRT, it nonetheless denied Mr. Lemmerman's claim on the basis that he did not prove that PBRT was <u>superior</u> to IMRT. Because none of the medical necessity criteria require the treatment at issue to be superior to an alternative treatment, it is clear the Aetna imposed a criterion that was more stringent that the terms of Mr. Lemmerman's Plan.  For this reason, the Court should find Aetna violated the Plan's terms and its decision was wrong and arbitrary and capricious.  *See Florence Nightingale Nursing Serv.*, 41 F.3d at 1484 ("A claims administrator's decision is arbitrary and capricious where new requirements for coverage are added to those enumerated in the plan.").

**B. PBRT Is Not Experimental or Investigational Within the Meaning of the Plans.**

A plaintiff bears the burden of showing he is entitled to benefits "unless the insurer claims that a specific policy exclusion applies to deny the benefits, in which case the insurer generally must prove the exclusion prevents coverage." *Garcon v. United Mut. of Omaha Ins. Co.*, 779 F. App'x 595, 599–600 (11th Cir. 2019). Aetna cannot carry its burden to show PBRT was "experimental or investigational" within the meaning of the Prolow Plan or the Lemmerman Plan, such that the E/I Exclusion prevented coverage.

Under both Plans, an "experimental or investigational" treatment is one that "is found to

be experimental or investigational because":

- There is not enough outcome data available from controlled clinical trials published in the peer-reviewed literature to validate its safety and effectiveness for the illness or injury involved
- The needed approval by the FDA has not been given for marketing
- A national medical or dental society or regulatory agency has stated in writing that it is experimental or investigational or suitable mainly for research purposes
- It is the subject of a Phase I, Phase II or the experimental or research arm of a Phase III clinical trial. These terms have the meanings given by regulations and other official actions and publications of the FDA and Department of Health and Human Services
- Written protocols or a written consent form used by a facility provider state that it is experimental or investigational.

(SOF ¶ 46.)  Under the plain language of the Plan, in order for a treatment to be properly excluded under the E/I Exclusion, the treatment must be "found to be" investigational or experimental "because" of the listed criteria. A finding is therefore required, and although the provision does not specify who makes the finding, it is presumably Aetna, as the administrator of the plan. Additionally, the provision does not state whether the list of criteria is conjunctive (i.e., all criteria must be found) or disjunctive (i.e., any one of the criteria must be found). The criteria are listed without the indicative words "or" or "and," or some other contextual language like "including" or "such as."[5] Therefore, there is an ambiguity in the Plan language.  Under Eleventh Circuit precedent, any ambiguity must be resolved against the plan drafter (Aetna) and in the light most favorable to the insured (Plaintiffs). *See Alexandra H.*, 833 F.3d at 1307; *Tippitt*, 457 F.3d at 1235; *Evanston Ins. Co.*, 2017 WL 3498953, at *7.

Reading the provision in light most favorable to Plaintiffs, the E/I Exclusion is only properly triggered where there has been a finding that all listed criteria are satisfied.  Such a finding was never made in the case of either Plaintiff.  Thus, PBRT is not "experimental or investigational" within the meaning of the Prolow Plan or the Lemmerman Plan, and Aetna's decision to deny

---

[5] In other places in the Plan, definitional provisions contain language that provides some indication that the list is disjunctive. The definition of "jaw joint disorder" contains the word "or" in the listed items (*see* AETNA 539, 1329); the definition of the term "morbid obesity" incudes the phrase "such as" (*see id.*); the definition of "negotiated charge" does not include the word "or" but uses the word "either" (*see* AETNA 540, 1331).

coverage to Plaintiffs on the basis of the E/I Exclusion was contrary to the Plans' terms and therefore wrong and arbitrary and capricious.

### 1. Denial of Sharon Prolow's Claim.

In its initial denial of Prolow's request for coverage, Aetna provided the following reasons for denying the request for coverage: "Based on the CPB criteria and the information we have, we are denying coverage for proton bean radiotherapy. Clinical studies have not proven that the procedure is effective for treatment of the member's condition"; and "The plan does not cover experimental or investigational services except under certain conditions. Please see the reference to experimental or investigational services listed in the Exclusions section of the benefit plan document." (SOF ¶ 56.) Aetna provided the following explanation for the denial of Prolow's first appeal: "As per the CPB notes above, Aetna considers proton beam radiation experimental and investigational for the treatment of breast cancer, as the effectiveness in this condition has not been established." (SOF ¶ 76–77.) This language comes directly from CPB No. 270. Prolow's second appeal was also denied by Aetna with reference to CPB No. 270: "Aetna considers proton beam radiotherapy experimental and investigational for breast cancer. This decision was made utilizing the Aetna CPB referenced above." (*Id.* ¶ 79.) Aetna's final decision also parroted the language of CPB No. 270 (although it identified no Plan provision that was a basis for the denial): "We are upholding the original benefits determination for services rendered on the date(s) of service referenced above. Aetna considers proton beam radiation therapy experimental and investigational for Breast cancer because its effectiveness for these indications has not been established." (SOF ¶ 83.)

Aetna's denial letters plainly do not contain a finding that PBRT satisfies all E/I listed criteria. In fact, Aetna failed to make a finding as to any <u>one</u> of the E/I listed criteria. For this reason alone, Aetna's decision to deny coverage based on the E/I Exclusion cannot stand.

The decision is also wrong and/or arbitrary and capricious because it reflects Aetna's injection of additional requirements contrary to the Plan's terms. None of the criteria of the E/I Exclusion requires a treatment's effectiveness to have been "established." Rather, with respect to effectiveness, the E/I Exclusion requires, as one criterion, a finding that: "[t]here is not enough outcome data available from controlled clinical trials published in the peer-reviewed literature to validate its safety and effectiveness for the illness or injury involved." Requiring a treatment's effectiveness to have been "established" is a more stringent requirement. For example,

"established" connotes "successful for a long period of time and widely known" or "accepted or respected because of having existed for a long period of time,"[6] while the E/I exclusion requires only "enough outcome data available."  Thus, through the use of CPB No. 270, Aetna injected additional requirements that were not imposed by the Plan's terms. To do so is wrong and arbitrary and capricious. *Florence Nightingale Nursing Serv.*, 41 F.3d at 1484 ("A claims administrator's decision is arbitrary and capricious where new requirements for coverage are added to those enumerated in the plan.").

Moreover, Aetna's wrongful and arbitrary application of CPB No. 270 to deny Ms. Prolow's claim is further placed in focus when considering that, by its terms, CPB No. 270 considers PBRT medically necessary for the treatment of breast cancer in persons 21 years or younger. There is no scientific basis for concluding, for example, that PBRT would be safe and effective to eradicate a tumor in a 20-year-old's breast but not safe and effective to eradicate a tumor in a 22-year-old's breast or a 60-year-old's breast. It's an arbitrary line set by Aetna to deny benefits to Ms. Prolow. Indeed, Ms. Prolow's oncologists cited and discussed various studies showing the effectiveness of PBRT to treat breast cancer, none of which were seemingly considered by Aetna.

It also bears noting that the E/I criterion at issue requires that there be "enough outcome data available from controlled clinical trials published in the peer-reviewed literature to validate its safety and effectiveness <u>for the illness or injury involved</u>," not for the particular person involved.  "Illness" is defined as "poor health resulting from disease of the body or the mind." (AETNA 538.) The illness here is, then, poor health resulting from breast cancer. In CPB No. 270, Aetna has determined that PBRT is medically necessary to treat breast cancer, at least in persons 21 or younger.  Since the Plan's terms do not require a showing that PBRT is safe and effective for the treatment <u>of Ms. Prolow</u>, only safe and effective for the treatment of <u>the illness</u>—breast cancer—CPB No. 270 itself undercuts Aetna's denial of benefits based on effectiveness for the treatment of breast cancer.

---

[6]    See    Established,    Merriam-Webster    Dictionary,    at    https://www.merriam-webster.com/dictionary/established;    Cambridge    Dictionary,    at https://dictionary.cambridge.org/us/dictionary/english/established. The E/I Exlcusion, in contrast, merely requires "enough outcome data available."

### 2.   Denial of Mark Lemmerman's Claim.

The E/I Exclusion was mentioned in Aetna's initial denial of Mr. Lemmerman's claim for pre-authorization and in the purported "external" reviewer's decision to uphold Aetna's denial, but not in Aetna's final denial of the claim. (*See* SOF ¶ 96, 113, 116.) Thus, Mr. Lemmerman's claim was not ultimately denied by Aetna based on the E/I Exclusion. *See Johnston v. Aetna Life Ins. Co.*, 17-20996-CIV, 2018 WL 2021335, at *14 (S.D. Fla. Mar. 1, 2018) (courts in the Eleventh Circuit consider only the reasonableness of the administrator's final decision).

In any event, and in addition, Aetna failed to make any finding that PBRT for prostate cancer satisfies all criteria of the E/I Exclusion, and the record is clear on its face that Aetna denied Mr. Lemmerman's claim by applying criteria that were more stringent that the Plan's terms. (See Section IV.A, *supra*). Aetna's own admission, throughout the administrative record, that PBRT is as effective as IMRT in treating prostate cancer would undercut any decision that PBRT is somehow experimental or investigational for the treatment of prostate cancer.

### V.   Aetna's Decision Was Not Based on a Full and Fair Review of Plaintiffs' Claim.

Ultimately, Aetna's decision to deny Plaintiffs' claims was wrong because it was not based on a full and fair review of Plaintiffs' submitted evidence. Any health benefit plan participant whose claim for benefits has been denied must have a "reasonable opportunity" for a "full and fair review" of the decision denying the claim. 29 U.S.C. § 1133; *Capone*, 592 F.3d at 1200 (fiduciary must "fully investigate" claims before denying benefits). A plan administrator is analogous to the trustee of a common-law trust, and courts "should consider a benefit determination to be a fiduciary act (*i.e.*, an act in which the administrator owes a special duty of loyalty to the plan beneficiaries)." *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 111 (2008). Further:

> ERISA requires a fiduciary to "discharge his duties with respect to a Plan solely in the interest of the participants and beneficiaries." 29 U.S.C. § 1104(a)(1). In doing so, a fiduciary must act "with the skill, care, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims." 29 U.S.C. § 1104(a)(1)(B). A fiduciary must also act "in accordance with the documents and instruments governing the Plan," insofar as those documents are consistent with the provisions of ERISA. 29 U.S.C. § 1104(a)(1)(D).

*Best v. Cyrus*, 310 F.3d 932, 935 (6th Cir. 2002). "[A]n administrator's failure to abide by its own internal claim handling procedures supports the conclusion that the administrator's decision was

unreasonable." *Wilson v. Walgreen Income Prot. Plan for Pharmacists & Registered Nurses, Walgreen Co.*, 942 F. Supp. 2d 1213, 1251 (M.D. Fla. 2013).



Aetna did not conduct a full and fair review of Plaintiffs' claims for PBRT. In particular, Aetna failed to review all of the materials submitted by each Plaintiff and failed to follow its own internal claims handling policies, which requires review of all clinical information submitted by the member or her provider, in reviewing their appeals. Instead, Aetna categorically and improperly relied on CPB No. 270 to deny the claims. Courts have found that denials are arbitrary when they "lack *any* analysis, let alone reasoned analysis" and consist of "nothing more than conclusory statements." *McMillan v. AT&T Umbrella Benefit Plan No. 1*, 746 F. App'x 697, 706 (10th Cir. 2018) (emphasis in original); *Raymond M. v. Beacon Health Options, Inc.*, 463 F. Supp. 3d 1250, 1282 (D. Utah 2020) (the denial letters "contain neither citations to the medical record nor references to the reports by" treating physicians regarding the patient's condition. "Instead, BHO's denial letters contain conclusory statements without factual support.").

**A. Review of Sharon Prolow's Claim.**

Aetna upheld its denial of Ms. Prolow's claim without adequately reviewing the materials submitted on her behalf by her radiation oncologist. In particular, Dr. Fagundes' letter of appeal included detailed and descriptive color graphs, scans, and images that supported and illustrated Ms. Prolow's medical need for PBRT, which are almost completely obscured in the black and white version of the letter that Aetna provided to the persons who reviewed the denial of benefits.

(*See, e.g.*, SOF ¶ 62–67.) Thus, each Aetna reviewer necessarily made their decision without a complete review of the evidence submitted on behalf of Ms. Prolow. Aetna is not entitled to "arbitrarily weigh the evidence available to it" and ignore contrary evidence. *Acree v. Hartford Life & Acc. Ins. Co.*, 917 F. Supp. 2d 1296, 1319 (M.D. Ga. 2013); *Godfrey v. BellSouth Telecomms., Inc.*, 89 F.3d 755, 758 (11th Cir. 1996) (administrator's decision was unreasonable where it "arbitrarily rejected the clear medical evidence" submitted by the claimant).



Aetna also failed to ████████████████████████████████████

██████████████████████████████████████████████████

████████████████ (*See* SOF ¶ 19.)  For example, Aetna forwarded Ms. Prolow's appeal to a purported subject matter expert to review the claim. The reviewer identified ████████

██████████████████████████████████████████████████

████████████████████████████████ (*See id.* ¶ 74.)  Aetna, however, did not request documentation about ████████████████ from Ms. Prolow or her provider in order to have a complete file nor did it inform Ms. Prolow that this information was missing. Thus, Ms. Prolow was never given the opportunity to provide further information that could help her in having her claim approved. ████████████████████████████

████████████████████████████ (*Id.* ¶ 75.)  Dr. Fagundes' letter had stated that ████

██████████████████████████████████████████████████

████████████████████████████ (*See id.* ¶ 68; AETNA 94–104.)

Finally, in its denial decisions, Aetna failed to ████████████████████████

████████████████████████████████████████████ (*See* SOF ¶ 21.). *See also* 29 C.F.R. § 2560.503-1(g),(j) (requiring administrators to provide "[t]he specific reason or reasons for the adverse determination," "[r]eference to the specific plan provisions on which the benefit determination is based, " and "an explanation of the scientific or clinical judgment for the determination, applying the terms of the plan to the claimant's medical circumstances."). The denial letters do not reflect any consideration of the bibliographical materials cited by Dr. Fagundes, including studies and peer reviewed literature. In other words, except for the fact that Dr. Fagundes' letter was transmitted to the reviewers, there is nothing in the record that shows that the evidence contained therein was actually reviewed or considered. *See Acree*, 917 F. Supp. 2d at 1320 (concluding administrator did not consider all evidence presented

to it and noting that it "merely recited the information from the Plaintiffs' appeal letter in its letter denying that appeal"). Rather, the denial letters provide CPB No. 270 criteria as the basis for the denial. (*See, e.g.*, SOF ¶ 56, 76–77, 79, 83.) The CPB No. 270 criteria, however, is more restrictive than Ms. Prolow's Plan criteria. In short, Aetna violated its own internal policies and ERISA requirements by failing to identify the specific Plan criteria that were met or not met, with reference to Ms. Prolow's medical circumstances. And because Aetna did not apply the Plan criteria, Ms. Prolow did not obtain a full and fair review of her claim.

**B.  Review of Mark Lemmerman's Claim.**

Similarly, the record compiled by Aetna for Mr. Lemmerman does not reflect a considered review of the materials submitted by his oncologists on his behalf.  Although the denial letters parrot back information from his records the rationale provided for the decision itself rests exclusively in the categorical application of CPB No. 270.  (*See, e.g.*, SOF ¶ 93, 113, 116.)

The lack of a full and fair review of his claims is further evidenced by the sheer speed at which decisions were made in his case and the obvious disregard of any contrary evidence. For example, it took little over an hour for eviCore, the vendor to whom Aetna referred Mr. Lemmerman's request for pre-certification, to purportedly review Mr. Lemmerman's materials (including reference materials to support the use of PBRT), and recommend the denial of his request for PBRT to treat his cancer.  (*Id*. ¶ 90–98.)  And although the record reflects that two peer-to-peer attempts were <u>required</u> before Aetna could "move forward" with eviCore's recommendation (*id.* ¶ 94), Aetna sent the denial letter (i.e., it moved forward with the recommendation) before the peer-to-peer call was ever even attempted, let alone completed (*id.* ¶ 95, 98).  The peer-to-peer call occurred on January 24, 2020 (*id.* ¶ 98), but by then the January 23 denial letter had already been prepared and sent out—it was a *fait accompli*, making the peer-to-peer call nothing more than a sham.  A decision to deny Mr. Lemmerman's first appeal was made in less than 4 hours and his second appeal was denied in less than 24 hours. (*Id*. ¶ 107, 115.) The record supports a finding that Mr. Lemmerman's clinical materials and supportive evidence were given no weight at all.

Finally, as with Ms. Prolow, in Mr. Lemmerman's case Aetna also failed to ████████

████████████████████████████████████████████████████████████

████████ (*Id*. ¶ 21.). *See* 29 C.F.R. § 2560.503-1(g),(j). The denial letters sent by Aetna failed to identify the specific Lemmerman Plan criteria that were met or not met, with reference to his

medical circumstances. Instead, Aetna applied the criteria in CPB No. 270 (which was not a Lemmerman Plan document), which is plainly different than the criteria in his Plan.

## VI. Aetna Violated ERISA by Selectively Denying Plaintiffs' PBRT Claims Based on Arbitrary Benchmarks.

Finally, Aetna failed to provide Plaintiffs a full, fair, and evenhanded review of their claims. Courts look to whether there was been "[e]venhandedness of treatment" by the administrator. *Anderson v. Ciba-Geigy Corp.*, 759 F.2d 1518, 1522 (11th Cir. 1985). For example, ERISA requires that benefits provided under a plan be uniformly available to all similarly situated individuals, and, similarly, that any restriction on benefits must apply uniformly to all similarly situated individuals. 29 C.F.R. § 2590.702(b)(2)(i)(B). Aetna's policies do not treat everyone equally.

Aetna applies CPB No. 270 uniformly to deny claims, but that policy does not treat everyone equally. Rather, it discriminates based on age: PBRT is considered medically necessary and not experimental or investigational for the treatment of breast cancer or prostate cancer for persons 21 years old or younger, while PBRT is not considered medically necessary and is considered experimental or investigational for those same cancers in persons over 21 years old. (*See* SOF ¶ 14.)

Aetna also discriminates based on  (*See* SOF ¶ 22.) Thus, had Mr. Lemmerman simply ███████████████, his treatment would have been approved. Notably, Mr. Lemmerman was not advised of ████████████████████████████ ███████

The application of Aetna's policies to treat persons over 21 differently than those under 21 or treat persons with prostate cancer differently depending on what facility they receive treatment is not evenhanded, and thus the coverage decisions made while such policies were being applied are wrong and arbitrary and capricious.

## CONCLUSION

For the foregoing reasons, Plaintiffs Sharon Prolow and Mark Lemmerman respectfully request that this Court grant this motion for partial summary judgment and find that Aetna wrongfully denied Plaintiffs' claims.

Respectfully submitted,

**COLSON HICKS EIDSON**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
Facsimile: (305) 476-7444
E-mail: eservice@colson.com


**Stephanie A. Casey**
Stephanie A. Casey
Florida Bar No. 97483
scasey@colson.com

– and –

**KOZYAK TROPIN & THROCKMORTON, LLP**
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

By: **Maria D. Garcia**
Harley S. Tropin
Florida Bar No. 241253
Email: hst@kttlaw.com
Maria D. Garcia
Florida Bar No. 58635
Email: mgarcia@kttlaw.com
Robert Neary
Florida Bar No. 81712
Email: rn@kttlaw.com

*Attorneys for Plaintiffs and the putative class*

24

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing was filed unredacted under seal with the Clerk of the Court and redacted with the Clerk of Court on the public docket. I also certify that the unredacted foregoing document is being served this 1st day of November, 2021, on all counsel of record via e-mail.

By: **<u>Stephanie A. Casey</u>**

Stephanie A. Casey