UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 9:20-cv-80545-Marra/Matthewman

SHARON PROLOW and MARK LEMMERMAN,
on behalf of themselves and all others similarly situated,

      Plaintiffs,

v.

AETNA LIFE INSURANCE COMPANY,

      Defendant.
_____/

## ORDER DENYING DEFENDANT'S MOTION TO COMPEL DOCUMENTS AND INFORMATION FROM PLAINTIFFS [DE 208]

**THIS CAUSE** is before the Court upon the following: (1) Defendant Aetna Life Insurance Company's ("Defendant") Motion to Compel Documents and Information from Plaintiffs ("Motion") [DE 208]; Plaintiffs Sharon Prolow and Mark Lemmerman's ("Plaintiffs") Response [DE 209], Defendant's Reply [DEs 215, 216];[1] and Defendant and Plaintiffs' ("the parties") Joint Notice on Discovery Status ("Joint Notice") [DE 218], filed pursuant to the Court's August 8, 2022 Paperless Order [DE 217]. The Court held a hearing on the Motion via Zoom video teleconference (VTC), on August 23, 2022. [DE 219]. After the hearing, Plaintiffs submitted certain documents for *in camera* review. The Court has now had the opportunity to carefully review those documents. This Order follows.

---

[1] The unsealed version of the Reply is available at DE 215. The sealed, redacted version is available at DE 216.

1

## I.     BACKGROUND

In short, in Plaintiffs' Third Amended Complaint [DE 83], Plaintiffs Sharon Prolow and Mark Lemmerman—individually and on behalf of all others similarly situated—allege that "they were wrongfully denied coverage for Proton Beam Radiation Therapy ('PBRT') under employee welfare benefit plans issued by their employers and administered by [Defendant]," bringing this putative class action claim under the Employee Retirement Income Security Act of 1974 ("ERISA").[2] [DE 138 at 1]. Utilizing Plaintiffs' Third Amended Complaint as the operative complaint, the parties filed competing motions for summary judgment [DEs 110,112].

Ultimately, the Court denied Defendant's motion for summary judgment [DE 112] and granted Plaintiffs' partial motion for summary judgment [DE 110]. [DE 138]. To this end, the Court found that Defendant's "decision to deny PBRT coverage was *de novo* wrong as to both Ms. Prolow and Mr. Lemmerman . . . and reverse[d Defendant's] decision to deny PBRT benefits." [DE 138 at 45–46]. Accordingly, the Court found Plaintiffs entitled to damages in their capacity as class representatives,[3] ruling that the case "shall proceed to the class certification processes and trial on the remaining issues pursuant to the Court's extant Scheduling Order." *Id.* at 46–47.

After numerous discovery disputes in the interim period, Defendant filed the instant Motion [DE 208]. Within the Motion, Defendant moved to compel: (1) "Ms. Prolow to produce her employment agreement with AllianceBernstein"; (2) "Ms. Prolow and Mr. Lemmerman to produce their engagement letters with their legal counsel in this action"; and (3) "Ms. Prolow to respond fully to Aetna's Interrogatory regarding the damages she seeks in this case." [DE 208 at 2].

---

[2] 29 U.S.C. § 1001, *et seq.*
[3] The Court directed the parties "to submit to the Court their respective positions on when and how the Court should proceed to determine the amount of damages to which the putative class representatives are entitled." DE 138 at 46].

However, following the filing of Plaintiffs' Response [DE 209], Defendant's Reply [DEs 215, 216], and the parties' Joint Notice [DE 218], only one of the three bases for which Defendant initially filed its Motion remained. Specifically, in the parties' Joint Notice—filed in anticipation of the August 23, 2022 Zoom VTC hearing—the parties represented that Court intervention was required only as to the portion of Defendant's Motion seeking to compel engagement letters between Plaintiffs and their legal counsel. [DE 218 at 2–4]. Consequently, during the August 23, 2022 Zoom VTC hearing, the Court heard argument on Defendant's Motion [DE 208] solely on that matter.

At the hearing, the Court reserved ruling and required Plaintiffs' counsel to submit Plaintiffs' two engagement letters with counsel to Chambers for purposes of conducting *in camera* review. That same day, Plaintiffs emailed the two engagement letters at issue to Chambers for the Court's review.

## II.      MOTION, RESPONSE, AND REPLY

Due to the parties resolving two of the three issues raised in Defendant's Motion, the Court will discuss only the parties' positions pertaining to the remaining issue—Plaintiffs' production of engagement letters with their legal counsel.

### A. Defendant's Motion [DE 208]

In Defendant's Motion, Defendant seeks to compel "Ms. Prolow and Mr. Lemmerman to produce their engagement letters with their legal counsel in this action." [DE 208 at 2]. In doing so, Defendant notes that originally, in its Amended First Set of Requests for Production of Documents to Plaintiff Sharon Prolow [DE 208-9] and its Amended First Set of Requests for Production of Documents to Plaintiff Mark Lemmerman [DE 208-10], Defendant requested:

3

> [a]ll documents relating to the payment of fees in this Lawsuit, the responsibility for costs and expenses incurred in connection with this Lawsuit, any advancement for costs and expenses incurred in connection with this Lawsuit, or the division of any judgment recovered in this Lawsuit, including without limitation copies of any engagement letter(s) with counsel.

[DE 208 at 4]. However, Defendant states that it has since limited its request to "copies of any engagement letter(s) with counsel." *Id.*

Nevertheless, despite this limitation, Defendant notes that Plaintiffs have objected to the request for engagement letters with counsel "on the ground [that such request] is overly broad, seeks privileged documents, . . . seeks records that are neither relevant to the claims and defenses still in dispute in this matter, [and is not] proportional to the needs of the case." *Id.* Defendant contends that these objections are without merit. *Id.*

Specifically, with respect to Plaintiffs' privilege objection, Defendant maintains that Plaintiffs have failed to distinguish Defendant's cited cases, which establish that matters involving the receipt of fees from a client are not generally privileged.[4] *Id.* Moreover, with respect to Plaintiffs' objections based on relevancy and proportionality, Defendant contends that "the engagement letters are highly relevant to [Defendant's] damages defense, given that Plaintiffs' counsel will undoubtedly seek attorney fees as part of a damages award." *Id.* Indeed, according to Defendant, "[i]t is hard to believe that the engagement letters are silent as to Plaintiffs' counsels' rates or their fee arrangements with Plaintiffs, which goes directly to the reasonableness of the fees that Plaintiffs' counsel will ultimately seek from the Court." *Id.* Defendant further contends that

---

[4] *See United States v. Leventhal*, 961 F.2d 936, 940 (11th Cir. 1992) ("We have held on numerous occasions that '[t]he identity of a client or matters involving the receipt of fees from a client are not normally within the [attorney-client] privilege.'" (alterations in original) (quoting *In re Grand Jury Proceedings (David R. Damore)*, 689 F.2d 1351, 1352 (11th Cir. 1982)); *In re Slaughter*, 694 F.2d 1258, 1260 (11th Cir. 1982) ("The law in this circuit is that matters involving the receipt of fees from a client are not generally privileged.").

4

the engagement letters are relevant to its defenses "with respect to opposing class certification." *Id.*

   B. <u>Plaintiffs' Response [DE 209]</u>

In Plaintiffs' Response [DE 209], Plaintiffs object to production of engagement letters with counsel solely on the basis of privilege and relevancy. [DE 209 at 4]. Plaintiffs argue that "courts in this district have held that class representatives' engagement letters with counsel are not discoverable, absent a showing by the defendant that a conflict of interest exists." *Id.* In connection therewith, Plaintiffs argue that Defendant has made no showing of any conflict of interest, "offer[ing] only speculation that '*if* the engagement letters promise (or propose) an incentive award,' it would 'go directly to [Plaintiffs'] suitability to serve as class representatives,' because such awards are contrary to current Eleventh Circuit Case law." *Id.* at 5 (quoting DE 208 at 2–3). However, Plaintiffs state that the engagement letters at issue do not promise or propose incentive payments to Plaintiffs, stating that they have followed, and will continue to follow and abide by, current Eleventh Circuit precedent. *Id.* Additionally, Plaintiffs argue that the cases Defendant cites in support of disclosure of the engagement letters are inapposite and do not address whether fee arrangements are relevant *in class action suits*. *Id.* at 4 n.6.

Further, to the extent Defendant argues that the engagement letters are relevant to Defendant's "damages defenses" because Plaintiffs will "undoubtedly seek attorney fees," Plaintiffs assert that "[s]ection 502(g)(1) of ERISA gives the court discretion to award attorney's fees to a prevailing party, but a motion for fees has not been filed and entitlement to fees has not been decided" in this case. *Id.* at 6. According to Plaintiffs, "Local Rule 7.3 already strikes a careful balance: it provides for a detailed process to confer and exchange pertinent information needed to

5

assess requested fees and costs (and dispute them), but only at the time that information becomes relevant—i.e., when the motion for fees is filed." *Id.* Thus, Plaintiffs argue that a motion to compel engagement agreements to determine fees and costs is premature and may never be required, as the parties "must comply with Local Rule 7.3 first." *Id.*

C. Defendant's Reply [DEs 215 and 216]

In Defendant's Reply, Defendant again argues that "[i]t is widely recognized by courts within the Eleventh Circuit—including this Court—that information related to fee arrangements is not privileged." [DE 215 at 3] (citing *O'Neal v. United States*, 258 F.3d 1265, 1276 (11th Cir. 2001) ("[I]t is the law of this circuit that information involving receipt of attorneys' fees from a client is not generally privileged.") and *Heller v. Metro. Cas. Ins. Co.*, No. 19-80448-CV, 2020 WL 43299, at *2 n.1 (S.D. Fla. Jan. 3, 2020) ("[D]ocuments that simply contain factual information pertaining to attorney's fees are not protected by the attorney-client privilege.")). Defendant therefore argues that Plaintiffs' engagement letters—which "address Plaintiffs' attorney fees and the financing of this lawsuit, which goes to Plaintiffs' suitability as representatives of the putative class"—is *not* privileged information. [DE 215 at 4].

Turning to relevancy, Defendant argues that Plaintiffs' engagement letters "are relevant to the claims and defenses in this case, for multiple reasons." *Id.* First, Defendant argues that the engagement letters are relevant because Plaintiffs "each seek attorneys' fees in their Third Amended Complaint," and a "Plaintiff's retainer agreement with his attorneys is both discoverable *and relevant* to Plaintiff's claims . . . [where] part of Plaintiff's prayer for relief is his attorney's fees." *Id.* (quoting *Tokraz v. TRG Columbus Dev. Venture, Ltd.*, No. 08-60190-CIV, 2008 WL 3850692, at *1 (S.D. Fla. Aug. 14, 2008)). In this regard, to the extent Plaintiffs argue that it is

6

premature to compel production of the engagement letters, Defendant contends that courts have rejected this argument. *Id.*

Second, Defendant contends that Plaintiffs' citation to certain cases—which establish that engagement agreements are relevant for class certification purposes only where the defendant has made a showing of a conflict of interest—is inapplicable to the case at hand. Defendant argues that in the cases Plaintiffs cited for such proposition, "the defendants were seeking engagement letters for potential conflicts between the *named plaintiffs* and *counsel*." *Id.* at 4–5. Here, however, Defendant argues that it is not seeking Plaintiffs' "engagement agreements for such purpose, but instead to discover financial agreements and potential conflicts between *Plaintiffs* and the *putative class*, which would affect Plaintiffs' adequacy as class representatives." *Id.* at 5.

## III.   ANALYSIS

Under Federal Rule of Civil Procedure 26(b)(1), "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." Fed. R. Civ. P. 26(b)(1).  "It is well established that a retainer agreement is discoverable." *Tokraz*, 2008 WL 3850692, at *1; *Hnis v. SDH Servs. W., LLC*, No. 15-81395-CIV, 2016 WL 446541, at *2 (S.D. Fla. Feb. 2, 2016). Where a plaintiff's prayer for relief includes attorney's fees, "his attorney's fee agreement is relevant to his claim and among the many factors that [a d]efendant must take into account when defending [an] action." *Tokraz*, 2008 WL 3850692, at *1; *Hnis*, 2016 WL 446541, at *2. However, "[i]n the class representative context, . . . within the Southern District of Florida[, an] engagement agreement is not relevant absent an indication that there is a conflict of interest between the class representative and class counsel." *Bonkuri v. Grand Caribbean Cruises, Inc.*, No. 20-60638-CIV, 2021 WL 7082829, at *3 (S.D. Fla. Feb. 12,

7

2021). Moreover, the relevancy and discoverability of a retainer or engagement agreement may at times depend upon the stage of the litigation. *See Devries v. Morgan Stanley & Co. LLC*, No. 12-81223-CIV, 2015 WL 893611, at *7 (S.D. Fla. Mar. 2, 2015) ("[T]he Court denies Request for Production 33 at this stage of the litigation. However, should Plaintiffs prevail in this FLSA case, then information pertaining to attorney retainer agreements may be relevant in the event Plaintiffs move for an award of attorney's fees and costs pursuant to the FLSA statute.").

In the instant case, Defendant relies upon the body of law establishing that retainer or engagement agreements (or letters) are both discoverable and relevant where "part of [a p]laintiff's prayer for relief is his attorney's fees." [DE 215 at 4] (citing *Tokraz*, 2008 WL 3850692, at *1). Plaintiffs, in turn, rely upon the body of law stating that engagement agreements are not relevant absent a conflict of interest between class representatives and class counsel. [DE 209 at 4] (citing *Bonkuri*, 2021 WL 7082829, at *3). In other words, Plaintiffs maintain that the relevancy of engagement agreements is of a different nature in the class action context. While Defendant attempts to distinguish this authority by arguing that the instant case involves a potential conflict of interest between *Plaintiffs* and the *putative* class, rather than *Plaintiffs* and *counsel*, DE 215 at 4–5, this Court need not address the intricacies of engagement letters in the class action context or whether Defendant's distinction has a meaningful impact on any privilege or relevancy analysis, as Plaintiffs have provided the Court with the engagement letters of Ms. Prolow and Mr. Lemmerman for *in camera* review. And, review of those engagement letters evidences a lack of relevancy at this time.

Specifically, during the August 23, 2022 Zoom VTC hearing, Defendant argued that it sought Plaintiffs' engagement letters with their legal counsel to determine Plaintiffs' counsel's

hourly rate and the fee arrangement or financing of the litigation, which Defendant maintained it needed so that it could verify Plaintiffs were adequate class representatives. Plaintiffs, on the other hand, asserted—as they did in the Declaration of Stephanie A. Casey, attached to the Joint Notice [DE 218-1]—that the engagement agreements did not promise any "incentive" or "service" awards, and that the engagement agreements were silent on the hourly rates of Plaintiffs' counsel. After conducting *in camera* review of both Ms. Prolow's and Mr. Lemmerman's engagement letters, the Court can confirm that the engagement letters do not, in fact, contain any information pertaining to any hourly rate. Nor do the engagement letters contain any information that is relevant to Plaintiffs' ability to serve as class representatives. *See Davis v. S. Bell Tel. & Tel. Co.*, 149 F.R.D. 666, 671 (S.D. Fla. 1993) ("In order to serve as an adequate class representative, a party must demonstrate that it will vigorously prosecute the action and will provide adequate financing and competent counsel."). The two engagement letters are standard contingency fee agreements which do not contain any hourly rates, and which do not contain any information relevant to Plaintiffs' ability to serve as class representatives.

Moreover, while this case involves a situation in which the Court has determined that Plaintiffs (as the class representatives) are entitled to damages, the Court has not yet certified the putative class or made any determination on class damages. Therefore, as in *Devries*, the Court finds that Plaintiffs' engagement letters with their legal counsel are not relevant under Rule 26(b)(1) at this stage of the litigation. *Devries*, 2015 WL 893611, at *7. Accordingly, despite Plaintiffs' objections based on both privilege and relevancy, the Court finds this discovery dispute can be settled entirely on relevancy, without the necessity of addressing the privilege arguments, and that Defendant's Motion must be denied due to a lack of relevancy at this stage of the action.

## IV.  CONCLUSION

In light of the foregoing, it is **ORDERED AND ADJUDGED** as follows:

1. Defendant's Motion to Compel Documents and Information from Plaintiffs [DE 208] is **DENIED**.

2. This denial is without prejudice to Defendant's ability to seek such discovery (the two engagement letters) in the future, should it have a good faith basis to do so, or if necessary, during the Local Rule 7.3 procedure.

**DONE AND ORDERED** in Chambers at West Palm Beach, Palm Beach County, in the Southern District of Florida, this 6th day of September, 2022.

*William Matthewman*
WILLIAM MATTHEWMAN
United States Magistrate Judge