**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA**

**Case No. 20-80545-CIV-MARRA**

SHARON PROLOW and
MARK LEMMERMAN,
on behalf of themselves and
all others similarly situated,

                      Plaintiffs,

       v.

AETNA LIFE INSURANCE
COMPANY,

                      Defendant.

_____/

**PLAINTIFF'S UNOPPOSED MOTION FOR PRELIMINARY APPROVAL
OF CLASS SETTLEMENT AND APPROVAL OF CLASS NOTICE
AND INCORPORATED MEMORANDUM OF LAW**

Plaintiff Mark Lemmerman, on behalf of a proposed Settlement Class defined in the proposed Settlement Agreement[1] fully executed June 5, 2025, hereby moves for an order (1) granting preliminary approval of the Settlement and directing notice to the Class under Fed. R. Civ. P. 23(e)(1); (2) appointing Stephanie A. Casey of Colson Hicks Eidson PA, and Maria D Garcia and Robert J. Neary of Kozyak Tropin & Throckmorton, LLP, as class counsel under Fed. R. Civ. P. 23(g)(3); (3) approving the Class Notice Plan; and (4) scheduling a final approval hearing under Fed. R. Civ. P. 23(e)(2).

Plaintiff and Defendant Aetna Life Insurance Company ("ALIC") have reached an agreement that provides Settlement Class Members with reimbursement of up to $48,000 for proton beam radiation therapy ("PBT") for the treatment of localized prostate cancer. Settlement administration costs, attorneys' fees, and litigation costs will be paid by ALIC separately from the amounts Settlement Class Members may recover under the settlement.

## I.      INTRODUCTION

Plaintiff Mark Lemmerman, on behalf of himself and all others similarly situated, seeks preliminary approval of a class action settlement on behalf of a class of individuals with localized prostate cancer that had a health insurance plan or policy issued and/or administered by Defendant ALIC and were denied coverage for PBT between January 1, 2015, and March 31, 2024.

After five years of litigation, including nearly two years of hard-fought settlement negotiations, the parties have reached and memorialized an agreement that will allow individuals to seek monetary payment related to the denial of insurance coverage for PBT for localized prostate cancer, subject to the specific terms of the Settlement. (*See* SA, attached as Ex. 1.) ALIC agrees to make a total of $3,408,000 available to the Settlement Class Members for the payment of Settlement Claims. This amount represents $48,000 multiplied by the 71 Settlement

---

[1] The Settlement Agreement ("SA" or "Settlement"), including all exhibits thereto, is attached to this Motion as Exhibit 1. Unless otherwise defined, all capitalized terms shall have the same definitions and meanings as set forth in the Settlement.

Class Members identified through ALIC's records. Settlement Class Members who individually paid for PBT treatment and who file valid settlement claims will be entitled to a reimbursement of their expenses up to $48,000. Settlement administration costs, attorneys' fees, and litigation costs will be paid by ALIC separately from the amounts Settlement Class Members may recover under the Settlement. The Settlement and this Motion are not, and shall not, in any way be construed as an admission or evidence of wrongdoing or violation by ALIC.

The Settlement is the product of well-informed, arm's-length settlement negotiations—including five mediation sessions with mediator Harry Schafer, Esq., an experienced mediator, and extensive further negotiations between experienced counsel facilitated by Mr. Schafer—that spanned two years. It arrives at a critical juncture in the litigation, after extensive fact discovery, but before the parties must face the risks of class certification and a second round of summary judgment motions. The Settlement presents an excellent recovery and delivers tangible and immediate benefits to the Settlement Class, particularly considering the risks protracted litigation would present. The Court should grant preliminary approval.

## II.   BACKGROUND AND PROCEDURAL HISTORY

### A.   Factual Background

This case arises from ALIC's denial of coverage for PBT treatment for the treatment of localized prostate cancer. This matter commenced on March 31, 2020, by Plaintiff Sharon Prolow only. (ECF No. 1.) Plaintiff alleged that ALIC systematically applied its PBT medical guidelines to deny PBT on the basis that it was "unproven" or "not medically necessary." Plaintiff alleged that, in doing so, ALIC ignored the recommendation from Settlement Class Members' oncologists and generally accepted medical standards that PBT is an established, effective, and medically appropriate treatment of cancer. Plaintiff alleged that ALIC's conduct violated ERISA and asserted claims under 29 U.S.C. § 1132. (TAC, ECF No. 83). Following two rounds of motions to dismiss (ECF Nos. 7, 40, 49, 63), ALIC answered Plaintiff Prolow's Amended Complaint and denied her claims. (ECF No. 66.)

On April 28, 2021, Plaintiff Mark Lemmerman was added as a plaintiff in a

Second Amended Complaint, filed with ALIC's consent pursuant to Rule 15(a)(2). (ECF No. 67.) To streamline the case, Plaintiffs subsequently filed a Third Amended Complaint ("TAC") that conformed to additional evidence produced in the case and removed allegations that related to counts that had been previously dismissed; the TAC was filed with ALIC's consent pursuant to Rule 15(a)(2). (ECF No. 83.) ALIC moved to dismiss the TAC, which the Court denied. (ECF Nos. 88, 103.) ALIC then answered the TAC, and denied Plaintiffs' claims therein. The TAC is the operative complaint in this case. (ECF No. 104.)

On November 1, 2021, ALIC filed a motion for summary judgment on Plaintiffs' individual claims, and Plaintiffs filed a cross motion for partial summary judgment as to ALIC's liability with regard to Plaintiffs' individual claims. (ECF Nos. 110, 112.) The Court denied ALIC's motion and granted Plaintiffs' cross motion, finding ALIC liable to Plaintiffs on their individual claims. (ECF No. 138.)

The parties subsequently engaged in extensive class discovery and motion practice related to discovery and case management issues. (*See* Joint Declaration of Proposed Class Counsel [hereinafter, "Counsel Decl."], attached hereto as Exhibit 2, at ¶ 9-12.) ALIC served 63 requests for production of documents, 7 interrogatories, and 22 requests for admissions on Plaintiff Lemmerman. Plaintiff Lemmerman served 61 requests for production of documents, 13 interrogatories, and 27 requests for admissions on ALIC. (*Id.* ¶ 9.) The parties also engaged in third-party discovery, including ALIC's subpoenas to the South Florida Proton Therapy Institute and the Miami Cancer Institute. (*Id.*) The parties exchanged and reviewed over 796,000 pages of documents. (*Id.*) Plaintiffs also worked with their experts to review those records and analyze the issues in the case. (*Id.* ¶ 11.)

Upon the parties' joint motion, on April 10, 2023, the Court entered an Order staying all deadlines in this case pending mediation. (ECF Nos. 235, 236.) The parties attended an initial mediation session on May 24, 2023, with Harry Schafer, Esq., an experienced mediator with extensive knowledge of healthcare-related class action issues. (Counsel Decl. ¶ 13, 15.) Over the next 2 years, the parties held four additional mediation sessions with Mr. Schafer—on June 23, 2023; October 6, 2023;

June 29, 2024; and August 27, 2024. (*Id.* ¶ 15.) Between mediation sessions, the parties continued to discuss settlement terms under the supervision of Mr. Schafer and ALIC produced additional records to inform the negotiations. (*Id.* ¶¶15-16.) The parties expended significant efforts in negotiating and ironing out the numerous details of the Settlement in addition to formal mediation. (*Id.* ¶ 17.)

On November 15, 2024, Plaintiff Prolow dismissed her individual claims against ALIC; the stipulation of dismissal did not affect the claims asserted by Plaintiff Lemmerman. (ECF No. 262.)

On January 31, 2025, the parties informed the Court that they had reached an agreement in principle to settle the remaining claims in this case on a class-wide basis, subject to Court approval. (ECF No. 264.) The parties spent the next several months negotiating the details of the Settlement and executed the Agreement on June 5, 2025. (Counsel Decl. ¶ 19.)

## III.   SUMMARY OF SETTLEMENT TERMS

### A.   The Proposed Settlement Class

The proposed Settlement Class is defined as:

All members, participants, and beneficiaries of ERISA-governed employee welfare benefit plans administered and/or insured by ALIC, diagnosed with Prostate Cancer (specific ICD-10 codes as identified in the Settlement) where (a) the individual was diagnosed with localized prostate cancer, and (b) with respect to proton beam therapy ("PBT") precertification requests submitted after October 9, 2020, had an intact prostate, and (c) received a denial from January 1, 2015, to March 31, 2024, and (d) such denial cites "experimental," "investigational," "unproven" "superior," "superiority," and/or "more effective" as the basis for the denial of the requested PBT delivery code, unless such terms were expressly included in the definition of "medical necessity"/"medically necessary" set forth in the applicable member's Plan Document/Benefits Booklet, who:

(1) (a) Had a PBT precertification request submitted prior to the date of service (unless precertification was not required by the applicable Plan Document/Benefits Booklet), and (b) subsequently received PBT for the same diagnosis code with no allowed post-service PBT benefit claim(s), and (c) a denied post-service claim for the delivery of PBT for the same diagnosis code, and (d) had no allowed claims related to the same diagnosis code for an alternative recognized medical treatment (specific

Current Procedural Terminology ("CPT") codes as identified in the Settlement) not including claims related to treatment plans that include PBT in combination with another modality (e.g., concurrent chemotherapy radiation),

OR:

(2) (a) Had an approved PBT precertification request, that was submitted prior to the date of service, and (b) subsequently received PBT for the same diagnosis code with no allowed post-service PBT benefit claim(s), and (c) a denied post-service claim for the delivery of PBT for the same diagnosis code, and (d) had no allowed claims related to the same diagnosis code for an alternative recognized medical treatment (specific CPT codes as identified in the Settlement) not including claims related to treatment plans that include PBT in combination with another modality (e.g., concurrent chemotherapy radiation).

(SA, at § 1.D, p. 5-6.) Excluded from the Settlement Class are: (1) individuals who received coverage for PBT or for an alternative recognized medical treatment from another carrier; and (2) individuals who received a final pre-certification or post-service claim denial for an administrative reason (i.e., member not covered under an insured or administered Aetna health benefit plan). (*Id*.) Also excluded is anyone who timely opts out.

Based on records maintained by ALIC and data produced to Plaintiffs in connection with this matter, there are 71 individuals who submitted pre-authorization coverage requests or post-service claims for PBT coverage for the treatment of prostate cancer, which were denied; these individuals will receive notice of the Settlement Class. (Counsel Decl. ¶ 25.)

## A. Benefits to the Settlement Class Members and Named Plaintiff

The Settlement provides Settlement Class Members with a remedy that is directly responsive to the harm they incurred. Each Class Member who submits a timely claim form establishing their membership in the Class will receive a minimum payment of $12,000. (SA, § 3.A-C, at p. 17.) However, in the event a Settlement Class Member paid or incurred debt of over $12,000 to receive PBT, that Settlement Class Member is eligible to receive up to $48,000 in reimbursement, upon submission of

adequate proof. (*Id.*) Settlement Class Members filing claims under the Settlement will not have to demonstrate medical necessity for the PBT treatment, only that they incurred the medical expenses. (*See* SA, Ex. D [Claim Form].)

ALIC will make a total of $3,408,000 available to the Settlement Class Members for the payment of Settlement Claims. (SA, § 3.C, at p. 17.) This amount represents $48,000 multiplied by the 71 potential Settlement Class Members identified through ALIC's records. Thus, no *pro rata* reduction to Class Member recoveries (up to the individual cap of $48,000 for each) will be required. Should there be funds that remain unclaimed or undistributed after the payment of all valid Settlement Claims, an amount up to but not to exceed the total amount paid to the Settlement Class Members with respect to the Settlement Claims (up to the cap of $3,408,000) will be paid as a *cy pres* award to NRG Oncology Foundation, Inc. (SA, § 3.E, at p. 18.) Any portion of the Settlement Amount remaining after payment to the Settlement Class Members and payment of the *cy pres* award reverts to ALIC. (*Id.*)

Separate and apart from the benefits to the Settlement Class Members, ALIC has agreed to make a payment of $15,000 to Plaintiff Mark Lemmerman, upon Court approval, in exchange for a general release of all claims, including claims unrelated to his precertification or post-service claim denials of health insurance coverage for PBT for his prostate cancer diagnosis during the Class Period (the "Individual General Release"). (SA, § 1.R, at p. 8; § 26-28, at p. 32-33.) This is not a payment related to the Settlement Claims, nor does it reduce the funds available to the Settlement Class Members. (*See id.*; Counsel Decl. ¶ 36.) *See, e.g.*, *Cornelius v. Deere Credit Servs., Inc.*, No. 24-cv-25, 2025 WL 502089, at *3 (S.D. Ga. Feb. 13, 2025) (approving general release payment to named plaintiff); *Sinkfield v. Persolve Recoveries, LLC*, No. 21-cv-80338, 2023 WL 511195, at *3 (S.D. Fla. Jan. 26, 2023) (same); *Baja v. Costco Wholesale Corp.*, No. 21-cv-61210, 2022 WL 22928880, at *2 (S.D. Fla. Dec. 20, 2022) (same); *Taylor v. Citizens Telecom Servs. Co., LLC*, 584 F. Supp. 3d 1101, 1105 (M.D. Fla. 2022) (same). Named Plaintiff will include his request for his Individual General Release payment in his motion for Class Counsel's fees and costs. Settlement approval is not contingent upon approval of the Individual General

Release payment. (SA, § 28, at p. 33; Counsel Decl. ¶ 36.)

Settlement administration costs, attorneys' fees and costs, and the Individual General Release payment will be paid by ALIC upon court approval separately from the amounts Settlement Class Members may recover under the Settlement. (SA, § 1.FF, at p. 10; Counsel Decl. ¶ 37.)

### B. Settlement Class Members' Release

Upon entry of final judgment, all Settlement Class Members who do not timely opt out agree to give a release to ALIC and its Affiliated Entities of all Released Claims, defined as:

> any and all past, present and future claims, actions, causes of action, rights or liabilities, costs, expenses, losses, debts, or claims, regardless of forum, arising under federal, state, or local statutory or common law or mandate (including without limitation under any law of any state or territory of the United States, including the District of Columbia, and any federal law or principle of common law or equity, or of international foreign law, which is comparable to section 1542 of the California Civil Code) that were raised or could have been raised in the Action, contingent or non-contingent, accrued or unaccrued, known or unknown, arising out of or related to a precertification or post-service claim denial of health insurance coverage for PBT for a Prostate Cancer diagnosis during the Class Period.

(SA, § 1.AA, at p. 9.)

### C.   The Settlement's Notice Plan

Notice will be disseminated directly to Settlement Class Members by First Class U.S. Mail and email, where known. (SA, § 11, at p. 24.) The proposed Long Form Notice is attached to the Settlement as Exhibit E. Included with the notice package is a simple claim form for the Class Member to fill out and informs the Settlement Class Members of the necessary documentation to prove their incurred expenses above $12,000. (SA, at Ex D.) To receive the minimum payment of $12,000, Settlement Class Members need only attest that they are authorized to seek payment under the Settlement. (*Id*.) To receive payment over $12,000 up to $48,000, Settlement Class Members must submit a claim form with proof of incurred medical expenses exceeding $12,000. (*Id*.) No proof of medical necessity or meeting medical

necessity criteria is required. After the deadline for submission of claims has passed, the Settlement Administrator will review the claim form and documentation to determine the claim's validity.

A Settlement Website will communicate all important information, deadlines, and contain the Long Form Notice. (*See* SA, Ex. E.) A telephone number, email, and physical mailing address will also be made available for Settlement Class Members to contact the Settlement Administrator or Class Counsel directly. (*Id.*)

ALIC has selected Atticus Administration ("Atticus")—an experienced and reputable class action administrator—to serve as Settlement Administrator to provide notice, administer the claims process, and provide other services necessary to implement the Settlement. (Counsel Decl. ¶ 23.)

### D.   Attorneys' Fees and Expenses

The parties did not negotiate Class Counsel's attorneys' fees and costs before reaching an agreement on the terms of relief for the Class. (Counsel Decl. ¶ 20, 35.) Class Counsel intends to request reasonable attorneys' fees and reimbursement of litigation costs up to $1,675,000. (Counsel Decl. ¶ 35.) Any award of attorneys' fees and costs will be paid separately by ALIC upon court approval and will not reduce the benefits made available to the Class. (*Id.* ¶ 37.) Class Counsel will move for fees and reimbursement of costs within 30 days following the Preliminary Approval Order, so it is available to the Class on-line before the objection/opt-out deadline.

## IV.   ARGUMENT

### A.   Legal Standard for Preliminary Approval

Rule 23(e) requires judicial approval of the settlement of class claims. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp.*, 737 F.2d 982, 986 (11th Cir. 1984). Before certifying a class for settlement, the court must consider whether: (1) "the class representatives and class counsel have adequately

represented the class; [(2)] the proposal was negotiated at arm's length; [(3)] the relief provided for the class is adequate[;] and [(4)] the proposal treats Settlement Class Members equitably relative to each other." Fed. R. Civ. P. 23(e)(2). The court must also find the Rule 23(a) prerequisites (numerosity, commonality, typicality, and adequacy) are met, and the proposed class must also meet the requirements of one of the three class types found in Rule 23(b). These requirements are met here.

Finally, neither formal notice nor a hearing is required at the preliminary approval stage. *See Manual for Compl. Litig.* § 13.14.

## B. The Settlement Satisfies Rule 23(e) Criteria for Preliminary Approval

### 1. Plaintiff and His Counsel Have Adequately Represented the Class

"The adequacy-of-representation requirement encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action." *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (internal quotation marks omitted).

There are no conflicts between the Plaintiff and the Settlement Class. Rather, Plaintiff's interests are aligned and coextensive with those of absent Settlement Class Members. Plaintiff was subjected to the same alleged conduct by ALIC (denial of coverage for PBT to treat prostate cancer) and suffered the same alleged injuries as absent Settlement Class Members (incurring the unreimbursed cost of PBT).

Additionally, Plaintiff and Class Counsel "had an adequate information base" before negotiating and entering into the settlement. *See* Rule 23(e)(2)(A) advisory committee's note to 2018 amendment; *Lipuma v. Am. Express Co.*, 406 F. Supp. 2d 1298, 1324 (S.D. Fla. 2005) (courts must "ensure that Plaintiffs had access to sufficient information to adequately evaluate the merits of the case and weigh the benefits of settlement against further litigation"). Here, Counsel zealously represented Plaintiff's and Settlement Class Members' interests through vigorous litigation, and then settlement negotiations, over the course of five years. (Counsel

Decl. ¶ 4-17, 22.) Counsel defeated several dispositive motions and obtained partial judgment on Plaintiffs' individual claims, conducted fulsome discovery to investigate the facts of the case, including review of hundreds of thousands of pages of documents, and retained appropriate experts to assist them in developing the claims and evaluating the defenses in the case. (*Id*.) Plaintiff was likewise actively engaged in the litigation by providing relevant documents and materials. (*Id*. ¶ 33-34.) Class Counsel respectfully request appointment as Settlement Class Counsel under Rule 23(g)(3), and confirmed under 23(g)(1) upon final approval.

## 2. The Settlement Is the Product of Good-Faith, Informed, and Arm's-Length Negotiations

Rule 23(e)(2)(B) requires courts to consider whether "the proposal was negotiated at arm's length." Class action settlements should be approved so long as a court finds that "the settlement is fair, adequate and reasonable and is not the product of collusion between the parties." *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Lipuma*, 406 F. Supp. at 1318-19 (S.D. Fla. 2005).

This Settlement is the result of intensive, arm's-length negotiations between experienced attorneys who are familiar with class-action litigation and with the legal and factual issues of this case. (Counsel Decl. ¶ 4-17, 22.) The parties engaged in extensive, adversarial negotiations over several mediation sessions with an experienced mediator. (*Id*.) A settlement process facilitated by a mediator weighs heavily in favor of approval. *See Wilson v. EverBank*, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016). This Settlement was achieved in a procedurally fair manner and in the absence of collusion.

## 3. The Settlement Provides Significant Relief to Settlement Class Members

Under Rule 23(e)(2)(C) courts consider whether "the relief provided for the class is adequate," looking at factors including the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, the terms of any proposed award of attorneys' fees, and any other agreements between the parties. Settlements are reasonable even where class members recover

only part of their actual losses. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate."). "The existence of strong defenses to the claims presented makes the possibility of a low recovery quite reasonable." *Lipuma*, 406 F. Supp. 2d at 1323.

The monetary benefits of the Settlement are substantial and more than adequate. The negotiations produced a Settlement that provides significant relief to the Settlement Class. The Settlement ensures that Settlement Class Members receive reimbursement of a minimum of $12,000 up to a maximum of $48,000 for PBT. (SA, § 3.A-C, at p. 17.) ALIC will make a total of $3,408,000 available to the Settlement Class members for the payment of Settlement Claims, which allows for a payment of up to $48,000 for each of the 71 potential Settlement Class Members. (*Id.*) This means no *pro rata* reduction to Settlement Class Member's recoveries will be required. (Counsel Decl. ¶ 29.)

While the percentages of an individual Class Member's recovery compared to their incurred costs will vary depending on the cost, location, and amount of the PBT treatment, the recovery available to each Settlement Class Member—up to $48,000—is significant and fair.[2] (*See* Counsel Decl. ¶ 30; Frank Declaration, attached hereto as Exhibit 3, at ¶ 4.) A reasonable estimate is that Settlement Class Members will, on average, have paid around $ 42,975 to $51,570 for PBT for the treatment of prostate cancer.[3] (Frank Decl. ¶¶ 10-13) A Settlement reimbursement of up to $48,000 per Class Member, will provide significant relief to the Class.

This is an excellent result that compares favorably with other ERISA class action settlements. *See, e.g., Cunningham v. Wawa, Inc.*, 2021 WL 1626482, at *6 (E.D. Pa. Apr. 21, 2021) (finding ERISA settlement where recovery was 18%-28% of maximum losses was in line with other cases); *Hochstadt v. Boston Scientific Corp.*,

---

[2] For comparison, Plaintiff Lemmerman individually paid $35,036.76 for PBT treatment for his prostate cancer.

[3] ALIC neither endorses nor takes a position with respect to Plaintiff's representations, whether herein or in the associated declarations, regarding the typical costs for PBT treatment of localized prostate cancer.

708 F.Supp.2d 95, 109 (D. Mass 2010) (holding over objection of class member that 27% recovery was "plainly reasonable" in ERISA class action involving allegations of misleading disclosures). Given the notoriously complex nature of ERISA cases, courts approving ERISA settlements have described settlements of 29% to be "an exceptional result" *See, e.g., Marshall v. Northrop Grumman Corp*., 2020 WL 5668935, *2–3 (C.D. Cal. Sept. 18, 2020); *see also Hurtado v. Rainbow Disposal Co., Inc*., 2021 WL 2327858, at *4 (C.D. Cal. May 21, 2021) (ERISA settlement between 23% and 34% of maximum losses was an "impressive result").

### a. The Settlement Mitigates the Costs, Risks, and Delays of Continued Litigation

When evaluating the terms of the settlement in relation to the likely benefits of a successful trial. "the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id*.

While Class Counsel are confident in the strength of their class case and were able to obtain partial judgment on the merits of the Plaintiff's individual claim, they recognize ALIC has mounted a vigorous defense, and there are always risks and delays inherent to litigation. Plaintiff expects ALIC would vigorously oppose class certification, challenge Plaintiff's class-wide liability and damages theories, and provide its own experts. The proposed Settlement saves Plaintiff and the Settlement Class from facing these substantial obstacles and eliminates the significant risk that they would recover nothing at all after several more years of litigation and appeals. (Class Counsel Decl. ¶¶ 26, 31-32.) *See, e.g.*, *Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement).

In addition, in ERISA benefits litigation, remands can be ordered as the final remedy even after a victory in court, so a certified class could have ended up back in front of ALIC for a determination on coverage, thus prolonging any eventual recovery. *See, e.g., Lacko v. United of Omaha Life Ins. Co*., 926 F.3d 432, 447 (7th

Cir. 2019) ("The most common remedy when an ERISA plan administrator's benefits decision is deemed arbitrary is to remand the matter for a fresh administrative decision."). Facing these headwinds, the results achieved for the Settlement Class here are extraordinary. This Settlement provides immediate and substantial relief and is therefore reasonable and adequate.

### b. The Distribution of Settlement Benefits Is Effective

The benefits will be distributed via a simple claims process. Every potential Settlement Class Member is included on the Class List and notice will be issued to them directly via First Class U.S. Mail and email, where known. (See SA, § 12, at p. 24 & Ex. D.) To receive a minimum payment of $12,000, Settlement Class Members need only attest that they are authorized to seek payment under the Settlement. (*Id*.) To receive a payment of $12,001 to $48,000, Settlement Class Members must submit a claim form with proof of paid medical expenses exceeding $12,000. (*Id*.) No proof of medical necessity or meeting medical necessity criteria is required. (*See id*.) After the deadline for submission of claims has passed, the Settlement Administrator will review the claim form and documentation to determine the claim's validity.

### c. Counsel's Application for Attorney's Fees and Costs Will Not Decrease Benefits to the Settlement Class

As set forth above, Class Counsel intends to request reasonable attorneys' fees and reimbursement of litigation costs up to $1,675,000. Presently, litigation costs include expert fees, mediation fees, and general litigation costs. (Counsel Decl. ¶ 35.) Any award of attorneys' fees and costs will be paid separately by ALIC upon court approval and will not reduce the benefits made available to the Class. (*Id*. ¶ 37.) The parties did not negotiate Class Counsel's attorneys' fees and costs before reaching an agreement on the terms of relief for the Class. (*Id*. ¶ 20, 35.) *See Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) (record refuted self-dealing where "the parties settled only after engaging in extensive arms-length negotiations moderated by an experienced, court-appointed mediator"); *James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomm. Inc.*, No. 3:07-cv-598, 2012 WL

12952592, at *2 (M.D. Fla. July 30, 2012) (because agreement as to amount of attorneys' fees "was not reached until after a settlement had been reached in principle on its other terms and that the agreement was not the product of collusion or fraud[,]" it was entitled to "substantial weight").

### d. The Settlement Represents the Full Agreement of the Parties

There is no other agreement between the parties required to be identified by Rule 23(e)(3) nor any agreement made in connection with the Settlement that is not memorialized in the Settlement. The Court can determine the fairness and adequacy of the parties' proposal for settlement by looking solely to the Settlement.

### 4. The Settlement Treats All Settlement Class Members Equitably

Rule 23(e)(2)(D) considers "whether the apportionment of relief among Class Members take[s] appropriate account of differences among their claims." *See* Rule 23(e)(2)(D) advisory committee's note to 2018 amendment. This factor "requires equity, not equality, and treating class members equitably does not necessarily mean treating them all equally." *In re Blue Cross Blue Shield Antitrust Litig.*, 85 F.4th 1070, 1093 (11th Cir. 2023). In other words, "the court's goal is to ensure that similarly situated class members are treated similarly and that dissimilarly situated class members are not arbitrarily treated as if they were similarly situated." Newberg on Class Actions § 13:56.

Here, Settlement Class Members are treated equitably even though the amounts paid by each Class Member will vary based on their incurred costs. Each Class Member who submits a valid claim is entitled to a minimum payment of $12,000; any payment over that amount is based on the Class Member's incurred expenses, up to $48,000. Counsel estimate that $48,000 will represent a significant percentage of, if not near full, reimbursement for each Class Member. (*See* Frank Decl. ¶ 12-13.) The settlement here is an equitable and excellent result for the Class.

### C. Certification of the Settlement Class Is Appropriate

Plaintiff requests that the Court certify a Settlement Class, and permit

14

dissemination of notice concerning the Settlement. Where a class has not been certified prior to settlement, the Court must consider the prospect of class certification in determining whether to direct notice to the class. "A class may be certified solely for purposes of settlement [if] a settlement is reached before a litigated determination of the class certification issue." *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fla. 2006) (internal quotation marks omitted). The court must also find the Rule 23(a) prerequisites are met, and the proposed class must also meet the requirements of one of the three class types found in Rule 23(b).

## 1. The Settlement Class Meets the Requirements of Rule 23(a)

The Settlement Class satisfies the four Rule 23(a) pre-requisites for class certification: numerosity, commonality, typicality, and adequacy. The proposed class definition is also adequate because "its membership is capable of being determined." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302. 1304 (11th Cir. 2021) (internal quotation marks omitted) ("[a]scertainability is an implied prerequisite of Rule 23" that must be considered "before the district court can consider whether the class satisfies the enumerated prerequisites of Rule 23(a)").

The proposed Class is objectively defined. In broad strokes, Settlement Class Members must have been covered under an ERISA-governed health plan administered or insured by ALIC; had localized prostate cancer; and were denied coverage for PBT between January 1, 2015, and March 31, 2024, citing certain clinical reasons.

Rule 23(a)(1) is satisfied where, as here, "the class is so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). Here, ALIC's records have identified 71 potential Settlement Class Members nationwide, which is sufficient to satisfy numerosity in this Circuit. *See Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

Rule 23(a)(2) requires class action plaintiffs to identify questions of law or fact common to the proposed class. *See* Fed. R. Civ. P. 23(a)(2). "Commonality requires

15

that there be at least one issue whose resolution will affect all or a significant number of the putative class members." *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009). Here, the central issues in this case concern whether ALIC wrongfully denied coverage for PBT by claiming it was "unproven" or "not medically necessary" based on the uniform application of its medical guidelines; and whether such denial of coverage was in violation of Settlement Class Members' materially similar plan terms. These common questions would generate common answers "apt to drive the resolution of the litigation" for the Class as a whole. *See Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

Rule 23(a)(3) requires that "the claims or defenses of the representative parties are typical of the claims or defenses of the class." Fed. R. Civ. P. 23(a)(3). Plaintiff's claim is coextensive with those of the absent Settlement Class Members, such that the Rule 23(a)(3) typicality requirement is satisfied. *See Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory"); *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"). Plaintiff, like all Settlement Class Members, was diagnosed with prostate cancer, sought coverage for PBT from ALIC, and was denied coverage.

To satisfy Rule 23(a)(4), the representative parties must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequacy under Rule 23(a)(4) considers (1) whether the proposed class representatives have interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314 (S.D. Fla. 2001); *Lyons v. Georgia-Pacific Corp. Salaried Emp. Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (quotation omitted).

As set forth above, Plaintiff and his counsel satisfy the adequacy-of-representation requirement. Plaintiff's interests are not antagonistic to the interests of the Class. Plaintiff and absent Settlement Class Members have a coextensive

interest in obtaining the relief offered by the Settlement, and absent Settlement Class Members have no diverging interests. (Counsel Decl. ¶ 33.) Plaintiff is familiar with the facts of this case and will continue to protect the Class, as he has throughout this litigation. (*Id.* ¶ 36.) Further, Plaintiff is represented by qualified and competent counsel with experience prosecuting class actions and ERISA actions. (*Id.* ¶ 2-3.)

Proposed Class Counsel have devoted substantial time and resources to vigorous litigation of this action over five years, from inception through the date of the Settlement. (Counsel Decl. ¶¶ 4-22.) Class Counsel defeated several dispositive motions and obtained partial summary judgment on Plaintiff's individual claim, pushed for and conducted fulsome discovery to investigate the facts of the case, including the review of hundreds of thousands of pages of documents, and retained appropriate experts to assist them in the case. (*Id.*) Class Counsel respectfully request appointment as Settlement Class Counsel under Rule 23(g)(3), and confirmed under 23(g)(1) upon final approval.

## 2. The Settlement Class Meets the Requirements of Rule 23(b)

The Settlement Class meets the requirements of Rule 23(b)(1) and 23(b)(3).

A class action is maintainable under Rule 23(b)(1)(A) if "prosecuting separate actions by or against individual class members would create a risk of . . . inconsistent or varying adjudications with respect to individual class members that would establish incompatible standards of conduct for the party opposing the class." Fed. R. Civ. P. 23(b)(1)(A). Here, if Settlement Class Members were to file separate lawsuits across the country seeking injunctive relief, some courts may find an ERISA violation and grant relief, whereas other courts could potentially find Defendant's conduct permissible. Pursuit of similar claims for systemic reform through multiple individual suits would not only be inefficient, it would create a risk that different courts might order divergent or even conflicting relief.

Certification is also proper pursuant to Rule 23(b)(1)(B), which requires a showing that "adjudications with respect to individual class members that, as a practical matter, would be dispositive of the interests of the other members not

parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." Fed. R. Civ. P. 23(b)(1)(B). ERISA requires that, where appropriate, plan provisions must be "applied consistently with respect to similarly situated claimants." 29 C.F.R. § 2560.503-1(b)(5). If this Court were to find Defendant's policies require Defendant "to act in a certain fashion, ERISA would require [Defendant] to act in a similar fashion toward all beneficiaries—the quintessential (b)(1)(B) scenario." *Z.D. ex rel. J.D. v. Group Health Co-op.*, 2012 WL 1977962, at *7 (W.D. Wash. June 1, 2012); *see also Tracey v. MIT*, 2018 WL 5114167, at *6 (D. Mass. Oct. 19, 2018).

A class is certified under Rule 23(b)(3), when "questions of law or fact common to class members predominate over any questions affecting only individual members," and a class action is "superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

Plaintiff satisfies the predominance requirement because liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Class Member. The evidence necessary to establish Plaintiff's claims is common to all members of the Class: they would seek to prove that PBT is not an "experimental or "investigational" treatment for prostate cancer; and ALIC uniformly applied its medical guideline to deny coverage for PBT in a manner inconsistent with generally accepted standards of care and the terms of Settlement Class Members' materially similar plans.

Under Rule 23(b)(3), the Court considers a "non exhaustive list of four factors" in making its superiority determination: "(A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." *Id.*

The superiority factors weigh in favor of certification under Rule 23(b)(3). As to the first two factors, Counsel are unaware of the existence of any other pending

litigation against ALIC concerning the denial of PBT for the treatment for prostate cancer. With respect to the third factor, this Court has been competently handling this matter through five years of litigation. The final factor, manageability, does not apply here. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997) ("a district court need not inquire whether the case, if tried, would present intractable management problems … for the proposal is that there be no trial.").

### D.  The Court Should Approve the Proposed Notice Plan

Where a class settlement is proposed, Rule 23(e)(1)(B) requires the court to "direct notice in a reasonable manner to all class members who would be bound" by the proposed settlement. To satisfy due process, notice must "reach the parties affected" and "convey the required information." *Adams v. S. Farm Bureau Life Ins. Co.*, 493 F.3d 1276, 1285-86 (11th Cir. 2007). For a Rule 23(b)(3) settlement class, the Court must "direct to class members the best notice that is practicable under the circumstances…." Fed. R. Civ. P. 23(c)(2)(B). The best practicable notice is that which is "reasonably calculated, under all the circumstances, to apprise interested parties of   the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). To satisfy this standard, "[n]ot only must the substantive claims be adequately described but the notice must also contain information reasonably necessary to make a decision to remain a class member and be bound by the final judgment or opt out of the action." *Twigg v. Sears, Roebuck & Co.*, 153 F.3d 1222, 1227 (11th Cir. 1998) (quotation omitted).

The proposed Notice Plan meets these standards. Here, notice includes individual direct notice mailed to all Settlement Class Members as well as email notice, for any Settlement Class Members where the email address is known. The Notice Plan will inform Settlement Class Members' rights and obligations in plain language. (SA, Ex. E.) It includes, among other things: a summary of the lawsuit; a clear definition of the Settlement Class; a description of the material terms of the Settlement; a disclosure of the release of claims; instructions for submitting Settlement claims to the Settlement Administrator; instructions as to how to object

to the Settlement and a date by which Settlement Class Members must object; the date, time, and location of the final approval hearing; and contact information for the Settlement Administrator and Class Counsel. (*Id*.) The direct mail notice and email notice to the Settlement Class Members by the Claims Administrator is presumptively reasonable. *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985).

Plaintiff respectfully requests that the Court approve the Notice program, appoint Atticus as the Settlement Administrator and direct them to affect the Notice to the Settlement Payment Class and establish the Settlement Website.

### E.   The Court Should Schedule a Fairness Hearing

Plaintiff requests that the Court set a schedule for disseminating notice and a Final Approval Hearing. As set forth in the Notice Plan, Plaintiff proposes holding the hearing within 150 days after the entry of the Preliminary Approval Order. The Court will determine at or after the Fairness Hearing whether the Settlement should be approved; whether to enter a final order and judgment under Rule 23(e); and whether to approve Class Counsel's application for attorneys' fees and reimbursement of costs and expenses.

### V.   CONCLUSION

Plaintiff Mark Lemmerman, on behalf of a proposed Settlement Class defined in the proposed Settlement Agreement  fully executed June 5, 2025, hereby moves for an order (1) granting preliminary approval of the Settlement and directing notice to the Class under Fed. R. Civ. P. 23(e)(1); (2) appointing Stephanie A. Casey of Colson Hicks Eidson PA, and Maria D. Garcia and Robert J. Neary of Kozyak Tropin & Throckmorton, LLP, as class counsel under Fed. R. Civ. P. 23(g)(3); (3 approving the Class Notice Plan; and (4) scheduling a final approval hearing under Fed. R. Civ. P. 23(e)(2). The Court, in its discretion, may decide this Motion without a hearing, as Rule 23 only requires a hearing for final approval. A proposed Preliminary Approval Order for the Settlement is attached to this Motion.

Dated: June 6, 2025

Respectfully submitted,

**COLSON HICKS EIDSON**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
E-mail: eservice@colson.com

By: **Stephanie A. Casey**
Stephanie A. Casey
Florida Bar No. 97483
scasey@colson.com
Sabrina Saieh
Florida Bar No. 125290
sabrina@colson.com

– and –

**KOZYAK TROPIN & THROCKMORTON,
LLP**
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

By: **Maria D. Garcia**
Harley S. Tropin
Florida Bar No. 241253
Email: hst@kttlaw.com
Maria D. Garcia
Florida Bar No. 58635
Email: mgarcia@kttlaw.com
Robert Neary
Florida Bar No. 81712
Email: rn@kttlaw.com

*Attorneys for Plaintiff and the Putative Settlement
Class*

21