# Exhibit 1

## <u>SETTLEMENT AGREEMENT AND RELEASE</u>

Plaintiff Mark Lemmerman ("Plaintiff"), by and through his counsel, and Defendant Aetna Life Insurance Company ("ALIC"), by and through its counsel (Plaintiff and Defendant together are referred to herein as the "Parties"), hereby enter into this Settlement Agreement and Release (the "Settlement Agreement") providing, subject to the approval of the Court, for the settlement of the claims herein described against Defendant[1] (the "Settlement").

**WHEREAS**, on March 31, 2020, a Class Action Complaint was filed in the United States District Court for the Southern District of Florida, No. 9:20-cv-80545-KAM (the "Action"); and

**WHEREAS**, in the Action Plaintiff Sharon Prolow asserted claims for benefits and breach of fiduciary duty against Defendant pursuant to the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001, *et seq.* ("ERISA") on behalf of members, participants, and beneficiaries of employee welfare benefit plans (the "Plan") administered by ALIC who were denied proton beam therapy ("PBT") treatment; and

**WHEREAS**, on June 8, 2020, Defendant filed its Motion to Dismiss Plaintiff's Class Action Complaint for failure to state a claim; and

**WHEREAS**, on January 4, 2021, the Court granted in part Defendant's Motion to Dismiss Plaintiff's Class Action Complaint; and

**WHEREAS**, on January 25, 2021, Plaintiff Sharon Prolow filed her First Amended Complaint; and

**WHEREAS**, on February 8, 2021, Defendant filed its Motion to Dismiss Plaintiff's Amended Class Action Complaint for failure to state a claim; and

---

[1] Capitalized terms have definitions as provided in paragraph 1 below.

1

**WHEREAS**, on March 19, 2021, the Court granted in part Defendant's Motion to Dismiss Plaintiff's Amended Class Action Complaint; and

**WHEREAS**, on April 28, 2021, a Second Amended Class Action Complaint was filed, which added Plaintiff Mark Lemmerman as a class representative in this Action; and

**WHEREAS**, on August 4, 2021, Plaintiffs filed a Third Amended Class Action Complaint with consent of Defendant, to conform to additional evidence produced in the case and remove allegations pertaining to dismissed counts leaving only one count for improper denial of benefits; and

**WHEREAS**, on August 30, 2021, Defendant filed its Motion to Dismiss Plaintiffs' Third Amended Class Action Complaint for failure to state a claim; and

**WHEREAS**, on October 13, 2021, the Court denied Defendant's Motion to Dismiss Plaintiffs' Third Amended Class Action Complaint; and

**WHEREAS**, on October 27, 2021, Defendant answered the Third Amended Class Action Complaint; and

**WHEREAS**, on November 1, 2021, the Parties filed cross Motions for Summary Judgment; and

**WHEREAS**, on January 27, 2022, the Court granted Plaintiffs' Motion for Partial Summary Judgment and denied Defendant's Motion for Summary Judgment; and

**WHEREAS**, on April 10, 2023, the Parties requested a stay of the Action for the Parties to explore the possibility of settlement of this matter; and

**WHEREAS**, on November 15, 2024, Plaintiff Sharon Prolow and Defendant filed a stipulation of dismissal with prejudice of her individual claims only; and

**WHEREAS**, Plaintiff and Defendant have conducted a thorough examination and investigation of the facts and law relating to the matters in the Action; and

2

**WHEREAS**, Defendant expressly denies any wrongdoing alleged in the pleadings and does not admit nor concede any actual or potential fault, wrongdoing, or liability in connection with any facts or claims that have been or could have been alleged against them in the Action, but has concluded that settlement is desirable in order to avoid the time, expense, and inherent uncertainties of defending protracted litigation and to resolve, finally and completely, all pending and potential claims of the Plaintiff and all members of the Class which were or could have been asserted by Plaintiff and the Class in the Action; and

**WHEREAS**, while Plaintiff firmly believes in the merits of his case, Plaintiff recognizes the substantial benefits to Plaintiff and the Class under the terms of this Settlement Agreement and the costs, risks, and uncertainty of protracted litigation, especially in complex actions such as this, as well as the difficulties and delays inherent in such litigation, and believe that it is in their interest, and the interest of all Settlement Class Members, to resolve the Action, and any and all claims asserted in the Action against Defendant, in order to provide effective relief promptly to Plaintiff and the Class in this Settlement Agreement; and

**WHEREAS**, after extensive, vigorous discussions, and arm's-length negotiations, and numerous exchanges of information, documentation, and settlement proposals, the Parties were able to reach an agreement to resolve the Action and the disputes between them; and

**WHEREAS**, for purposes of this settlement only, the Parties agree to the certification of a settlement class ("Class" or "Settlement Class"); and

**WHEREAS**, during the course of discovery undertaken in the Action, ALIC provided records identifying 71 potential members of the Class, throughout the United States; and

**WHEREAS**, the Parties believe that this Settlement Agreement offers significant benefits to Settlement Class Members and is fair, adequate, reasonable, and in the best interest of Settlement

3

Class Members; and

**WHEREAS**, this Settlement Agreement is made and entered into by and among Plaintiff, individually and on behalf of the Class, and Defendant; and

**NOW, THEREFORE**, it is hereby stipulated and agreed, by and between the Parties, as follows:

## DEFINITIONS

1.     As used in this Settlement Agreement and the attached exhibits (which are an integral part of this Settlement Agreement and are incorporated in their entirety by reference), the following terms will have the meanings set forth below, unless this Settlement Agreement specifically provides otherwise. Where appropriate, terms used in the singular will be deemed to include the plural and vice versa.

A.     "Action" means the litigation captioned *Prolow, et al. v. Aetna Life Insurance Company*, Case No. 9:20-cv-80545, currently pending in the United States District Court, Southern District of Florida.

B.     "Affiliated Entities" means (i) any current, former, or future direct or indirect parents, subsidiaries, or affiliates of Defendant; (ii) any employees, agents, representatives, contractors, administrators, officers, or directors of Defendant or their direct or indirect parents, shareholders (all natural persons in the definition of Affiliated Entities are collectively referred to as "Affiliated Individuals"); (iii) any corporations in which any such Affiliated Entity or Affiliated Individual is a shareholder in excess of 5%; (iv) any partnerships or any other unincorporated forms of business, or limited liability companies, in which any Affiliated Entity or Affiliated Individual owns an interest in excess of 5%; (v) any employee welfare benefits plans (including any self-funded or insured plans) in which any Plaintiff or Settlement Class Member participates or

4

participated; (vi) any fiduciary, record keeper, claims administrator, plan sponsor, or plan administrator of such employee welfare benefits plans; (vii) any trusts of which any Affiliated Entity or Affiliated Individual is a grantor, trustee, or beneficiary; and (viii) any independent review organization that reviewed any claims for benefits or requests for coverage for PBT for any Settlement Class Member. Affiliated Entities also means any corporations, business entities, partnerships or other unincorporated forms of business, or limited liability companies, that are controlled directly or indirectly by Defendant, Affiliated Entities, or Affiliate Individuals, or that are directly or indirectly under "common control" with Defendant, Affiliated Entities, or Affiliated Individuals as that term is defined under ERISA Section 4001(a)(14)(B), 29 U.S.C. § 1301(a)(14)(B).

C.     "Claims Administrator" means the firm retained by Defendant's Counsel, subject to approval of the Court, to perform the notice and settlement administration duties described in this Settlement as overseen by the Parties' Counsel.

D.     "Class" or Settlement Class" means:

All members, participants, and beneficiaries of ERISA-governed employee welfare benefit plans administered and/or insured by ALIC, diagnosed with Prostate Cancer (specific ICD-10 codes as identified in **Exhibit A**) where (a) the individual was diagnosed with localized prostate cancer, and (b) with respect to proton beam therapy ("PBT") precertification requests submitted after October 9, 2020, had an intact prostate, and (c) received a denial from January 1, 2015, to March 31, 2024, and (d) such denial cites "experimental," "investigational," "unproven" "superior," "superiority," and/or "more effective" as the basis for the denial of the requested PBT delivery code as identified in **Exhibit B**, unless such terms were expressly included in the

5

definition of "medical necessity"/"medically necessary" set forth in the applicable member's Plan Document/Benefits Booklet, who:

> (1) (a) Had a PBT precertification request submitted prior to the date of service (unless precertification was not required by the applicable Plan Document/Benefits Booklet), and (b) subsequently received PBT for the same diagnosis code with no allowed post-service PBT benefit claim(s), and (c) a denied post-service claim for the delivery of PBT for the same diagnosis code, and (d) had no allowed claims related to the same diagnosis code for an alternative recognized medical treatment (specific Current Procedural Terminology ("CPT") codes as identified in **Exhibit C**) not including claims related to treatment plans that include PBT in combination with another modality (e.g., concurrent chemotherapy radiation),

> OR:

> (2) (a) Had an approved PBT precertification request, that was submitted prior to the date of service, and (b) subsequently received PBT for the same diagnosis code with no allowed post-service PBT benefit claim(s), and (c) a denied post-service claim for the delivery of PBT for the same diagnosis code, and (d) had no allowed claims related to the same diagnosis code for an alternative recognized medical treatment (specific CPT codes as identified in **Exhibit C**) not including claims related to treatment plans that include PBT in combination with another modality (e.g., concurrent chemotherapy radiation).

The Settlement Class excludes: i) individuals who received coverage for the delivery of PBT or for an alternative recognized medical treatment (specific CPT codes as identified in **Exhibit C**) from another carrier; and/or ii) individuals who received a final pre-certification or post-service claim denial for an administrative reason (i.e., member not covered under an insured or administered Aetna health benefit plan).

      E.      "Class Counsel" means Colson Hicks Eidson, P.A. and Stephanie A. Casey, and Kozyak Tropin & Throckmorton, LLP and Maria D. Garcia and Robert Neary.

      F.      "Class Counsel Fees and Expenses" means the reasonable attorneys' fees and expenses, if approved by the Court, to be paid by Defendant separately and in addition to the Settlement Amount.

G.     "Class List" means the list of names and last known mailing addresses, as well as last known e-mails and telephone numbers (if available) of all Settlement Class Members whom Defendant was able to identify, believed to be comprised of approximately 71 individuals.

H.     "Class Period" means January 1, 2015 to March 31, 2024.

I.     "Class Representative" means Mark Lemmerman.

J.     "Court" means the United States District Court, Southern District of Florida, the Honorable Kenneth A. Marra and the Honorable William Matthewman.

K.     "Cy Pres Award" means a payment in an amount up to, but not to exceed, the total amount paid to Settlement Class Members with respect to Settlement Claims, if any amount remains after the payment to the Settlement Class.

L.     "Defendant" means ALIC.

M.     "Defendant's Counsel" means Groom Law Group, Chartered and Mark C. Nielsen, and DLA Piper LLP (US) and Ardith Bronson.

N.     "Effective Date," means the date on which the Final Approval Order becomes final as a matter of law, which the Parties hereby deem to be thirty-five (35) days after entry of the judgment if no appeal is filed.  If an appeal is filed, the Effective Date shall be the date on which the final mandate is issued affirming the judgment.

O.     "Final Approval Hearing" means the hearing at which the Court will consider and decide whether to enter the Final Approval Order.

P.     "Final Approval Motion" means the motion Plaintiff will file seeking the Court's final approval of the Settlement.

Q.     "Final Approval Order" means the Court order that approves this Settlement Agreement and makes such other final rulings as are contemplated by this Settlement Agreement.

7

R.      "Individual Release Payment" means $15,000 to be paid individually to Plaintiff as consideration for the Individual General Release, described in paragraphs 26-28, upon approval by the Court.

S.      "Legally Authorized Representative" means an administrator/administratrix or executor/executrix of the estate of a deceased Settlement Class Member, a guardian or conservator of an incapacitated Settlement Class Member or any other legally appointed person or entity having legal power of attorney for the business affairs of a Settlement Class Member. A Legally Authorized Representative does not include a professional objector or claim filing or similar service purporting to act on behalf of an individual Settlement Class Member or group of Settlement Class Members.

T.      "Objection Deadline" means the date agreed upon by the Parties, or otherwise ordered by the Court in the Preliminary Approval Order, by which any Settlement Class Members who wish to do so must object to the Settlement Agreement's terms or provisions and submit any required statements, proof, or other materials and/or argument.

U.      "Opt-Out Deadline" means the date agreed upon by the Parties, or otherwise ordered by the Court in the Preliminary Approval Order, by which any Settlement Class Members who do not wish to be included in the Settlement Class and participate in the Settlement Agreement must submit a Request for Exclusion (to opt-out).

V.      "Parties" means the Plaintiff and Defendant, together.

W.      "Plaintiff" means the Class Representative, Mark Lemmerman.

X.      "Preliminary Approval Motion" means the motion Plaintiff files seeking the Court's preliminary approval of the Settlement.

Y.      "Preliminary Approval Order" means the order of the Court preliminarily

8

approving this Settlement Agreement.

Z.      "Post-marked" means the date by which a communication is marked by the United States Postal Service other recognized mail carrier (UPS or FedEx), or the earliest date that appears as the sent date if sent by e-mail.

AA.      "Released Claims" means any and all past, present and future claims, actions, causes of action, rights or liabilities, costs, expenses, losses, debts, or claims, regardless of forum, arising under federal, state, or local statutory or common law or mandate (including without limitation under any law of any state or territory of the United States, including the District of Columbia, and any federal law or principle of common law or equity, or of international foreign law, which is comparable to section 1542 of the California Civil Code) that were raised or could have been raised in the Action, contingent or non-contingent, accrued or unaccrued, known or unknown, arising out of or related to a precertification or post-service claim denial of health insurance coverage for PBT for a Prostate Cancer diagnosis during the Class Period.

BB.      "Request for Exclusion" means any request by any Settlement Class Member to be excluded from (opt-out of) the Settlement.

CC.      "Settlement" means the agreement by the Parties to resolve the Action, the terms of which have been memorialized and provided for in this Settlement Agreement and all the exhibits attached hereto.

DD.      "Settlement Account" means the account, which is intended to be a "Qualified Settlement Fund" under Section 468B of the Internal Revenue Code of 1986, as amended and Treas. Reg. § 1.46B-1, 26 CFR § 1.468B-1, *et seq.*, as established by Internal Revenue Service regulations, which the Claims Administrator shall establish for purposes of administering monetary relief under this Settlement Agreement.

EE.     "Settlement Agreement" means this Settlement Agreement and all the exhibits attached hereto.

FF.     "Settlement Amount" means exactly three million four hundred and twenty-three thousand dollars and zero cents ($3,423,000), which represents the maximum cash value payable to Settlement Class Members by Defendant ($3,408,000) plus the Individual Release Payment ($15,000).  The Settlement Amount is inclusive of any Cy Pres Award.  The Settlement Amount does not include Settlement Administration Costs or the Class Counsel Fees and Expenses as defined above.

GG.     "Settlement Administration Costs" means all costs and expenses incurred in administering this Settlement Agreement, including, without limitation, the cost of the Settlement Class Notice, the cost of distributing and administering the benefits of the Settlement Agreement, and any other costs incurred by the Claims Administrator to perform the notice and settlement administration duties described in this Settlement.

HH.     "Settlement Claim" means a request for relief under this Settlement Agreement, submitted by a Settlement Class Member as provided for under paragraph 3 below.

II.     "Settlement Claim Form" means the form in substantially the same form as that attached hereto as **Exhibit D**.

JJ.     "Settlement Claim Submission Period" means the time period during which Settlement Class Members may submit Settlement Claims which will commence with the distribution of the Settlement Class Notice and will conclude seventy (70) days thereafter.

KK.     "Settlement Class Members" means all persons who are members of the Settlement Class, except that a member of the Settlement Class shall cease to be a Settlement Class Member if that person submits a valid Request for Exclusion or is otherwise excluded from the

Class including by Order of the Court.

LL.    "Settlement Class Notice" means the Court-approved form of notice to the Settlement Class in substantially the same form as that attached hereto as **Exhibit E**, informing them of, among other things, the (i) preliminary approval of the Settlement; (ii) scheduling of the Final Approval Hearing; (iii) opportunity to submit a Settlement Claim; (iv) opportunity to submit an objection; and (v) opportunity to request exclusion.

**REQUIRED EVENTS.**

2.    Promptly after execution of this Settlement Agreement by all Parties:

A.    Class Counsel will take all reasonable and necessary steps, subject to the Court's availability, to obtain entry of the Preliminary Approval Order and the Final Approval Order as expeditiously as possible. Defendant's Counsel agrees to cooperate in good faith with Class Counsel as necessary with respect to securing the entry of the Preliminary Approval Order and the Final Approval Order.

i.    Plaintiff will seek entry of a Preliminary Approval Order. Plaintiff will file his Preliminary Approval Motion with the proposed Preliminary Approval Order and supporting documents no later than May 1, 2025. The Preliminary Approval Order will, among other things:

a.    Certify the Settlement Class, as defined herein; approve Mark Lemmerman as Class Representative; and appoint his counsel as Class Counsel, pursuant to Fed. R. Civ. P. 23(g).

b.    Preliminarily approve the Settlement;

c.    Appoint the Claims Administrator;

d.    Authorize Defendant and Defendant's Counsel to receive

and to disclose information about Settlement Class Members and their benefit claims and/or precertification requests, including the Class List and Personal Health Information (PHI), necessary for settlement administration, to the Claims Administrator and Class Counsel in order to effectuate notice and implement the Settlement;

       e.      Direct the Claims Administrator to execute the Acknowledgement and Agreement appended to the Stipulated Protective Order, which was entered by the Court on June 7, 2021, and direct the Claims Administrator to adhere to all aspects of that Stipulated Protective Order, and keep confidential from all persons, except as authorized in writing by a Settlement Class Member or as ordered by the Court, the Class List and all PHI of members of the Class.  Any permitted disclosures of Settlement Class Member information in connection with the Settlement shall be limited to the minimum necessary to satisfy the Settlement's requirements.

       f.      Direct Defendant to provide the Class List to the Claims Administrator and a copy to Class Counsel within fifteen (15) business days after the date of the Preliminary Approval Order;

       g.      Direct the Claims Administrator to issue the Settlement Class Notice to the Settlement Class Members listed on the Class List via mail or another method of service that satisfies Rule 23, within thirty (30) days after receiving the Class List from Defendant;

       h.      Determine that the Settlement Class Notice complies with all legal requirements set forth in Fed. R. Civ. P. 23 and, including, but not limited to, the Due Process Clause of the United States Constitution;

       i.      Schedule a date and time for a Final Approval Hearing, not

less than one hundred and fifty (150) days after the date of the Preliminary Approval Order, to determine whether the Settlement should be finally approved by the Court;

j.       Set a deadline for all Settlement Claims to be submitted by Settlement Class Members, which will be seventy (70) days after the Settlement Class Notices are disseminated (the "Submission Deadline");

k.       Require Settlement Class Members who wish to exclude themselves from or object to the Settlement to submit an appropriate and timely written Request for Exclusion or Objection by the Submission Deadline, as specified in the Notice that will be (the "Opt-Out Deadline" or "Objection Deadline");

l.       Require Settlement Class Members who wish to appear to object to the Settlement Agreement to submit an appropriate and timely written statement by the Submission Deadline, as specified in the Notice, *i.e.*, the same date as the the Opt-Out and Objection Deadlines;

m.       Require attorneys representing any objecting Settlement Class Members individually, at the time the objection is filed, at the objecting Settlement Class Members' expense, to file a notice of appearance by the Submission Deadline, as specified in the Notice, *i.e.*, the same date as the  Opt-Out and Objection Deadlines;

n.       Provide that, after the expiration of the deadline for submitting a Request for Exclusion or Objection and prior to Final Approval of the Settlement, Settlement Class Members are preliminarily enjoined from asserting any Released Claims against Defendant or Affiliated Entities, pending a decision by the Court on final approval of this Settlement;

o.       Require the Claims Administrator to send to Class Counsel

and Defendant's Counsel an affidavit no less than forty-five (45) days prior to the Final

Approval Hearing: (i) indicating the number and initials of Settlement Class Members who

submitted Requests for Exclusion to date; and (ii) attesting that the Settlement Class Notice

was disseminated in a manner consistent with the terms of this Settlement Agreement, and

Fed. R. Civ. P. 23, or as otherwise required by the Court;

        p.      Require Class Counsel to file their motion for an award of

attorneys' fees and costs thirty (30) days after entry of the Preliminary Approval Order;

        q.      Require Class Counsel to file their Final Approval Motion

at least thirty (30) days prior to the Final Approval Hearing;

        r.      Issue other related orders as necessary to effectuate the

preliminary approval of the Settlement Agreement.

        ii.      Defendant shall submit the notices required under the Class

Action Fairness Act, 28 U.S.C. § 1715, to the applicable state and federal officials within ten (10)

days of the filing of the Preliminary Approval Motion.

        iii.      Within ten (10) business days of the entry of the Preliminary

Approval Order, Defendant shall provide the Class List to the Claims Administrator and Class

Counsel for the 71 Settlement Class Members previously identified during discovery including:

names; last known addresses; phone numbers; and email addresses, where known. Defendant will

provide a verification that this information is accurate to the best of Defendant's knowledge,

information, and belief as of the date when the Class List is sent.

        iv.      If, after the expiration of the deadline for submitting a Request

for Exclusion or Objection and prior to Final Approval of the Settlement, a Settlement Class

Member initiates a separate action raising one or more Released Claims, (i) as soon as practicable

after discovery of such action Defendant shall provide a copy of the Preliminary Approval Order to counsel for the plaintiff in such action; and (ii) the plaintiff in such action shall within ten (10) days of receiving the Preliminary Approval Order or the deadline for submitting a valid Request for Exclusion, whichever is earlier, withdraw the complaint without prejudice or submit a valid Request for Exclusion. Class Counsel agree to cooperate in good faith with Defendant as necessary with respect to securing such Settlement Class Member's compliance with this section.

      v.      After the Preliminary Approval Hearing, the Parties will seek to obtain from the Court a Final Approval Order in a form to be agreed upon by the Parties.  Plaintiff will file his Final Approval Motion with the proposed Final Approval Order and supporting documents at least thirty (30) days prior to the Final Approval Hearing.  The Final Approval Order will be determined by the Court but is expected to, among other things:

      a.      Approve the Settlement Agreement, pursuant to Fed. R. Civ. P. 23(e)(2).

      b.      Finally certify the Settlement Class for settlement purposes only;

      c.      Find that the Settlement Class Notice was the best practicable notice and complied with all laws, including, but not limited to, the Due Process Clause of the United States Constitution;

      d.      Determine and award reasonable attorneys' fees, costs, and expenses to be paid to Class Counsel, subject to limits in paragraphs 30-31 below;

      e.      Approve the Individual Release Payment to be paid to the Plaintiff;

      f.      Dismiss the Action with prejudice;

g. Incorporate the Release set forth in the Settlement Agreement and make the Release effective as of the date of the Final Approval Order;

h. Bar and permanently enjoin all Settlement Class Members from prosecuting any and all Released Claims against Defendant or its Affiliated Entities;

i. Authorize the Parties to implement the terms of the Settlement Agreement;

j. Retain jurisdiction relating to the administration, consummation, enforcement, and interpretation of the Settlement Agreement, the Final Approval Order, and for any other necessary purpose;

k. Issue any related orders necessary to effectuate the final approval of the Settlement Agreement and its implementation; and

l. Provide that no Settlement Class Member shall have any claim against Class Counsel, the Claims Administrator, Defendant's Counsel, or Defendant or its Affiliated Entities based upon any distribution made substantially in accordance with the Final Approval Order.

vi. Class Counsel will use their best efforts, consistent with the terms of this Settlement Agreement, to promptly obtain a Final Approval Order. Defendant's Counsel agrees to cooperate in good faith with Class Counsel as necessary with respect to securing the entry of the Final Approval Order.

vii. If the Court fails to issue the Preliminary Approval Order or declines to issue the Final Approval Order without leave to resubmit, the terms of this Settlement Agreement are voidable by either Party. However, the Parties agree to use their best efforts, consistent with this Settlement Agreement, to cure any defect(s) identified by the Court.

viii.     The Parties acknowledge that prompt approval, consummation, and implementation of the Settlement set forth in this Settlement Agreement are essential. The Parties will cooperate with each other in good faith to carry out the purposes of and to effectuate this Settlement Agreement, will promptly perform their respective obligations hereunder, and will promptly take any and all actions and execute and deliver any and all additional documents and all other materials or information reasonably necessary or appropriate to carry out the terms of this Settlement Agreement and the transactions contemplated hereby.

ix.     Upon Entry of the Final Approval Order, the Action will be dismissed, on its merits and with prejudice, subject to the continuing jurisdiction of this Court.

**SETTLEMENT TERMS.**

3.     **Class Relief.**

A.     Each Settlement Class Member who satisfies the Class Definition and timely submits a Settlement Claim Form will receive a minimum cash award of $12,000.

B.     Each Settlement Class Member who submits a valid Settlement Claim Form with Required Proof, may receive up to $48,000 in total, based upon the value of their Settlement Claim as determined by the Claims Administrator, as set forth below.

C.     The maximum cash value of the settlement payable to Settlement Class Members is $3,408,000. The maximum cash value payable to Settlement Class Members is determined by assuming all 71 Settlement Class Members will submit Settlement Claims valued at $48,000 each (i.e., 71 * $48,000 = $3,408,000). Under no circumstances shall Defendant be required to pay any further amounts to the Settlement Class with respect to Settlement Claims.

D.      In situations where a Settlement Class Member received multiple PBT benefit claim denials and precertification denials, there will be only one payment made to cover all

17

denials.

E.      Should any portion of the Settlement Amount remain unclaimed, undistributed, or undistributable, an amount equal to the total amount paid to the Settlement Class Members with respect to the Settlement Claims minus the amount of any Individual Release Payment will be paid as the *Cy Pres* Award to NRG Oncology Foundation, Inc.  Any portion of the Settlement Amount remaining after payment to the Settlement Class Members and payment of the *Cy Pres* Award shall revert to Defendant.

F.      It is the intent of the Parties to make all reasonable efforts such that cash awards are made to those individuals whose status as a Settlement Class Member has been confirmed by records provided in discovery and who file a Settlement Claim Form.

G.      It is the intent of the Parties to make all reasonable efforts to assist Settlement Class Members in the process of submitting Settlement Claims and to rehabilitate inconsistent, confusing, or incomplete Settlement Claim Forms returned.

H.      Defendant shall not have any liability for the administration of the Settlement or in determining the sufficiency of Settlement Claims or the amounts paid for Settlement Claims under the Settlement.

I.      Other than as provided in this Agreement, communications with Settlement Class Members relating to the Action or this Settlement shall be handled through Class Counsel and the Claims Administrator; provided, however, that nothing in this Agreement shall be construed to prevent Defendant from communicating with Settlement Class Members in the ordinary course of business. Subject to all ethical standards, Class Counsel may contact the Settlement Class Members as may be needed to effectuate the terms of this Agreement and to secure their participation in the Settlement.

4.      **Required Proof.**  In order for a Settlement Claim to be eligible for a reimbursement payment up to a maximum of $48,000, a Settlement Class Member must submit a Settlement Claim Form, via First Class Mail, e-mail, or other electronic means established by the Claims Administrator, to the Claims Administrator that is post-marked during the Settlement Claim Submission Period and includes the Settlement Class Member's name, current mailing address, and signature, an attestation that the Settlement Class Member: i) has not assigned or otherwise given a power of attorney to any individuals or entity to assert an entitlement to benefits or payments associated with that Settlement Class Member's denied precertification and post-service claims for PBT treatment; and ii) did not receive coverage for PBT or for an alternative recognized medical treatment from another insurer; as well as Proof of Payment or Proof of Indebtedness in excess of $12,000 to verify that at least such amount was paid, or at least such amount of debt incurred that remains outstanding (whether fully paid or merely incurred but not paid) for PBT treatment. "Proof of Payment" includes, but is not limited to, receipt(s) showing payment for PBT treatment from a hospital, treatment center, or physician; cancelled checks; credit card records; notarized affidavits or notarized sworn statements from the individual who made such payment (or an authorized representative of such individual or his or her estate); or any other proof of payment for PBT treatment.  "Proof of Indebtedness" includes, but is not limited to, loan documentation; collection notices; demands for payment on unpaid bills; notarized affidavits or notarized sworn statements from the individual who incurred such debt (or an authorized representative of such individual or his or her estate); or self-pay agreements with a medical care provider that administered PBT treatment. "PBT treatment" refers to expenses related to the PBT treatment as identified on **Exhibit F**, and not expenses otherwise related to other cancer or medical treatment.

5.     **Deficient Settlement Claims.** Any Settlement Claim Form that is not timely post-marked (whether submitted by First Class Mail, e-mail, or other electronic means established by the Claims Administrator), may be denied.

6.     **Parties' Objections.**

A.     The Claims Administrator will provide a report to Defendant's Counsel and Class Counsel, providing with respect to each Settlement Class Member:  (1) whether or not the Settlement Class Member submitted a valid and timely Settlement Claim; and (2) if so, whether the Settlement Claim was approved or denied, and, if approved, the amount of reimbursement (up to $48,000 per Settlement Class Member) that the Claims Administrator determined the Settlement Class Member had substantiated with Required Proof. This report will be provided as soon as possible, but no later than thirty (30) days after the Submission Deadline.

B.     Within fifteen (15) days after receiving the Claims Administrator's report of Settlement Claims, Defendant may object to the approval of a Settlement Claim in an amount in excess of $12,000, in writing to Class Counsel, based on evidence that:

i.      the Settlement Claim relates to a denied PBT benefit claim or PBT precertification request that was ultimately approved;

ii.     the Settlement Claim relates to indebtedness for a denied PBT benefit claim or PBT precertification request that was previously forgiven in full by a healthcare provider, hospital, or other medical care provider who administered the PBT treatment to the respective Settlement Class Member (or such individual or entity's assignee);

iii.    the Settlement Claim was assigned or otherwise transferred to an individual and/or entity;

iv.     the Settlement Claim is submitted by someone excluded from the

Settlement Class; or

            v.      the Settlement Claim is fraudulently submitted.

      C.      Class Counsel and Defendant's Counsel will meet and confer regarding all timely objections that Defendant may make under this paragraph. If the Parties cannot agree on whether an objection should be sustained or overruled, the Parties agree to submit such objections for review to the Court, who will make the final and binding decision regarding the objection.

      7.      **Denied Settlement Claims.**

      A.      Within fifteen (15) days after receiving the Claims Administrator's report of Settlement Claims, Class Counsel may object to the total or partial denial of a Settlement Claim. Class Counsel and Defendant's Counsel will meet and confer regarding all timely objections that Class Counsel may make under this paragraph. If the Parties cannot agree on whether an objection should be sustained or overruled, the Parties agree to submit such objections for review to the Court, who will make the final and binding decision regarding the objection.

      B.      For any Settlement Class Member whose Settlement Claim is denied in whole or in part by the Claims Administrator for any reason, the Claims Administrator will send the Settlement Class Member by First Class Mail a written explanation stating the reason(s) for the total or partial denial, with copies provided to Class Counsel and Defendant's Counsel. The letter also will inform Settlement Class Members of their right to appeal. The Claims Administrator will mail all such denial explanations within sixty (60) days after the Submission Deadline, provided there is no objection to such denial pending.  A Settlement Class Member may submit an appeal that explains the basis for the appeal, in writing, by e-mail or First-Class Mail to the Claims Administrator, post-marked by thirty (30) days after the notice of denial was mailed. The Claims Administrator will send any appeals to Class Counsel and Defendant's Counsel as soon as

practicable after receipt.

8. **Review of Appeals from Denied Settlement Claims.** For any timely-filed appeals, Class Counsel and Defendant's Counsel will have thirty (30) days after receiving an appeal to review and confer regarding whether to grant or deny the appeal. If the Parties cannot agree on whether a timely-submitted appeal should be granted, the Parties agree to submit the appeal for the Court's review, who will make the final and binding decision regarding the Settlement Claim. No further level of review of a Settlement Claim is provided under this Settlement Agreement.

9. **Payment of Settlement Claims.**

A. Within ten (10) days of the Effective Date, the Claims Administrator shall establish a Settlement Account, which shall be treated as a Qualified Settlement Fund, for purposes of administering monetary relief under this Settlement Agreement, and will provide Class Counsel and Defendant's counsel with any information relating to the Settlement Account that is reasonably necessary for Defendant to fund the Settlement Account, including but not limited to a properly executed Form W-9.

B. Within fifteen (15) days of the Effective Date, and upon receipt of a properly executed Form W-9 for the Settlement Account, Defendant will deposit the Settlement Amount into the Settlement Account.

C. Beginning thirty (30) days after the Effective Date and on a rolling basis thereafter, the Claims Administrator will commence issuing payments, in the form of checks or electronic payment, to Settlement Class Members for approved Settlement Claims and to the Plaintiff for the Individual Release Payment, if any. If checks are returned as undeliverable with a forwarding address, the Claims Administrator will re-mail the checks to the forwarding address. If checks are returned without a forwarding address, the Claims Administrator may perform an

electronic search to attempt to locate updated addresses and, if identified, the Claims Administrator will re-mail checks to the updated addresses.

   D. Where a Settlement Class Member is deceased and a payment is due to that Settlement Class Member pursuant to this Settlement Agreement, payment may be made to such Settlement Class Member's Legally Authorized Representative. Where a Settlement Class Member has been declared bankrupt, or is the subject of an open and ongoing bankruptcy proceeding, and a payment is due to the Settlement Class Member, upon receipt of proper notification and documentation submitted by the Settlement Class Member, payment will be made to the bankruptcy trustee, the Settlement Class Member or as otherwise directed in accordance with applicable United States Bankruptcy Code laws.

   E. Each Settlement Class Member shall have one hundred twenty (120) days from the date which appears on the face of check issued to him/her to negotiate the payment for his/her Settlement Claim. If any funds remain in the Settlement Account after each Settlement Class Member's 120-day deadline for negotiating his/her settlement checks has passed, the Claims Administrator shall retain such funds in the Settlement Account for a period of ten (10) days after the last 120-day deadline has passed to allow for the processing and payment of any checks that may still be in the bank's check clearing process. Thereafter, the Claims Administrator shall close out the Settlement Account and issue a check to the *cy pres* recipient up to the amount paid to the Settlement Class Members. Thereafter, the Claims Administrator shall issue a check to Defendant for any remaining balance.

**NOTIFICATION TO SETTLEMENT CLASS MEMBERS.**

   10. Unless otherwise specified, Defendant will pay all costs related to the following notice program.

11.     Within fifteen (15) business days of the entry of the Preliminary Approval Order, Defendant shall provide the Class List to the Claims Administrator and Class Counsel for the 71 Settlement Class Members previously identified during discovery including: names; last known addresses; phone numbers; and email addresses, where known. As consistent with above, Defendant will provide a verification that this information on the Class List is accurate to the best of Defendant's knowledge, information, and belief as of the date when the Class List is sent.

12.     Within thirty (30) days after receiving the Class List, the Claims Administrator will send each Settlement Class Member (via First Class Mail to the addresses on the Class List and via e-mail, if an e-mail address is available) a Settlement Class Notice and Settlement Claim Form, to be returned by First Class Mail, e-mail or other electronic means established by the Claims Administrator, to the Claims Administrator.  If mail is returned as undeliverable with a forwarding address, the Claims Administrator will re-mail to the forwarding address. If mail is returned without a forwarding address, or if a Settlement Class Member does not return a Settlement Claim Form, the Claims Administrator may perform an electronic search to attempt to locate an updated address and, if one is identified, the Claims Administrator will re-send the Settlement Class Notice and Settlement Claim Form to the updated address. The Settlement Claim Form will require each Settlement Class Member to provide his/her current mailing address for transmittal of the payment and the Settlement Class Member's signature. The Settlement Class Notice will provide all relevant dates and information required under Fed. R. Civ. P. 23(c)(2) pertaining to class-action settlements, including Settlement Class Members' ability to object to or request exclusion from the settlement, and the deadlines by which requests for exclusion, objections, and Settlement Claim Forms must be submitted.

A.      Contents of the Settlement Class Notice: The Settlement Class Notice, in a

24

form substantially similar to the one attached to the Settlement Agreement as **Exhibit E**, will advise Settlement Class Members of the following:

        i.        <u>General Terms</u>: The Settlement Class Notice will contain a plain and concise description of the nature of the Action, the history of the Action, the preliminary certification of the Settlement Class, and the proposed Settlement, including information on the identification of Settlement Class Members, how the proposed Settlement would provide relief to the Settlement Class Members, what claims are released under the proposed Settlement, and other relevant terms and conditions.

        ii.        <u>Exclusion/Opt-Out Rights</u>: The Settlement Class Notice will inform Settlement Class Members that they have the right to request exclusion from (opt out of) the Settlement. The Settlement Class Notice will provide the deadlines and procedures for exercising this right.

        iii.        <u>Objection to Settlement</u>: The Settlement Class Notice will inform Settlement Class Members of their right to object to the proposed Settlement and to appear at the Final Approval Hearing. The Settlement Class Notice will provide the deadlines and procedures for exercising these rights.

        iv.        <u>Attorneys' Fees and Expenses and Individual Release Payment</u>: The Settlement Class Notice will inform Settlement Class Members about the amounts being sought by Class Counsel as attorneys' fees and expenses, as well as the Individual Release Payment, and will explain what Defendant will pay and that such payment is in addition to and will not reduce the relief being made available to Settlement Class Members.

        v.        <u>Settlement Claim Form</u>: The Settlement Class Notice will include the Settlement Claim Form, in a form substantially similar to the one attached to the

Settlement Agreement as **Exhibit D**, which will inform the Settlement Class Member that he/she must fully complete and timely return the Settlement Claim Form and required supporting documents within the Settlement Claim Submission Period to be eligible to obtain a recovery.

vi.     <u>Media Inquiries</u>: If the media contacts any Party, that Party may respond to the inquiry by referring to this Settlement Agreement, the Settlement Class Notice, and/or the public docket for this case.

## REQUESTS FOR EXCLUSION BY SETTLEMENT CLASS MEMBERS.

13.     The provisions of this paragraph will apply to any Request for Exclusion.

A.     Any Settlement Class Member may make a Request for Exclusion by delivering such request in writing (by First Class Mail or e-mail) to the Claims Administrator by the Opt-Out Deadline.  Any Request for Exclusion must be post-marked not later than the Opt-Out Deadline specified in the Court's Preliminary Approval Order. Any Request for Exclusion must (1) state the Settlement Class Member's full name and current address; and (2) specifically and clearly state his/her desire to be excluded from the Settlement and from the Settlement Class; and (3) include the Settlement Class Member's signature and date when it was signed.

B.     Any Settlement Class Member who submits a timely Request for Exclusion may not file an objection to the Settlement and will be deemed to have waived any rights or benefits under this Settlement Agreement.

C.     The Claims Administrator will provide Defendant's Counsel and Class Counsel with copies of all Requests for Exclusion within five (5) business days after the Opt-Out Deadline.

## OBJECTIONS BY SETTLEMENT CLASS MEMBERS.

14.     Any Settlement Class Member who has not filed a timely written Request for

Exclusion and who wishes to object to the fairness, adequacy, or reasonableness of this Settlement Agreement or the Settlement, or to the requested award of attorneys' fees and expenses, or the Individual Release Payment must file with the Clerk of the Court a written notice of objection by the Objection Deadline, with a copy to Defendant's Counsel and Class Counsel.

  A. To state a valid objection to the Settlement, an objecting Settlement Class Member must provide the following information in the Settlement Class Member's written objection, by the Objection Deadline (the same date as the Submission Deadline): (1) his/her full name, current address, and current telephone number; (2) whether the objection applies only to the objecting Settlement Class Member, to a specific subset of the Class, or to the entire Class; (3) a statement of the position(s) the objector wishes to assert, including the factual and legal grounds for the position; and (4) any documents that the objector wishes to submit in support of his/her position. If the objector wishes to appear and be heard at the Final Approval Hearing, he or she must file a notice of intention to appear at the Final Approval Hearing ("Notice of Intention to Appear") pursuant to the requirements of paragraph 14.C.

  B. To be procedurally valid, an objection also must include a detailed statement of each objection asserted, including the grounds for objection. Upon the filing of an objection, Class Counsel may choose to take the deposition of the objecting Settlement Class Member at an agreed-upon time and location, and to obtain any evidence relevant to the objection. Failure by an objector to make himself or herself available for deposition or comply with expedited discovery may result in the Court striking the objection. The Court may tax the costs of any such discovery to the objector or the objector's counsel if the Court determines that the objection is frivolous or is made for an improper purpose.

  C. Finally, subject to approval of the Court, any objecting Settlement Class

Member may appear, in person or by counsel, at the Final Approval Hearing held by the Court, to show cause why the proposed Settlement should not be approved as fair, adequate, and reasonable, or object to any requests for attorneys' fees, expenses, or Individual Release Payment. The objecting Settlement Class Member must file with the Clerk of the Court and serve upon all counsel designated in the Settlement Class Notice a Notice of Intention to Appear by the Objection Deadline or on such other date that may be set forth in the Settlement Class Notice. The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that the objecting Settlement Class Member (or his/her counsel) will present to the Court in connection with the Final Approval Hearing. Any Settlement Class Member who does not provide a Notice of Intention to Appear in complete accordance with the deadlines and other specifications set forth in the Settlement Class Notice, and who has not filed an objection in complete accordance with the deadlines and other specifications set forth in this Settlement and the Settlement Class Notice, will be deemed to have waived any objections to the Settlement and will be barred from speaking or otherwise presenting any views at the Final Approval Hearing.

D.     The agreed-upon procedures and requirements for filing objections in connection with the Final Approval Hearing are intended to ensure the efficient administration of justice and the orderly presentation of any Settlement Class Member's objection to the Settlement, in accordance with such Settlement Class Member's due process rights.

E.     The Preliminary Approval Order and Settlement Class Notice will require all Settlement Class Members who have any objections to submit such notice of objection or request to be heard with the Court and serve by mail such notice of objection or request to be heard upon Class Counsel, and Defendant's Counsel at the addresses set forth in the Settlement Class Notice, by no later than the Objection Deadline.

F.     The Preliminary Approval Order will further provide that objectors who fail to properly and/or timely to file their objections with the Court, along with the required information and documentation set forth above, or to serve them as provided above, will not be heard during the Final Approval Hearing, and their objections will be waived and will not be considered by the Court.

G.     Class Counsel will be responsible for addressing all objections.

H.     Any Settlement Class Member who objects to the Settlement will be entitled to all of the benefits of the Settlement if this Settlement Agreement and the terms contained herein are approved, as long as the objecting Settlement Class Member complies with all the requirements of this Settlement Agreement applicable to Settlement Class Members.

**RELEASE, DISMISSAL OF ACTION, AND JURISDICTION OF COURT.**

15.     **Class Release.** Upon the Effective Date, Settlement Class Members and the Class Representative, on their own behalf and on behalf of any of his or her respective predecessors, successors, assigns, assignors, representatives, attorneys, agents, trustees, insurers, heirs, estates, beneficiaries, executors, administrators, and any natural, legal, or juridical person or entity to the extent he, she, or it is or will be entitled to assert any claim on behalf of any Settlement Class Member (the "Releasing Parties"), will fully, finally, and forever release, relinquish, and discharge the Defendant and its Affiliated Entities from, and shall forever be enjoined from prosecution of Defendant and its Affiliated Entities for, any and all Released Claims.  This release includes any such claims that the Class Representative and Settlement Class Members do not know of or suspect to exist in their favor at the time of this release and that, if known by them, might have affected their settlement and release of the Released Parties, or might have affected their decision not to object to this agreement. The foregoing release includes without limitation an express release, to

29

the fullest extent permitted by Florida law, and any and all other applicable state laws.

16.     The foregoing release also includes without limitation an express release, to the fullest extent permitted by law, of any and all rights under any law of any state or territory of the United States, including the District of Columbia, and any federal law or principle of common law or equity, or of international foreign law, which is comparable to section 1542 of the *California Civil Code*, which provides:

> **A general release does not extend to claims which the creditor does not know or suspect to exist in his or her favor at the time of executing the release, which if known by him or her must have materially affected his or her settlement with the debtor**.

17.     The Class Representative and Settlement Class Members recognize that even if they later discover facts in addition to or different from those they know or believe to be true, they nevertheless agree that upon entry of the Final Approval Order and judgment, the Class Representative and Settlement Class Members fully, finally, and forever settle and release any and all of the Released Claims. The foregoing release was bargained for and is a material element of this Settlement Agreement.

18.     Other claims for benefits for unrelated diseases or treatments are not being released hereby. No individual Settlement Class Member is providing a release or is being barred from any ERISA or non-ERISA claims pending or in the future, including, but not limited to compensatory, bad faith or punitive damages that may be permitted under the laws of any applicable jurisdiction for claims for benefits for unrelated diseases or treatments.  Defendant for itself and its direct and indirect parents, subsidiaries, affiliates, successors in interest, officers, directors, agents, attorneys, and all other persons or entities acting on its behalf retains all legal, jurisdictional, contractual, and statutory defenses applicable to any such claims brought by any Settlement Class Member as described above.

19.     Without in any way limiting its scope, this Release encompasses, by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, consultant fees, interest, litigation fees, costs, or any other fees, costs, and/or disbursements incurred by Class Counsel or by Plaintiff on behalf of the Class, except to the extent otherwise specified in the Settlement Agreement.

20.     This Settlement Agreement and Release does not affect the rights of Settlement Class Members who timely and properly request exclusion from (opt-out of) the Settlement.  The administration and consummation of the Settlement as embodied in this Settlement Agreement will be under the authority of the Court.  The Court will retain jurisdiction to protect, preserve, and implement the Settlement Agreement including, but not limited to, the Release.  The Court also will retain jurisdiction to enter such further orders as may be necessary or appropriate in administering and implementing the terms and provisions of the Settlement Agreement.

21.     The Class Representative represents that, as of the date of this agreement, he is not aware of any Settlement Class Members who have filed claims or actions for the relief sought in this Action, other than the Class Representative.

22.     Without in any way limiting its scope, this Release encompasses, by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, consultant fees, interest, litigation fees, costs, or any other fees, costs, and/or disbursements incurred by Class Counsel or by Plaintiff, except to the extent otherwise specified in this Settlement Agreement.

23.     The Class Representative expressly agrees that this Release will be and may be raised as a complete defense to and will preclude any action relating to the Released Claims.

24.     Upon the Effective Date: (1) the Settlement Agreement will be the exclusive remedy for any and all Settlement Class Members for Released Claims, except those who have properly

requested exclusion from (opted out of) the Settlement in accordance with the terms and provisions hereof; (2) the Defendant will not be subject to liability or expense of any kind to any Settlement Class Member(s) for Released Claims except as set forth herein; and (3) Settlement Class Members will be permanently barred from initiating, asserting, or prosecuting any and all Released Claims against Defendant in any federal or state court in the United States or any other tribunal.

25.   Nothing in this Release will preclude any action to enforce the terms of the Settlement Agreement, including participation in any of the processes detailed herein.

26.   **Plaintiff's Individual General Release.** In further consideration of the Individual Release Payment, Plaintiff Mark Lemmerman fully, finally, and forever releases, relinquishes, and discharges the Defendant and its Affiliated Entities from, and shall forever be enjoined from prosecution of Defendant and its Affiliated Entities for, any and all claims, actions, causes of action, rights or liabilities, costs, expenses, losses, debts, or claims, regardless of forum, arising under federal, state, or local statutory or common law or mandate (including without limitation under any law of any state or territory of the United States, including the District of Columbia, and any federal law or principle of common law or equity, or of international foreign law, which is comparable to section 1542 of the California Civil Code) that were raised or could have been raised in the Action, contingent or non-contingent, accrued or unaccrued, known or unknown, up through the date of this Settlement Agreement.

27.   Without in any way limiting its scope, this Release encompasses, by example and without limitation, any and all claims for attorneys' fees, costs, expert fees, consultant fees, interest, litigation fees, costs, or any other fees, costs, and/or disbursements incurred by Class Counsel or by Plaintiff individually, except to the extent otherwise specified in the Settlement Agreement.

28.     Should the Court not approve an Individual Release Payment, in whole or in part, the Individual General Release shall be severed from this Settlement Agreement and be null and void. This Settlement is not contingent upon the Court's approval of the Individual Release Payment. Any order or proceeding relating to the Individual Release Payment, or any appeal from any order relating thereto, or any reversal or modification thereof, shall have no effect on the Settlement, and shall not operate to, or be grounds to, terminate or cancel the Agreement or to affect or delay the finality of the Final Approval Order or any Judgment. Plaintiff represents and warrants that he is the sole and exclusive owner of the claims he has asserted and is releasing under this Settlement Agreement. Plaintiff further acknowledges that he has not assigned, pledged, or in any manner whatsoever sold, transferred, assigned, or encumbered any right, title, interest, or claim arising out of or in any way whatsoever pertaining to the Action, including, without limitation, any claim for benefits, proceeds, or value under the Action, and that Plaintiff is not aware of anyone other than himself claiming any interest, in whole or in part, in the Action or in any benefits, proceeds, or values under the Action.

**SETTLEMENT ADMINISTRATION COSTS, ATTORNEYS' FEES, EXPENSES.**

29.     All Settlement Administration Costs will be paid by Defendant.

30.     As part of the resolution of the Action, the Parties have agreed that pursuant to 29 USC § 1132(g), Class Counsel may apply for, and Defendant will not oppose, an award of attorneys' fees, inclusive of costs and expenses, not to exceed $1,675,000 in the aggregate. The Parties have further agreed that Class Counsel shall not seek payment of any amount for any attorneys' fees, costs, and/or expenses in excess of $1,675,000, if awarded by the Court.

31.     The Class Counsel Fees and Expenses and Individual Release Payment will be paid by Defendant and are separate and apart from, and in addition to any relief provided to the

Settlement Class.

A.      Defendant will not be liable for or obligated to pay any fees, expenses, costs, or disbursements to, or incur any expense on behalf of, any person or entity, either directly or indirectly, in connection with this Action, this Settlement Agreement, or the proposed Settlement, other than the amount or amounts expressly provided for in this Settlement Agreement.

B.      Defendant is not responsible for any of Class Counsel's attorneys' fees and/or internal costs for the Settlement, including, but not limited to, any investigative, expert, and/or actuarial costs, or any other claims for fees or expenses, other than the attorneys' fees and expenses that may be awarded by the Court pursuant to this Settlement Agreement.

C.      Within thirty (30) days after the Effective Date, Defendant or its counsel shall distribute the Court-approved Class Counsel Fees and Expenses to Class Counsel, in the manner provided for by the Court in its Final Approval Order. Class Counsel will provide Defendant's Counsel with necessary IRS Form W-9s as soon as practicable after the Effective Date, but in no event later than three (3) business days.

D.      No person shall have any claim against the Defendant and/or its Affiliated Entities, Defendant's Counsel, or any other agent designated by Defendant based upon the distributions made substantially in accordance with this Settlement Agreement or further orders of the Court.

## REPRESENTATIONS, WARRANTIES, AND COVENANTS.

32.      Class Counsel, who are signatories hereof, represent and warrant that they have the authority, on behalf of Plaintiff and Class Counsel, to execute, deliver, and perform this Settlement Agreement and to consummate all of the transactions contemplated hereby. This Settlement Agreement has been duly and validly executed and delivered by Class Counsel and Plaintiff and

34

constitutes their legal, valid, and binding obligation.

33.     Defendant represents and warrants that it has the authority to execute, deliver, and perform this Settlement Agreement and to consummate the transactions contemplated hereby. The execution, delivery, and performance by Defendant of this Settlement Agreement and the consummation by it of the actions contemplated hereby have been duly authorized by all necessary corporate action on the part of Defendant. This Settlement Agreement has been duly and validly executed and delivered by Defendant and constitutes its legal, valid, and binding obligation.

34.     **Right to Terminate Settlement.**

A.     The Parties shall each have the right to unilaterally terminate this Settlement Agreement by providing written notice of their election to do so within twenty (20) business days after any of the following have occurred: (A) the Court, or any appellate court(s), rejects, modifies, or denies approval of any portion of this Settlement Agreement or the proposed Settlement that the terminating Party reasonably determines(s) is material, including without limitation, the terms of relief, the findings or conclusions of the Court, the provisions relating to notice, the definition of the Class, or the terms of the Release; or (B) the Court, or any appellate court, does not enter or completely affirm, or alters or expands, any portion of the Final Approval Order, or any of the Court's findings of fact or conclusions of law, that the terminating Party reasonably determine(s) is material.

B.     The above notwithstanding, the Parties agree that, should any of the conditions set forth in paragraph 34.A occur, the Parties will, within the above-indicated period, meet and confer by telephone in a good-faith attempt to reach agreement on a settlement of this Action.

C.     In addition, Defendant shall have the right to terminate this Settlement

Agreement unilaterally by providing written notice to Class Counsel of Defendant's election to do so within fifteen (15) business days after the Opt-Out Deadline if more than ten percent (10%) of Settlement Class Members exclude themselves from (opt out of) the Settlement.

      D.     In the event the Settlement Agreement is terminated under paragraphs 34.A or C above:

      i.     This Settlement Agreement will be null and void and will have no force or effect and no Party to this Settlement Agreement will be bound by any of its terms, except for the terms set forth in this paragraph;

      ii.     The Parties will petition to have lifted any stay orders entered pursuant to this Settlement Agreement;

      iii.     All of the provisions, and all negotiations, statements, and proceedings relating to it, will be without prejudice to the rights of Defendant, Plaintiff, or any Settlement Class Member, all of whom will be restored to their respective positions immediately prior to the signing of this Settlement Agreement, except that the Parties will cooperate in requesting that the Court set a new scheduling order such that no Parties' substantive or procedural rights are prejudiced by the attempted settlement;

      iv.     Defendant expressly and affirmatively reserves all defenses and arguments as to all claims that have been or might later be asserted in the Action, including, without limitation, the argument that this Action may not be litigated as a class action;

      v.     Neither this Settlement Agreement, nor the fact of its having been made, nor the negotiations leading to it, nor any discovery or action taken by a Party or Settlement Class Member pursuant to this Settlement Agreement, will be admissible or entered into evidence for any purpose whatsoever;

      vi.      The Parties agree to jointly ask the Court to vacate any Settlement-related order(s) or judgment(s) entered in this Action after the date of execution of this Agreement;

      vii.      Settlement Class Members, Plaintiff, and Class Counsel shall not in any way be responsible or liable for any Settlement Administration expenses or taxes, including costs of notice and administration associated with this Settlement or this Agreement, except that each Party shall bear its own attorneys' fees and costs and Defendant's future payment obligations shall cease; and

      viii.      Defendant shall have no further obligations to pay Settlement Class Members, Plaintiff, or class counsel under the terms of this Settlement set for this in this Agreement.  If the Settlement Agreement is terminated under paragraphs 34.A and B, the Party that terminated the settlement under such paragraphs shall be exclusively responsible for the Settlement Administration expenses and taxes actually incurred, for which the non-terminating Party and his or its counsel are not liable.  If the Settlement Agreement is terminated under paragraph 34.C, Defendant will be responsible for such expenses and taxes, for which Plaintiff and Class Counsel are not liable.

## **MISCELLANEOUS PROVISIONS.**

      35.      The Parties expressly acknowledge and agree that this Settlement Agreement and the exhibits and related documents thereto along with all related drafts, motions, pleadings, conversations, negotiations, and correspondence, constitute an offer of compromise and a compromise within the meaning of Federal Rule of Evidence 408 and any equivalent rule of evidence in any state. In no event will this Settlement Agreement, any of its provisions, or any negotiations, statements, or court proceedings relating to its provisions in any way be construed as, offered as, received as, used as, or deemed to be evidence of any kind in the Action, any other action, or in any judicial, administrative, regulatory, or other proceedings, except in a proceeding

to enforce this Settlement Agreement or the rights of the Parties or their counsel.

36.     Without limiting the foregoing, this Settlement Agreement, its exhibits, any related documents, any related negotiations, statements, or court proceedings will not be construed as, offered as, received as, used as, or deemed to be evidence or an admission or concession of any liability, wrongdoing, fault, or omission of any kind whatsoever by Defendant with respect to any alleged wrongdoing, fault, or omission of any kind whatsoever, regardless of whether or not this Settlement Agreement results in entry of a Final Approval Order as contemplated herein. Defendant specifically denies all of the allegations made in connection with the Action. Neither this Settlement Agreement nor any class certification pursuant to it will constitute, in this or in any other proceeding, an admission by the Defendant, or evidence or a finding of any kind, that any requirement for class certification is satisfied with respect to the Action, or any other litigation, except for the limited purpose of settlement pursuant to this Settlement Agreement. This Settlement Agreement also is made with the Parties' understanding and agreement that (A) under applicable laws, it is appropriate that a class be certified for settlement purposes only (*i.e.*, without needing to satisfy fully the standard required for certification of the matter for litigation purposes); (B) Defendant contests and denies that any class, including the proposed Settlement Class, is suitable for certification as a class under the law of any jurisdiction, other than for the purposes of this Settlement Agreement; and (C) notwithstanding any other provisions of this Settlement Agreement, all actions and proceedings pursuant to it will be consistent with the foregoing. This provision will survive the expiration or voiding of the Settlement Agreement.

37.     Within thirty (30) days after the Effective Date, the Parties agree they will jointly stipulate to the dismissal with prejudice of the Action.  The Parties agree they will request that the Court retain jurisdiction to enforce the Settlement Agreement until one hundred and seventy-five

(175) days after the Effective Date.  The headings of the sections and paragraphs of this Settlement Agreement are included for convenience only and will not be deemed to constitute part of this Settlement Agreement or to affect its construction.

38.     This Settlement Agreement, including all exhibits attached hereto, may not be modified or amended except in writing and signed by all of the Parties and, if after the Court has issued its Final Approval Order, with approval of the Court.

39.     This Settlement Agreement may be executed in one or more counterparts, each of which will be deemed an original but all of which together will constitute one and the same instrument. Signatures may be obtained electronically via DocuSign, AdobeSign, or similar service.

40.     This Agreement and the rights and obligations of the Parties hereunder shall be construed and enforced in accordance with, and shall be governed by, the laws of the state of Florida, to the extent not preempted by federal law, and without regard to principles of conflict of laws.

41.     Any disagreement or action to enforce this Settlement Agreement will be commenced and maintained only in the Court in which this Action is pending.

42.     Except as otherwise provided in this Settlement Agreement, each Party to this Settlement Agreement will bear his, her, its, or their own costs of the Action.

43.     The Parties to this Settlement Agreement reserve the right, by agreement and subject to the Court's approval, to grant any reasonable extensions of time that may be necessary to carry out any of the provisions of this Settlement Agreement, as well as to correct any inadvertent, non-substantive mistakes or typographical errors contained in any of the Settlement papers, without additional costs or attorneys' fees.

44.     Proper notice will be given to Plaintiff and Defendant of all applications for Court approval or Court orders required under this Settlement Agreement.

45.     The determination of the terms of, and the drafting of, this Settlement Agreement, including its exhibits, has been by mutual agreement after negotiation, with consideration by and participation of all Parties and their counsel. Since this Settlement Agreement was drafted with the participation of all Parties and their counsel, the presumption that ambiguities will be construed against the drafter does not apply. Each of the Parties was represented by competent and effective counsel throughout the course of settlement negotiations and in the drafting and execution of this Settlement Agreement, and there was no disparity in bargaining power among the Parties to this Settlement Agreement. No parol or other evidence may be offered to explain, modify, construe, contradict, or clarify its terms, the intent of the Parties or their counsel, or the circumstances under which this Settlement Agreement was made or executed.

46.     All of the exhibits to this Settlement Agreement are material and integral parts hereof and are fully incorporated herein by reference.  This Settlement Agreement and the exhibits hereto constitute the entire, fully integrated agreement among the Parties and cancel and supersede all prior written and unwritten agreements and understandings pertaining to the Settlement of the Actions.

47.     The Parties agree that any disputes regarding the meaning of the terms and conditions of this Settlement Agreement, the Parties' rights and obligations under this Settlement Agreement, or the manner in which any issue or dispute arising under this Settlement Agreement should be resolved, will be submitted to the Court for resolution.

48.     The Parties agree and acknowledge that this Settlement Agreement includes a covenant of good faith and fair dealing.

49.     The waiver by one Party of any breach of this Settlement Agreement by another Party will not be deemed a waiver of any prior or subsequent breach of this Settlement Agreement.

50.     If one Party to this Settlement Agreement considers another Party to be in breach of its obligations under this Settlement Agreement, that Party must provide the breaching Party with written notice of the alleged breach within ten (10) days of discovery of the breach and provide a reasonable opportunity to cure the breach before taking any action to enforce any rights under this Settlement Agreement.

51.     All time periods set forth herein will be computed in calendar days unless otherwise expressly provided. In computing any period of time prescribed or allowed by this Settlement Agreement or by order of the Court, the day of the act, event, or default from which the designated period of time begins to run will not be included. The last day of the period so computed will be included, unless it is a Saturday, Sunday, or legal holiday, or, when the action to be done is the filing of a paper in court, a day on which conditions or events have made the office of the clerk of the court inaccessible, in which event the period will run until the end of the next day that is not one of the aforementioned days.  As used in this section "legal holiday" includes New Year's Day, Birthday of Martin Luther King, Jr., Presidents' Day, Memorial Day, Juneteenth National Independence Day, Independence Day, Labor Day, Columbus Day/Indigenous Peoples Day, Veterans' Day, Thanksgiving Day, Christmas Day, and any other day appointed as a holiday by the President or the Congress of the United States.

52.     All notices to the Parties or counsel required by this Settlement Agreement will be made in writing and communicated by electronic and regular mail to the following addresses (unless one of the Parties subsequently designates one or more other designees):

If to Class Counsel:                        Stephanie A. Casey
                                            **COLSON HICKS EIDSON, P.A.**

255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
scasey@colson.com

Maria D. Garcia
Robert Neary
**KOZYAK TROPIN &**
**THROCKMORTON, LLP**
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Mgarcia@kttlaw.com
rn@kttlaw.com

If to Defendant's Counsel:                    Ardith Bronson
**DLA Piper LLP (US)**
200 South Biscayne Blvd., Suite 2500
Miami, Florida 33131
ardith.bronson@dlapiper.com

Brian Benjet
**DLA Piper LLP (US)**
One Liberty Place
1650 Market Street, Suite 4900
Philadelphia, Pennsylvania 19103
brian.benjet@dlapiper.com

Mark C. Nielsen
Paul J. Rinefierd
**Groom Law Group, Chartered**
1701 Pennsylvania Ave. N.W.
Washington, D.C. 20006
mnielsen@groom.com
prinefierd@groom.com

     **IN WITNESS WHEREOF**, Plaintiff and Defendant, have executed this Settlement

Agreement as of the date(s) indicated on the lines below.

_____
MARK LEMMERMAN

_____
Date

_____
AETNA LIFE INSURANCE COMPANY

6/5/25
_____
Date

By: Sara Goldfarb

Title: VP, Senior Legal Counsel

Signed by:

_____     6/5/2025
B5FD8D36C4384AC...                              _____
MARK LEMMERMAN                                  Date


_____     _____
AETNA LIFE INSURANCE COMPANY                   Date


By: _____


Title: _____

## EXHIBIT A

| Diagnosis Code | Diagnosis |
|---|---|
| 185 | MALIGNANT NEOPLASM OF PROSTATE |
| 233.4 | CARCINOMA IN SITU OF PROSTATE |
| 236.5 | NEOPLASM OF UNCERTAIN BEHAVIOR OF PROSTATE |
| 236.99 | NEOPLASM OF UNCERTAIN BEHAVIOR OF OTHER AND UNSPECIFIED URINARY ORGANS |
| 239.5 | NEOPLASM OF UNSPECIFIED NATURE OF OTHER GENITOURINARY ORGANS |
| C61 | MALIGNANT NEOPLASM OF PROSTATE |
| D07.5 | CARCINOMA IN SITU OF PROSTATE |
| D29.1 | BENIGN NEOPLASM OF PROSTATE |
| D40.0 | NEOPLASM OF UNCERTAIN BEHAVIOR OF PROSTATE |
| N42.30 | UNSPECIFIED DYSPLASIA OF PROSTATE |
| N42.31 | PROSTATIC INTRAEPITHELIAL NEOPLASIA |
| N42.32 | ATYPICAL SMALL ACINAR PROLIFERATION OF PROSTATE |
| N42.39 | OTHER DYSPLASIA OF PROSTATE |
| V10.46 | PERSONAL HISTORY OF MALIGNANT NEOPLASM OF PROSTATE |
| V16.42 | FAMILY HISTORY OF MALIGNANT NEOPLASM OF GENITAL ORGAN, PROSTATE |
| V76.44 | SPECIAL SCREENING FOR MALIGNANT NEOPLASMS OF THE PROSTATE |
| V84.03 | GENETIC SUSCEPTIBILITY TO MALIGNANT NEOPLASM OF PROSTATE |
| Z12.5 | ENCOUNTER FOR SCREENING FOR MALIGNANT NEOPLASM OF PROSTATE |
| Z15.03 | GENETIC SUSCEPTIBILITY TO MALIGNANT NEOPLASM OF PROSTATE |
| Z19.2 | HORMONE RESISTANT MALIGNANCY STATUS |
| Z80.42 | FAMILY HISTORY OF MALIGNANT NEOPLASM OF PROSTATE |
| Z85.46 | PERSONAL HISTORY OF MALIGNANT NEOPLASM OF PROSTATE |
| Z90.79 | ACQUIRED ABSENCE OF OTHER GENITAL ORGAN(S) |

**EXHIBIT B**

| CPT Code | PBT DELIVERY/ADMINISTRATION CODES |
|---|---|
| 77520 | PROTON TREATMENT DELIVERY; SIMPLE, WITHOUT COMPENSATION |
| 77522 | PROTON TREATMENT DELIVERY; SIMPLE, WITH COMPENSATION |
| 77523 | PROTON TREATMENT DELIVERY; INTERMEDIATE |
| 77525 | PROTON TREATMENT DELIVERY; COMPLEX |

**EXHIBIT C**

| Codes | Description |
|---|---|
| **Hyperthermia and concurrent external beam radiation therapy, External Beam Photon Radiation Therapy, Electron Beam Radiation Therapy** | |
| 77301 | Intensity modulated radiotherapy plan, including dose-volume histograms for target and critical structure partial tolerance specifications |
| 77338 | Multi-leaf collimator (MLC) device(s) for intensity modulated radiation therapy (IMRT), design and construction per IMRT plan |
| 77385 | Intensity modulated radiation treatment delivery (IMRT), includes guidance and tracking, when performed; simple |
| 77386 | Intensity modulated radiation treatment delivery (IMRT), includes guidance and tracking, when performed; complex |
| 77402 | Radiation treatment delivery, >=1 MeV; simple |
| 77407 | Radiation treatment delivery, >=1 MeV; intermediate |
| 77412 | Radiation treatment delivery, >=1 MeV; complex |
| G6003 | Radiation treatment delivery, single treatment area,single port or parallel opposed ports, simple blocks or no blocks: up to 5 mev |
| G6004 | : 6-10 mev |
| G6005 | : 11-19 mev |
| G6006 | : 20 mev or greater |
| G6007 | Radiation treatment delivery, 2 separate treatment areas, 3 or more ports on a single treatment area, use of multiple blocks: up to 5 mev |
| G6008 | : 6-10 mev |
| G6009 | : 11-19 mev |
| G6010 | : 20 mev or greater |
| G6011 | Radiation treatment delivery,3 or more separate treatment areas, custom blocking, tangential ports, wedges, rotational beam, compensators, electron beam; up to 5 mev |
| G6012 | ; 6-10 mev |
| G6013 | ; 11-19 mev |
| G6014 | ; 20 mev or greater |
| G6015 | Intensity modulated treatment delivery, single or multiple fields/arcs,via narrow spatially and temporally modulated beams, binary, dynamic mlc, per treatment session |
| G6016 | Compensator-based beam modulation treatment delivery of inverse planned treatment using 3 or more high resolution (milled or cast) compensator, convergent beam modulated fields, per treatment session |
| | |
| **Image-Guided Radiation Therapy (IGRT)** | |
| 77014 | Computed tomography guidance for placement of radiation therapy fields |
| 77387 | Guidance for localization of target volume for delivery of radiation treatment, |

|  | includes intrafraction tracking, when performed |
|---|---|
| G6001 | Ultrasonic guidance for placement of radiation therapy fields |
| G6002 | Stereoscopic x-ray guidance for localization of target volume for the delivery of radiation therapy |
| G6017 | Intra-fraction localization and tracking of target or patient motion during delivery of radiation therapy (eg,3d positional tracking, gating, 3d surface tracking), each fraction of treatment |
|  |  |
| **Three-Dimensional conformal radiation therapy (3DCRT)** | |
| 77280 | Therapeutic radiology simulation-aided field setting; simple |
| 77285 | Therapeutic radiology simulation-aided field setting; intermediate |
| 77290 | Therapeutic radiology simulation-aided field setting; complex |
| 77293 | Respiratory motion management simulation (List separately in addition to code for primary procedure) |
| 77295 | 3-dimensional radiotherapy plan, including dose-volume histograms |
| 4165F | 3-dimensional conformal radiotherapy (3D-CRT) or intensity modulated radiation therapy (IMRT) received (PRCA) |
|  |  |
| **Stereotactic radiosurgery (SRS)** | |
| 77011 | Computed tomography guidance for stereotactic localization |
| 77371 | Radiation treatment delivery, stereotactic radiosurgery (SRS), complete course of treatment of cranial lesion(s) consisting of 1 session; multi-source Cobalt 60 based |
| 77372 | ; linear accelerator based |
| 77432 | Stereotactic radiation treatment management of cranial lesion(s) (complete course of treatment consisting of 1 session) |
|  |  |
| **Stereotactic body radiation therapy (SBRT), Total Body Irradiation (TBI) and Fractionated stereotactic radiotherapy (FSRT)** | |
| 77373 | Stereotactic body radiation therapy, treatment delivery, per fraction to 1 or more lesions, including image guidance, entire course not to exceed 5 fractions |
| 77435 | Stereotactic body radiation therapy, treatment management, per treatment course, to 1 or more lesions, including image guidance, entire course not to exceed 5 fractions |
| 77470 | Special treatment procedure (e.g., total body irradiation, hemibody radiation, per oral or endocavitary irradiation) |
| G0339 | Image-guided robotic linear accelerator-based stereotactic radiosurgery, complete course of therapy in one session or first session of fractionated treatment |
| G0340 | Image-guided robotic linear accelerator-based stereotactic radiosurgery, delivery including collimator changes and custom plugging, fractionated treatment, all lesions, per session, second through fifth sessions, maximum five sessions per course of treatment |
|  |  |

| | **Neutron Beam Therapy** |
|---|---|
| 77423 | High energy neutron radiation treatment delivery, 1 or more isocenter(s) with coplanar or non-coplanar geometry with blocking and/or wedge, and/or compensator(s) |
| | |
| | **Intraoperative radiation therapy (IORT) [with photons or electrons]** |
| 19294 | Preparation of tumor cavity, with placement of a radiation therapy applicator for intraoperative radiation therapy (IORT) concurrent with partial mastectomy (List separately in addition to code for primary procedure) |
| 77424 | Intraoperative radiation treatment delivery, x-ray, single treatment session |
| 77425 | Intraoperative radiation treatment delivery, electrons, single treatment session |
| 77469 | Intraoperative radiation treatment management |
| 77470 | Special treatment procedure (eg, total body irradiation, hemibody radiation, per oral or endocavitary irradiation) |
| C9726 | Placement and removal (if performed) of applicator into breast for intraoperative radiation therapy, add-on to primary breast procedure |
| | |
| | **Brachytherapy [low dose (LDR) or high dose (HDR)]** |
| 0394T | High dose rate electronic brachytherapy, skin surface application, per fraction, includes basic dosimetry, when performed |
| 0395T | High dose rate electronic brachytherapy, interstitial or intracavitary treatment, per fraction, includes basic dosimetry, when performed |
| 77750 | Infusion or instillation of radioelement solution (includes 3-month follow-up care) |
| 77761 | Intracavitary radiation source application; simple |
| 77762 | Intracavitary radiation source application; intermediate |
| 77763 | Intracavitary radiation source application; complex |
| 77767 | Remote afterloading high dose rate radionuclide skin surface brachytherapy, includes basic dosimetry, when performed; lesion diameter up to 2.0 cm or 1 channel |
| 77768 | Remote afterloading high dose rate radionuclide skin surface brachytherapy, includes basic dosimetry, when performed; lesion diameter over 2.0 cm and 2 or more channels, or multiple lesions |
| 77770 | Remote afterloading high dose rate radionuclide interstitial or intracavitary brachytherapy, includes basic dosimetry, when performed; 1 channel |
| 77771 | Remote afterloading high dose rate radionuclide interstitial or intracavitary brachytherapy, includes basic dosimetry, when performed; 2-12 channels |
| 77772 | Remote afterloading high dose rate radionuclide interstitial or intracavitary brachytherapy, includes basic dosimetry, when performed; over 12 channels |
| 77778 | Interstitial radiation source application, complex, includes supervision, handling, loading of radiation source, when performed |
| 77789 | Surface application of low dose rate radionuclide source |
| 77790 | Supervision, handling, loading of radiation source |

| 77799 | Unlisted procedure, clinical brachytherapy |
|---|---|
| 77261 | Therapeutic radiology treatment planning; simple |
| 77262 | Therapeutic radiology treatment planning; intermediate |
| 77263 | Therapeutic radiology treatment planning; complex |
| 77295 | 3-dimensional radiotherapy plan, including dose-volume histograms |
| 77316 | Brachytherapy isodose plan; simple (calculation[s] made from 1 to 4 sources, or remote afterloading brachytherapy, 1 channel), includes basic dosimetry calculation(s) |
| 77317 | Brachytherapy isodose plan; intermediate (calculation[s] made from 5 to 10 sources, or remote afterloading brachytherapy, 2-12 channels), includes basic dosimetry calculation(s) |
| 77318 | Brachytherapy isodose plan; complex (calculation[s] made from over 10 sources, or remote afterloading brachytherapy, over 12 channels), includes basic dosimetry calculation(s) |
| 77336 | Continuing medical physics consultation, including assessment of treatment parameters, quality assurance of dose delivery, and review of patient treatment documentation in support of the radiation oncologist, reported per week of therapy |
| | |
| **Chemotherapy** | |
| 96401 | Chemotherapy administration, subcutaneous or intramuscular; non-hormonal anti-neoplastic |
| 96402 | ; hormonal anti-neoplastic |
| 96405 | Chemotherapy administration; intralesional, up to and including 7 lesions |
| 96406 | more than 7 lesions |
| 96409 | Chemotherapy administration; intravenous, push technique, single or initial substance/drug |
| 96411 | Chemotherapy administration; intravenous, push technique, each additional substance/drug (List separately in addition to code for primary procedure) |
| 96413 | Chemotherapy administration, intravenous infusion technique; up to 1 hour, single or initial substance/drug |
| 96415 | Chemotherapy administration, intravenous infusion technique; each additional hour (List separately in addition to code for primary procedure) |
| 96416 | Chemotherapy administration, intravenous infusion technique; initiation of prolonged chemotherapy infusion (more than 8 hours), requiring use of a portable or implantable pump |
| 96417 | Chemotherapy administration, intravenous infusion technique; each additional sequential infusion (different substance/drug), up to 1 hour (List separately in addition to code for primary procedure) |
| 96420 | Chemotherapy administration, intra-arterial; push technique |
| 96422 | Chemotherapy administration, intra-arterial; infusion technique, up to 1 hour |
| 96423 | Chemotherapy administration, intra-arterial; infusion technique, each additional hour (List separately in addition to code for primary procedure) |

| 96425 | Chemotherapy administration, intra-arterial; infusion technique, initiation of prolonged infusion (more than 8 hours), requiring the use of a portable or implantable pump |
|---|---|
| 96440 | Chemotherapy administration into pleural cavity, requiring and including thoracentesis |
| 96446 | Chemotherapy administration into the peritoneal cavity via indwelling port or catheter |
| 96450 | Chemotherapy administration, into CNS (eg, intrathecal), requiring and including spinal puncture |
| 96521 | Refilling and maintenance of portable pump |
| 96522 | Refilling and maintenance of implantable pump or reservoir for drug delivery, systemic (eg, intravenous, intra-arterial) |
| 96523 | Irrigation of implanted venous access device for drug delivery systems |
| 96542 | Chemotherapy injection, subarachnoid or intraventricular via subcutaneous reservoir, single or multiple agents |
| 96549 | Unlisted chemotherapy procedure |
|  |  |
| **Chemoradiotherapy (CRT)** | |
|  | No code for concurrent Chemoradiotherapy |
|  |  |
| **Stereotactic radiation therapy / Photon Radiation Therapy** | |
| 32701 | Thoracic target(s) delineation for stereotactic body radiation therapy (SRS/SBRT), (photon or particle beam), entire course of treatment |
|  |  |
| **Involved-site radiation therapy (ISRT)** | |
|  | No Specific code |
|  |  |
| **Surgery/Resection** | |
| 52601 | Transurethral electrosurgical resection of prostate, including control of postoperative bleeding, complete (vasectomy, meatotomy, cystourethroscopy, urethral calibration and/or dilation, and internal urethrotomy are included) |
| 52630 | Transurethral resection; residual or regrowth of obstructive prostate tissue including control of postoperative bleeding, complete (vasectomy, meatotomy, cystourethroscopy, urethral calibration and/or dilation, and internal urethrotomy are included) |
| 55801 | Prostatectomy, perineal, subtotal (including control of postoperative bleeding, vasectomy, meatotomy, urethral calibration, and /or dilation, and internal urethrotomy) |
| 55810 | Prostatectomy, perineal radical |
| 55812 | Prostatectomy, perineal radical; with lymph node biopsy (s) (limited pelvic lymphadenectomy) |
| 55815 | Prostatectomy, perineal radical; with bilateral pelvic lymphadenectomy, including external iliac, hypogastric and obturator nodes |

| 55821 | Prostatectomy (including control of postoperative bleeding, vasectomy, meatotomy, urethral calibration and/or dilation, and internal urethrotomy); suprapubic, subtotal, 1 or 2 stages |
| 55831 | Prostatectomy (including control of postoperative bleeding, vasectomy, meatotomy, urethral calibration and/or dilation, and internal urethrotomy); retropubic, subtotal |
| 55840 | Prostatectomy, retropubic radical, with or without nerve sparing |
| 55842 | Prostatectomy, retropubic radical, with or without nerve sparing; with lymph node biopsy(s) (limited pelvic lymphadenectomy) |
| 55845 | Prostatectomy, retropubic radical, with or without nerve sparing; with bilateral pelvic lymphadenectomy, including external iliac, hypogastric, and obturator nodes |
| 55866 | Laparoscopy, surgical prostatectomy, retropubic radical, including nerve sparing, includes robotic assistance, when performed |
| 55867 | Laparoscopy, surgical prostatectomy, simple subtotal (including control of postoperative bleeding, vasectomy, meatotomy, urethral calibration and/or dilation, and internal urethrotomy), includes robotic assistance, when performed |
| | |
| **Androgen Deprivation Therapy (ADT)** | |
| G9894 | Androgen deprivation therapy prescribed/administered in combination with external beam radiotherapy to the prostate |
| G9895 | Documentation of medical reason(s) for not prescribing/administering androgen deprivation therapy in combination with external beam radiotherapy to the prostate (e.g., salvage therapy) |
| G9896 | Documentation of patient reason(s) for not prescribing/administering androgen deprivation therapy in combination with external beam radiotherapy to the prostate |
| G9897 | Patients who were not prescribed/administered androgen deprivation therapy in combination with external beam radiotherapy to the prostate, reason not given |
| | |
| **Selective Internal Radiation Therapy (SIRT)** | |
| 37243 | Vascular embolization or occlusion, inclusive of all radiological supervision and interpretation, intraprocedural roadmapping, and imaging guidance necessary to complete the intervention; for tumors, organ ischemia, or infarction |
| 75894 | Transcatheter therapy, embolization, any method, radiological supervision and interpretation |
| 79445 | Radiopharmaceutical therapy, by intra-arterial particulate administration |
| 77778 | Interstitial radiation source application, complex, includes supervision, handling, loading of radiation source, when performed |
| S2095 | Transcatheter occlusion or embolization for tumor destruction, percutaneous, any method, using yttrium-90 microspheres |

## EXHIBIT D

## CLAIM FORM

***Prolow v. Aetna Life Ins. Co.* Class Action Settlement**
United States District Court for the Southern District of Florida
Case No. 9:20-cv-80545-KAM

**You __MUST__ sign and return this Claim Form by _____ if you wish to receive payment as part of this settlement**. You may also download a copy of this Claim Form at **www. .com.**-

**You will receive a settlement payment of $12,000** if you correctly and timely submit this Claim Form with **Section I** (page 2) completed.

**To receive a larger settlement payment of up to $48,000**, you need to correctly and timely submit this Claim Form with **Section II** only (pages 3-5) completed. Section II requires you to provide documentation that you paid amounts and/or incurred debt that collectively totaled *more than* $12,000 for Proton Beam Therapy treatment (Section II, Parts B and C).

**Submit Your Completed Claim Form (and any documents required under Section II) in Any of the Following Ways:**

    **(1)**    **Email to:**    _____@_____.com

    **(2)**    **Mail to:**    _____
                         P.O. Box _____
                         _____, __ _____

    **(3)**    **Upload at**    www._____,com

To be valid, the Claim Form (with **either** Section I or Section II completed) **MUST** be signed and dated, and postmarked or emailed by _____.

| |
|---|
| Questions?<br><br>Visit: www._____.com<br><br>Or Contact:<br><br>Stephanie A. Casey, Esq.        Maria D. Garcia, Esq.<br>COLSON HICKS EIDSON, P.A.    KOZYAK TROPIN &<br>255 Alhambra Circle, Penthouse    THROCKMORTON, LLP<br>Coral Gables, Florida 33134      2525 Ponce de Leon, 9th Floor<br>scasey@colson.com              Coral Gables, Florida 33134<br>                              mgarcia@kttlaw.com |

**EXHIBIT D**

---

**SECTION I**

FOR SETTLEMENT CLASS MEMBERS SEEKING A PAYMENT OF **$12,000**

---

I attest that I am legally authorized to submit this form (as a Settlement Class Member or Settlement Class Member's Legally Authorized Representative).

Signature: _____     Date: _____

Printed Name: _____

Your contact information:

Mailing address: _____

Email Address(es) _____

Phone Number(s): _____

***PLEASE NOTE; It is your responsibility to notify the Claims Administrator and Class Counsel if you change your mailing address or other contact information.***

***If the addressee(s) of this Claim Form is/are unable to fill it out, and you have received this Claim Form because you are the Settlement Class Member's Legally Authorized Representative, please note this under your printed name above by also indicating the capacity in which you are filling out the form.***

**EXHIBIT D**

> ## SECTION II
>
> FOR SETTLEMENT CLASS MEMBERS WITH CLAIMS IN EXCESS OF $12,000
> WHO ARE SEEKING A TOTAL PAYMENT OF **UP TO $48,000**

If the amount paid and/or incurred for Proton Beam Therapy treatment totaled more than $12,000, you may be eligible to receive a larger settlement payment of up to $48,000.  See Exhibit 1 attached hereto for applicable CPT codes.

In order to make a claim for a settlement payment in excess of $12,000 and up to **$48,000**, please provide a response to **Part A** below by stating (1) the total amount paid for Proton Beam Therapy treatment, and (2) if you have not yet fully paid the amount owed for Proton Beam Therapy treatement, the amount you still owe for obtaining Proton Beam Therapy treatment.  **If you do not know the exact amount, you may provide an estimate of this amount to the best of your knowledge.**

To receive a larger settlement payment of up to **$48,000**, **you must also provide proof of payment and/or proof of indebtedness with this Claim Form**.  **Part B** describes the documents to provide to show your proof of payment or proof of indebtedness with this Claim Form.  **Part C** sets forth an optional notarized affidavit or sworn statement from you (or an authorized representative) further supporting your claim for the amount you identified.

**PLEASE MAKE SURE TO SIGN AND PROVIDE YOUR CONTACT INFORMATION ON PAGE 6**.

## Part A

To the best of my knowledge, the total amount paid and/or the total amount billed and owed for Proton Beam Therapy treatment is:

Total Amount Paid:     $_____

And, if applicable,

Total Amount Still Owed: $_____

## Part B

Please provide copies of any documentation with this completed Claim Form that supports the amount you identified in Response to Part A above.

## EXHIBIT D

- <u>Proof of payment</u> includes, but is not limited to, receipt(s) showing payment for Proton Beam Therapy treatment from a hospital, treatment center, or physician; cancelled checks; credit card records; notarized affidavits or notarized sworn statements from the individual who made such payment (an authorized representative of such individual or his or her estate); or any other proof of payment for Proton Beam Therapy treatment.

- <u>Proof of indebtedness</u> includes, but is not limited to, loan documentation; collection notices; demands for payment on unpaid bills; notarized affidavits or notarized sworn statements from the individual who incurred such debt (an authorized representative of such individual or his or her estate); or self-pay agreements with a medical care provider that administered Proton Beam Therapy treatment.

## Part C

In addition to providing the required proof of payment or indebtedness referenced above, you also may provide an **optional statement** from you (or your authorized representative) supporting your claim that the amount identified in Response to Part A above was paid, or is still owed as debt. It is not necessary to provide this statement, but it may be helpful. **If you do provide this statement, then it must be notarized.** If you need more room, please attach additional sheets as necessary:

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

## EXHIBIT D

       The responses and/or explanations I have provided in Section II above are true and correct, to the best of my knowledge, information, and memory.  I also attest that I am legally authorized to submit this form (as a Settlement Class Member or Settlement Class Member's Legally Authorized Representative).

Signature: _____        Date:  _____

Printed Name: _____

Your contact information:

Mailing address:            _____

Email Address(es)          _____

Phone Number(s):          _____

***PLEASE NOTE; It is your responsibility to notify the Claims Administrator and Class Counsel if you change your mailing address or other contact information.***

***If the addressee(s) of this Claim Form is/are unable to fill it out, and you have received this Claim Form because you are the Settlement Class Member's Legally Authorized Representative, please note this under your printed name above by also indicating the capacity in which you are filling out the form .***

**EXHIBIT 1**

| CPT Code | PBT TREATMENT CODES |
|----------|---------------------|
| 77261 | THERAPEUTIC RADIOLOGY TREATMENT PLANNING SIMPLE |
| 77262 | THERAPEUTIC RADIOLOGY TREATMENT PLANNING INTERMEDIATE |
| 77263 | THERAPEUTIC RADIOLOGY TREATMENT PLANNING COMPLEX |
| 77280 | THERAPEUTIC RADIOLOGY SIMULATION-AIDED FIELD SETTING SIMPLE |
| 77285 | THERAPEUTIC RADIOLOGY SIMULATION-AIDED FIELD SETTING INTERMEDIATE |
| 77290 | THERAPEUTIC RADIOLOGY SIMULATION-AIDED FIELD SETTING COMPLEX |
| 77293 | RESPIRATORY MOTION MANAGEMENT SIMULATION |
| 77295 | 3-D RADIOTHERAPY PLAN DOSE-VOLUME HISTOGRAMS |
| 77300 | BASIC RADIATION DOSIMETRY CALCULATION |
| 77301 | RADIOTHERAPY DOSE PLAN IMRT |
| 77306 | TELETHERAPY ISODOSE PLAN SIMPLE |
| 77307 | TELETHERAPY ISODOSE PLAN CPLX |
| 77316 | BRACHYTHERAPY ISODOSE PLAN SIMPLE |
| 77317 | BRACHYTHERAPY ISODOSE INTERMED |
| 77318 | BRACHYTHERAPY ISODOSE COMPLEX |
| 77321 | SPECIAL TELETHERAPY PORT PLAN, PARTICLES, HEMIBODY, TOTAL BODY |
| 77331 | SPECIAL DOSIMETRY |
| 77332 | TREATMENT DEVICES, DESIGN AND CONSTRUCTION; SIMPLE |
| 77333 | TREATMENT DEVICES, DESIGN AND CONSTRUCTION; INTERMEDIATE |
| 77334 | TREATMENT DEVICES, DESIGN AND CONSTRUCTION; COMPLEX |
| 77370 | SPECIAL MEDICAL RADIATION PHYSICS CONSULTATION |
| 77427 | RADIATION TREATMENT MANAGEMENT, 5 TREATMENTS |
| 77431 | RADIATION THERAPY MANAGEMENT WITH COMPLETE COURSE OF THERAPY CONSISTING OF 1 OR 2 FRACTIONS ONLY |
| 77520 | PROTON TREATMENT DELIVERY; SIMPLE, WITHOUT COMPENSATION |
| 77522 | PROTON TREATMENT DELIVERY; SIMPLE, WITH COMPENSATION |
| 77523 | PROTON TREATMENT DELIVERY; INTERMEDIATE |
| 77525 | PROTON TREATMENT DELIVERY; COMPLEX |

**EXHIBIT C**

## NOTICE OF PROPOSED CLASS ACTION SETTLEMENT

### DO NOT DISCARD THIS NOTICE.
### THIS SETTLEMENT AFFECTS YOUR LEGAL RIGHTS

You have received this Notice because records indicate that you were a member, participant, and/or beneficiary of an employee welfare benefit plan governed by the Employee Retirement Income Security Act of 1974 ("ERISA"), which was administered and/or insured by Aetna Life Insurance Company ("Aetna"). In addition, between January 1, 2015, to March 31, 2024, you for yourself, or a beneficiary covered by your benefit plan, received a denial of all precertification requests and denials of all post-service benefit claims for the administration of proton beam therapy ("PBT") to treat localized prostate cancer or received an approval for precertification of PBT and received denials of all post-service claims for the administration of PBT to treat localized prostate cancer.

The Settlement establishes a $3.423 million Settlement Fund of which $3.408 million will be used to pay a minimum of $12,000 and a maximum of $48,000 per Settlement Class Member as reimbursement for PBT for the treatment of localized prostate cancer.

*The United States District Court for the Southern District of Florida authorized this Notice. This is not a solicitation from a lawyer. The Court in charge of this case is the United States District Court for the Southern District of Florida, and the case is titled Sharon Prolow and Mark Lemmerman v. Aetna Life Insurance Company, Case No. 9:20-cv-80545 (the "Action").*

| YOUR LEGAL RIGHTS AND OPTIONS IN THIS SETTLEMENT ||
|---|---|
| **SUBMIT A CLAIM FORM** | **Submitting a Settlement Claim Form is the only way to get a payment in this Settlement.** The Settlement Claim Form is enclosed with this Notice. Aetna's records indicate that you may qualify as a Settlement Class Member. By submitting the enclosed Claim Form you can establish your membership in the Class. **All Settlement Class Members who complete and timely submit the enclosed Settlement Claim Form establishing their membership in the Class will receive a minimum payment of $12,000.** Upon the submission of proof that your Settlement Claim exceeds $12,000, you may be able to receive a total payment of **up to $48,000.** |
| **DO NOTHING** | If you do not submit a Settlement Claim Form and take no further action, you will not receive any payment and you will still be bound by the terms of the Settlement. |
| **EXCLUDE YOURSELF** | You will not receive any payment. This is the only option that allows you to ever be a part of any other lawsuit against Aetna or other "Affiliated Entities" related to the legal claims at issue in this case. |
| **OBJECT TO THE SETTLEMENT** | Advise the Court of your disagreement with the Settlement. |
| **GO TO A HEARING** | Ask to speak in Court about the fairness of the Settlement, at a hearing that the Court has scheduled for _____. |

QUESTIONS? CALL 1-___-___-____ TOLL-FREE, OR VISIT www. _____.com.

- 1 -

EXHIBIT C

## WHAT THIS NOTICE CONTAINS

**BASIC INFORMATION** ......................................................................................................... ▢

1. Why did I get this Letter?
2. Which companies are part of the Settlement?
3. What is this lawsuit about?
4. Why is this a class action?
5. Why is there a Settlement?

**WHO IS IN THE SETTLEMENT** ....................................................................................... ▢

6. How do I know if I am part of the Settlement?
7. Are there exceptions to being included?
8. I'm still not sure if I am included.

**THE SETTLEMENT BENEFITS—WHAT YOU GET IF YOU QUALIFY** ........................... ▢

9. What do I need to participate in the Settlement and how much might my payment be?
10. What is the appropriate proof that needs to be submitted to receive a payment in excess of $12,000?
11. Who is the Claims Administrator?
12. If I am the intended recipient of this Notice, but my address has changed, what do I do to let you know my new address so that the check is sent to me at the right place?
13. When will I get my payment?
14. What if I disagree with the amount of my payment?
15. What am I giving up in return for payment?

**EXCLUDING YOURSELF FROM THE SETTLEMENT** ................................................. ▢

16. How do I get out of the Settlement?
17. What is a "Legally Authorized Representative"?
18. If I don't exclude myself, can I sue the Defendant for the same thing later?
19. If I exclude myself, can I get a payment from this Settlement?

**THE LAWYERS REPRESENTING YOU** ......................................................................... ▢

20. Do I have a lawyer in this case?
21. How will the lawyers get paid?

**OBJECTING TO THE SETTLEMENT** ............................................................................. ▢

22. How do I tell the Court that I object to the Settlement?
23. What's the difference between objecting and excluding yourself?

**THE COURT'S FINAL APPROVAL HEARING** ............................................................... ▢

24. When and where will the Court decide whether to approve the Settlement?
25. Do I have to come to the Hearing?
26. May I speak at the Hearing?

**IF YOU DO NOTHING** ................................................................................................... ▢

27. What happens if I do nothing at all?

**GETTING MORE INFORMATION** ................................................................................. ▢

28. How do I get more information about the Settlement?

QUESTIONS?  CALL 1-___-___-____  TOLL-FREE, OR VISIT www. _____.com.

- 2 -

**EXHIBIT C**

---

### BASIC INFORMATION

---

| **1. Why did I get this Letter?** |
|---|

You are receiving this letter (called a "<u>Notice</u>") and the enclosed Settlement Claim Form because the Parties believe that you are a Settlement Class Member, based on a review of Aetna's records.

The Court authorized this Notice and enclosed Settlement Claim Form because you have a right to know about a proposed settlement of this class action, and about all of your options, before the Court decides whether to give "final approval" to the Settlement.  If the Court approves the Parties' Class Action Settlement Agreement ("<u>Settlement Agreement</u>"), and after any objections and appeals are resolved, payments will be made to those who qualify.

This Notice explains the Action, the Settlement, your legal rights, what benefits are available under the Settlement, who is eligible for them, and how to receive them.

Mark Lemmerman, who filed this Action, is called the Plaintiff, and the company he sued, Aetna, is called the "Defendant" in this Notice.

---

| **2. Which companies are part of the Settlement?** |
|---|

This Settlement involves Defendant Aetna.

---

| **3. What is this Action about?** |
|---|

Mark Lemmerman, on his own behalf and on behalf of other persons similarly situated, filed the Action against Defendant alleging generally that during a period of several years, Defendant wrongfully denied pre-certification requests and post-service benefit claims for the administration of PBT.

Defendant denies that it did anything wrong, and maintains that it complied with its obligations under the respective ERISA-governed employee welfare benefit plans and with all applicable laws.  However, the Parties have agreed to settle the Action to avoid the cost, delay, and uncertainty of continued litigation.

---

| **4. Why is this a class action?** |
|---|

In a class action lawsuit, one or more people called "Class Representatives" (in this case, Mark Lemmerman) sued on behalf of a group of people who have similar claims.  All of these people together are a "Class" or "Settlement Class Members."  One court resolves the issues of all Settlement Class Members, except for those people who choose to exclude themselves from the Class. Judge Kenneth A. Marra of the United States District Court for the Southern District of Florida is the federal judge presiding over this class action.

---

| **5. Why is there a settlement?** |
|---|

After this matter was filed, but before it reached trial, both sides agreed to a Settlement, which, if approved, brings the Action to an end.  That way, Plaintiff and Defendant avoid the cost, delay, and uncertainty of moving forward in litigation to trial and possible appeals, and the Settlement Class Members get payments.  The Class Representative and his attorneys think that settlement is best for the Settlement Class Members and that the Settlement is fair, adequate, and reasonable.

---

QUESTIONS?  CALL 1-___-___-____ TOLL-FREE, OR VISIT www. _____.com.

---

## WHO IS IN THE SETTLEMENT

---

**6. How do I know if I am part of the Class and Settlement?**

Based on a review of Aetna's records, you are receiving this Notice because the Parties believe that you potentially are a member of the Class, and therefore are part of the Settlement.

The Class includes all members, participants, and beneficiaries of ERISA-governed employee welfare benefit plans administered and/or insured by Aetna who:

- Was diagnosed with localized prostate cancer; AND
- Submitted a precertification request for the administration of PBT prior to the date of service (unless precertification was not required by the applicable Plan Document/Benefits Booklet); AND
- If a precertification request for the administration of PBT was made after October 9, 2020, had an intact prostate at the time the precertification request was made; AND
- Received a precertification denial for the administration of PBT between January 1, 2015, and March 31, 2024; AND
- Such denial cites "experimental," "investigational," "unproven" "superior," "superiority," and/or "more effective" as the basis for the denial of the requested PBT delivery code, unless such terms were expressly included in the definition of "medical necessity"/"medically necessary" set forth in the applicable member's Plan Document/Benefits Booklet; AND
- Received PBT for the same diagnosis code with no allowed post-service PBT benefit claim(s); AND
- Had no allowed claims related to the same diagnosis code for an alternative recognized medical treatment not including claims related to treatment plans that include PBT in combination with another modality (e.g., concurrent chemotherapy radiation).

The Class ALSO includes all members, participants, and beneficiaries of ERISA-governed employee welfare benefit plans administered and/or insured by Aetna, who:

- Was diagnosed with localized prostate cancer; AND
- Submitted a PBT precertification request prior to the date of service that was initially approved;
- If a precertification request for PBT was made after October 9, 2020, had an intact prostate at the time the precertification request was made; AND
- Received PBT for the same diagnosis code with no allowed post-service PBT benefit claim(s); AND
- A post-service claim for the delivery of PBT for the same diagnosis code was denied; AND
- Received a denial between January 1, 2015, and March 31, 2024; AND
- Such denial cites "experimental," "investigational," "unproven" "superior," "superiority," and/or "more effective" as the basis for the denial of the requested PBT delivery code, unless such terms were expressly included in the definition of "medical necessity"/"medically necessary" set forth in the applicable member's Plan Document/Benefits Booklet; AND
- Had no allowed claims related to the same diagnosis code for an alternative recognized medical treatment not including claims related to treatment plans that include PBT in combination with another modality (e.g., concurrent chemotherapy radiation).

**If you were sent this Notice by the Claims Administrator and your name and your current or previous address appears as the intended recipient of the Notice, that means that Aetna's records indicate you are potentially a Settlement Class Member.**

See Question 7 below for exceptions to the Class definition.

---

QUESTIONS?  CALL 1-___-___-____ TOLL-FREE, OR VISIT www. _____.com.

- 4 -

**7. Are there exceptions to being included in the Class?**

Yes.  Excluded from the Class are: (1) individuals who received coverage for PBT or for certain alternative recognized medical treatment from another carrier; and/or (2) individuals who received a final pre-certification or post-service claim denial for an administrative reason (i.e., member not covered under an insured or administered Aetna health benefit plan); (3) Defendant, as well as Defendant's affiliates, attorneys, agents, insurers, the attorneys representing Defendant in this case; and (4) the Judge to whom this case is assigned and their immediate family members and staff.

**8. I'm still not sure if I am included.**

If you are still not sure whether you are included, you can get free help.  You can call the Claims Administrator toll-free at 1-___-___-____; or send an e-mail to mail@_____.com; or visit www._____.com for more information.  You may also contact counsel for the Class who can be reached as follows: Stephanie A. Casey, phone – 305-476-7400, email – scasey@colson.com; or Maria D. Garcia, phone - 305-372-1800, email – mgarcia@kttlaw.com

---

**THE SETTLEMENT BENEFITS—WHAT YOU GET**

---

**9. What do I need to do to participate in the Settlement and how much could my payment be?**

Each Settlement Class Member who completes and timely submits the enclosed Settlement Claim Form establishing their membership in the Class will receive a payment of **$12,000**.  However, in the event a Settlement Class Member paid amounts and/or incurred debt to receive PBT treatment that collectively totaled more than $12,000, that Settlement Class Member may receive **up to $48,000** in total, based upon the value of their claim as determined by the Claims Administrator, **if appropriate proof is submitted as described in Question 10, below**.

If you decide to submit a completed Settlement Claim Form and appropriate proof, if applicable, you must send these materials to the Claims Administrator via e-mail to _____, by First Class Mail to _____., or by uploading the documents and claim form to www._____.com.  The claim form and documents must be emailed, uploaded, or mailed and post-marked, by _____.

Your final payment will be calculated and then distributed according to the process described in Question 10.

**10.  What is the appropriate proof that needs to be submitted to receive a payment in excess of $12,000?**

If you seek more than **$12,000 as a payment, you must also submit with your Settlement Claim Form proof of payment and/or proof of indebtedness for PBT treatment,** to verify that you paid an amount and/or incurred debt that collectively totaled more than $12,000.  "PBT treatment" refers to expenses related to the administration of PBT, and not expenses otherwise related to other cancer or medical treatment. A list of the applicable codes that may be included in the calculation of proof of payment and/or proof of indebtedness is attached here as Exhibit 1.

An amount up to $48,000 will be paid in that event, depending upon the contents of the proof provided.

- **Proof of payment** includes, but is not limited to, receipts showing payment for PBT treatment from a hospital, treatment center, or physician; cancelled checks; credit card records; notarized affidavits or notarized sworn statements from the individual who made such payment (or an authorized representative of such individual or his or her estate); or any other proof of payment for PBT treatment.
- **Proof of indebtedness** includes, but is not limited to, loan documentation; collection notices; demands for payment on unpaid bills; notarized affidavits or notarized sworn statements from the individual who incurred

---

QUESTIONS?  CALL 1-___-___-____ TOLL-FREE, OR VISIT www._____.com.

- 5 -

**EXHIBIT C**

such debt (or an authorized representative of such individual or his or her estate); or self-pay agreements with a medical care provider that administered PBT.

Based upon available records, the Parties believe there are 71 potential Settlement Class Members. Accordingly, Defendant will be making a Settlement Amount to create a fund available in the amount of $ 3,423,000. This will allow each of the 71 potential Settlement Class Members to make a claim for, and potentially receive up to, a $48,000 payment upon the submission of a valid Settlement Claim Form, and if the appropriate proof is provided. In addition, this will allow for payment of $15,000 to Plaintiff Lemmerman. As consideration for such Individual Release Payment, Plaintiff Lemmerman will execute a broader release of claims than the other Class Members. This is not a payment related to the Settlement Claims, nor does it reduce the funds available to the Settlement Class Members. Should any portion of this fund, with the exception of the Individual Release Payment to Plaintiff Lemmerman, remain unclaimed or undistributed to the Settlement Class Members, Aetna will pay up to an amount equal to the total amount paid to the Settlement Class Members with respect to the settlement claims to one or more charitable organizations as designated by the Court. Any remaining amounts will revert to the Defendant.

If the Settlement becomes final, the Action will be dismissed with prejudice (*i.e.*, cannot be brought against Defendant again), and Defendant and others will receive a complete release and discharge of the claims asserted in the Action from Plaintiff and every Settlement Class Member. (See Questions 24 through 27 for more details.)

| 11.  Who is the Claims Administrator? |
|---|

The Claims Administrator is ▭▭▭▭▭. You can call the Claims Administrator toll-free at 1-___-___-____; send an e-mail to mail@_____.com; or visit www. _____.com for more information. The Claims Administrator's mailing address can be found in Question 12.

| 12.  If I am the intended recipient of this Notice, but my address has changed, what do I do to let you know my new address so that the check is sent to me at the right place? |
|---|

For your convenience, there is a Change of Address Form at the end of this Notice. You must fill it out completely (providing your current address) and send the Form via First Class Mail so that it is **post-marked by** _____ to the following address:

        P.O. Box _____

        _____,__ _____

If you are a Settlement Class Member's Legally Authorized Representative (see Question 17), and your address has changed, you must also fill out the second page of the Address Verification Form and provide your own contact and other information.

You also may complete the Change of Address Form on the Settlement website, www. _____.com. The deadline for doing so is _____.

| 13.  When will I get my payment? |
|---|

The exact date that qualifying Settlement Class Members will receive checks is not known at this time, because it depends on events as described below.

The Court must first hold a hearing on _____ __, ____, at __ _.m. (Eastern time) to decide whether to approve the Settlement. If the Court approves the Settlement (see Question 24 below), there may be appeals. It is always uncertain whether these appeals can be resolved, and resolving them could take time.

If the Court approves the Settlement, and the Settlement becomes final, the Claims Administrator will begin mailing checks to Settlement Class Members within 30 days after the Settlement becomes final.

QUESTIONS?  CALL 1-___-___-____ TOLL-FREE, OR VISIT www. _____.com.

- 6 -

**EXHIBIT 9**

The Settlement website (www. _____.com) will post important scheduling updates.  You can always call us toll-free at 1-___-___-____ or send an e-mail to mail@_____.com to learn the status.  You may also contact Class Counsel as follows: Stephanie A. Casey, phone – 305-476-7400, email – scasey@colson.com; or Maria D. Garcia, phone - 305-372-1800, email – mgarcia@kttlaw.com.  .

| **14.   What if I disagree with the amount of my payment?** |
|---|

If you submit a Settlement Claim that is denied in whole or in part, the Claims Administrator will send you a written explanation of the denial by First Class Mail.  The denial notice will also inform you that you have a right to appeal if you disagree with the Claims Administrator's decision.  **You will have thirty days in which to send the Claims Administrator a written appeal that explains why you disagree with the decision, which you must send by e-mail or First-Class Mail to the Claims Administrator.**  The Claims Administrator will provide copies to Class Counsel and Defendant's Counsel who will then review your appeal and meet to discuss whether your appeal should be granted.  In the event the Parties' counsel cannot agree, they will submit the appeal to the Court for entry of a final, binding, and non-appealable ruling.

| **15.   What am I giving up to get a payment?** |
|---|

Unless you exclude yourself, you will remain in the Class, and that means that you can't be part of any other lawsuit against Defendant or any "Affiliated Entities" (as that term is defined in the Settlement Agreement) about the legal issues in *this* case.  It also means that all of the Court's orders will apply to you and legally bind you.  If you remain in the Class, you will agree to release Defendant and the Affiliated Entities from claims as described in Paragraph 15 of the Settlement Agreement.

A complete copy of the Settlement Agreement can be obtained at www. _____.com.  The Settlement Agreement specifically describes the Released Claims in necessarily accurate legal terminology.  Talk to Class Counsel (see Question 20) or your own lawyer if you have questions about the Released Claims or what they mean.  Please note that you are free to hire your own lawyer with respect to the Settlement at your own expense, which is not reimbursable through Defendant or otherwise.

---

**EXCLUDING YOURSELF FROM THE SETTLEMENT**

---

If you don't want a payment from this Settlement, but you want to keep the right to sue Defendant on your own about the legal issues in this case, then you must take steps to exclude yourself from this Settlement.  Excluding yourself from this Settlement is sometimes referred to as "opting out" of the Class.

| **16.   How do I exclude myself from the Settlement?** |
|---|

If you exclude yourself from the Class by "opting out" you won't get any money or benefits from this Settlement.  However, you will retain any right you currently have to make your own claim against the settling Defendant.

To exclude yourself from the Settlement, you must send a letter to the Claims Administrator by First Class Mail with a clear statement that you want to be excluded from the *Prolow v. Aetna Life Ins. Co., et al.* settlement.

Be sure to include your name, address, telephone number, and your signature.  If you are sending the request to be excluded as the "Legally Authorized Representative" of a Settlement Class Member (see Question 17 for the definition of that term), you must include any information or documents that confirm your appointment or status as a Legally Authorized Representative.  Requests for exclusion must be signed and include the individual's name, address, and telephone number, and expressly state the desire to be excluded from the Class.  Requests for exclusion must be submitted individually by a Settlement Class Member or his or her Legally Authorized Representative, and not on behalf of a group or class of persons.  If you have a personal lawyer, your lawyer may assist you with your exclusion request, but you must sign the exclusion request, unless the lawyer is also your Legally Authorized Representative.

You must mail your exclusion request **post-marked no later than _____,** to:

---

QUESTIONS?  CALL 1-___-___-____ TOLL-FREE, OR VISIT www. _____.com.

- 7 -

**EXHIBIT C**

P.O. Box _____

_____,___ _____

| 17. What is a "Legally Authorized Representative"? |
|---|

"Legally Authorized Representative" means an administrator/administratrix or executor/executrix of the estate of a deceased Settlement Class Member, a guardian or conservator of an incapacitated Settlement Class Member or any other legally appointed person or entity having legal power of attorney for the business affairs of a Settlement Class Member. A Legally Authorized Representative does not include a professional objector or claim filing or similar service purporting to act on behalf of an individual Settlement Class Member or group of Settlement Class Members.

| 18. If I don't exclude myself, can I sue the Defendant for the same thing later? |
|---|

No. Unless you exclude yourself, you give up any right to sue the Defendant or the Affiliated Entities for the claims at issue in this Action. If you have a pending lawsuit or dispute against Aetna, speak to your lawyer in that case immediately. If you do have a pending lawsuit or dispute against Aetna that involves claims being released through this Settlement, you must exclude yourself from *this* Class to continue your own pending lawsuit. **Remember, the exclusion deadline is _____, 20__.**

| 19. If I exclude myself, can I get a payment from this Settlement? |
|---|

No. If you exclude yourself, you are not eligible for a payment under the Settlement.

| **THE LAWYERS REPRESENTING YOU** |
|---|

| 20. Do I have a lawyer in this case? |
|---|

The Court has approved the following lawyers and their respective law firms as Class Counsel to represent you and the other Settlement Class Members if you do not choose to exclude yourself from the Settlement:

| | |
|---|---|
| Stephanie A. Casey | Maria D. Garcia |
| COLSON HICKS EIDSON, P.A**.** | KOZYAK TROPIN & THROCKMORTON, LLP |
| 255 Alhambra Circle, Penthouse | 2525 Ponce de Leon, 9th Floor |
| Coral Gables, Florida 33134 | Coral Gables, Florida 33134 |
| Tel.: (305) 476-7400 | Tel.: (305) 372-1800 |
| Fax: 305) 476-7444 | Fax: (305) 372-3508 |
| Email: scasey@colson.com | Email: mgarcia@kttlaw.com |

| 21. How will the lawyers be paid? |
|---|

Class Counsels' fees and costs will be determined by the Court and will be paid by Defendant separate and apart from your individual recovery. You will not be charged for Class Counsels' work in securing the Settlement benefits for you and the other Settlement Class Members. You owe nothing if you participate in the Settlement. If you want to be represented by your own lawyer, you may hire one at your own expense.

Class Counsel will ask the Court for an award of attorneys' fees and expenses that does not exceed $1,675,000. This amount includes attorneys' fees and litigation expenses. The Court may award and allow payment of less than this amount. Any award of attorneys' fees and expenses will ***not*** impact or reduce any payments issued to the Settlement Class Members. Defendant has agreed not to oppose the request for Class Counsel fees and expenses up to the stated amount.

QUESTIONS? CALL 1-___-___-____ TOLL-FREE, OR VISIT www. _____.com.

- 8 -

**EXHIBIT 9**

---

**OBJECTING TO THE SETTLEMENT**

---

If you are a Settlement Class Member and do not exclude yourself, you can tell the Court that you don't agree with the Settlement or some part of it.

| **22.   How do I tell the Court that I object to the Settlement?** |
| --- |

If you're a Settlement Class Member (or a Settlement Class Member's Legally Authorized Representative, see Question 17), and you haven't excluded yourself from the Settlement, you can—but don't have to—object to the Settlement. You can give reasons why you think the Court should not approve any aspect of it. The Court will consider your views. For the Court to consider a notice of intent to object to the Settlement, it must: (a) contain a heading which includes the name of the case and case number (*Prolow v. Aetna Life Ins. Co.*, Case No. 9:20-cv-80545); (b) provide the Settlement Class Member's full name, address, telephone number, and signature; (c) be filed with the Clerk of Court (at the address below) no later than _____; (d) be served on Class Counsel and Defendant's Counsel at the addresses below by First Class Mail, post-marked no later than _____; (e) contain the name, address, bar number and telephone number of the objecting Settlement Class Member's counsel, if represented by an attorney; (f) state whether the objection applies only to the objecting Settlement Class Member, to a specific subset of the Class, or to the entire Class; (g) contain a detailed statement of the position(s) the objector wishes to assert, including the factual and legal grounds for the position(s); and (h) include any documents that the objector wishes to submit in support of his/her position(s). In addition, if you or your attorney wish to request permission to speak at the Final Approval Hearing, you must follow the instructions in Question 26 below.

| **Address of Class Counsel:** | **Address of Defendant's Counsel:** |
| --- | --- |
| Stephanie A. Casey, Esq.<br>COLSON HICKS EIDSON, P.A.<br>255 Alhambra Circle, Penthouse<br>Coral Gables, Florida 33134 | Ardith Bronson, Esq.<br>DLA Piper LLP (US)<br>200 South Biscayne Blvd., Suite 2500<br>Miami, Florida 33131 |
| And | And |
| Maria D. Garcia, Esq.<br>Robert Neary, Esq.<br>KOZYAK TROPIN &<br>THROCKMORTON, LLP<br>2525 Ponce de Leon, 9th Floor<br>Coral Gables, Florida 33134 | Brian Benjet, Esq.<br>DLA Piper LLP (US)<br>One Liberty Place<br>1650 Market Street, Suite 4900<br>Philadelphia, Pennsylvania 19103 |
| **Address of Court:** | And |
| Clerk of Court<br>United States District Court for the<br>Southern District of Florida<br>Paul G. Rogers Federal Building and U.S.<br>Courthouse<br>701 Clematis Street, Room 202<br>West Palm Beach, FL 33401 | Mark C. Nielsen, Esq.<br>Paul J. Rinefierd, Esq.<br>GROOM LAW GROUP, CHARTERED<br>1701 Pennsylvania Ave. NW<br>Washington, D.C. 20006 |

Any comments or objections, which do not comply with the above or are not timely served on all counsel listed above will not be considered by the Court.

---

QUESTIONS?  CALL 1-___-___-____ TOLL-FREE, OR VISIT www. _____.com.

EXHIBIT C

| **23. What's the difference between objecting and excluding yourself?** |
|---|

Objecting is simply telling the Court that you don't like something about the Settlement. You can object only if you stay in the Class. Excluding yourself is telling the Court that you don't want to be part of the Class. If you object, and the Court approves the Settlement anyway, you will still be legally bound by the result. If you exclude yourself, you have no basis to object, because the case no longer affects you.

| **THE COURT'S FINAL APPROVAL HEARING** |
|---|

The Court will hold a hearing called a "Final Approval Hearing" (also known as a "Fairness Hearing") to decide whether to approve the Settlement.

| **24. When and where will the Court decide whether to approve the Settlement?** |
|---|

The Court will hold a Final Approval Hearing to decide whether to finally approve the proposed Settlement.

The Final Approval Hearing will be on _____, at _____ _.m. **(Eastern time)** before Judge Kenneth A. Marra, United States District Court for the Southern District of Florida, Paul G. Rogers Federal Building and U.S. Courthouse, 701 Clematis Street, Courtroom #4, West Palm Beach, FL 33401.

At this Hearing, the Court will consider whether the proposed Settlement and all of its terms are adequate, fair, and reasonable. If there are valid objections, the Court will consider them. The Court may listen to Settlement Class Members (or their individual attorneys) who have asked for permission to speak at the Hearing and complied with the other requirements for objections explained in Question 22 above. The Court may also decide how much to award Class Counsel for fees and expenses for representing the Class.

At or after the Hearing, the Court will decide whether to finally approve the proposed Settlement. There may be appeals after that. We do not know how long these decisions will take.

The Court may change deadlines listed in this Notice without further notice to the Class. To keep up on any changes in the deadlines, please contact the Claims Administrator or review the website.

| **25. Do I have to come to the Hearing?** |
|---|

No. Class Counsel will answer any questions asked by the Court, but you are welcome to come at your own expense. If you intend to have a lawyer appear at your expense and speak to the Court on your behalf at the Final Approval Hearing, your lawyer must enter a written notice of appearance of counsel with the Clerk of Court no later than _____, and you must comply with all of the requirements explained in Question 26.

If you send an objection, you don't have to come to Court to talk about it. So long as you submitted your written objection on time and complied with the other requirements for a proper objection, the Court will consider it.

| **26. May I speak at the Hearing?** |
|---|

You may attend and you may ask the Court to speak, but you don't have to do either one.

If you submitted a proper written objection to the Settlement, you or your lawyer acting on your behalf may ask the Court for permission to speak at the Hearing. To do so, you or your lawyer must submit a Notice of Intention to Appear. The Notice of Intention to Appear must include copies of any papers, exhibits, or other evidence that you (or your lawyer) plan to present to the Court in connection with the Final Approval Hearing. Your Notice of Intention to Appear must be mailed to Class Counsel and Defendant's Counsel so that it is **post-marked no later than** _____, and it must be **filed** with the Clerk of Court by that same date. See Question 22 for the addresses. You cannot speak at the Hearing if you do not submit an objection and Notice of Intention to Appear, or if you excluded yourself from the Settlement.

QUESTIONS? CALL 1-___-___-____ TOLL-FREE, OR VISIT www. _____.com.

- 10 -

**EXHIBIT C**

| |
|---|
| **IF YOU DO NOTHING** |

| |
|---|
| **27.   What happens if I do nothing at all?** |

If you do nothing, you will get no money from this Settlement, but will remain bound by its terms.  **To receive a payment you must complete and submit a qualifying Settlement Claim Form by _____.**  See Question 10.

| |
|---|
| **GETTING MORE INFORMATION** |

| |
|---|
| **28.   How do I get more information about the Settlement?** |

You may obtain additional information by:

- Calling the Claims Administrator toll-free at 1-___-___-____ to ask questions and receive copies of documents, e-mailing the Claims Administrator at .

- Writing to the Claims Administrator at the following address:

  _____
  P.O. Box _____
  _____, __ _____

- Visiting the Settlement website at www._____.com, where you will find answers to common questions about the Settlement plus other information to help you.

- Reviewing legal documents that have been filed with the Clerk of Court in this lawsuit at the Court offices stated in Question 22 above during regular office hours.

- Contacting Class Counsel listed in Question 22 above.

**PLEASE DO NOT CALL THE JUDGE OR THE CLERK OF COURT TO ASK QUESTIONS ABOUT THIS LAWSUIT OR NOTICE.**

**THE COURT WILL NOT RESPOND TO LETTERS OR TELEPHONE CALLS. IF YOU WISH TO ADDRESS THE COURT, YOU MUST FILE AN APPROPRIATE PLEADING OR MOTION WITH THE CLERK OF COURT IN ACCORDANCE WITH THE COURT'S USUAL PROCEDURES.**

QUESTIONS?  CALL 1-___-___-____  TOLL-FREE, OR VISIT www. _____.com.

- 11 -

# CHANGE OF ADDRESS FORM

**If you are the intended recipient of this Notice, but your address has changed from the address to which it was sent, you should fill out and return this Change of Address Form and mail it to the Claims Administrator so that it is <u>post-marked</u> by _____ and mailed to the following address:**

**_____**
**P.O. Box _____**
**____, ___ _____**

**Alternatively, you may fill out a Change of Address Form on the Settlement website, www._____.com, by _____.**

**If you are a Settlement Class Member's Legally Authorized Representative,\* please fill out the form below, and <u>also</u> provide your information on the next page.**

**Last Name of Settlement Class Member:**      **First Name:**      **Middle Initial:**

**Current Mailing Address of Settlement Class Member:**

**City:**      **State:**      **Zip Code:**

**Contact Phone Number of Settlement Class Member:**

**\*These terms are further explained in the attached Notice.**

## FOR LEGALLY AUTHORIZED REPRESENTATIVES

Also fill out this page <u>only</u> if you are filling out the Change of Address Form <u>on behalf of</u> a Settlement Class Member as that Settlement Class Member's Legally Authorized Representative.

(a) Are you the personal representative of a deceased Settlement Class Member?     Yes O     No O

   If so, provide the date of the Settlement Class
   Member's death:   [  ][  ] / [  ][  ] / [  ][  ][  ][  ]

(b) Are you a guardian, conservator, or attorney in fact of an incapacitated Settlement Class Member?                                                    Yes O     No O

(c) Are you, or are you an agent of a claim filing service, or similar service purporting to act on behalf of an individual Settlement Class Member or group of Settlement Class Members?
                                                    Yes O     No O

Please provide **YOUR** information:

Last Name
[                                ]          First Name
[                                ]

Mailing Address
[                                              ]

City
[                              ]          State
[    ]          Zip Code
[          ]

Contact Phone Number:
[   ][   ][   ] — [   ][   ][   ] — [   ][   ][   ][   ]

**IMPORTANT:  If you are submitting this Change of Address Form on behalf of a Settlement Class Member, please also submit with this Form documents to prove that you are authorized to submit this Form on behalf of that Settlement Class Member (for example, estate documents, powers of attorney, death certificates, etc.).**

**EXHIBIT 1**

| CPT Code | PBT TREATMENT CODES |
|---|---|
| 77261 | THERAPEUTIC RADIOLOGY TREATMENT PLANNING SIMPLE |
| 77262 | THERAPEUTIC RADIOLOGY TREATMENT PLANNING INTERMEDIATE |
| 77263 | THERAPEUTIC RADIOLOGY TREATMENT PLANNING COMPLEX |
| 77280 | THERAPEUTIC RADIOLOGY SIMULATION-AIDED FIELD SETTING SIMPLE |
| 77285 | THERAPEUTIC RADIOLOGY SIMULATION-AIDED FIELD SETTING INTERMEDIATE |
| 77290 | THERAPEUTIC RADIOLOGY SIMULATION-AIDED FIELD SETTING COMPLEX |
| 77293 | RESPIRATORY MOTION MANAGEMENT SIMULATION |
| 77295 | 3-D RADIOTHERAPY PLAN DOSE-VOLUME HISTOGRAMS |
| 77300 | BASIC RADIATION DOSIMETRY CALCULATION |
| 77301 | RADIOTHERAPY DOSE PLAN IMRT |
| 77306 | TELETHERAPY ISODOSE PLAN SIMPLE |
| 77307 | TELETHERAPY ISODOSE PLAN CPLX |
| 77316 | BRACHYTHERAPY ISODOSE PLAN SIMPLE |
| 77317 | BRACHYTHERAPY ISODOSE INTERMED |
| 77318 | BRACHYTHERAPY ISODOSE COMPLEX |
| 77321 | SPECIAL TELETHERAPY PORT PLAN, PARTICLES, HEMIBODY, TOTAL BODY |
| 77331 | SPECIAL DOSIMETRY |
| 77332 | TREATMENT DEVICES, DESIGN AND CONSTRUCTION; SIMPLE |
| 77333 | TREATMENT DEVICES, DESIGN AND CONSTRUCTION; INTERMEDIATE |
| 77334 | TREATMENT DEVICES, DESIGN AND CONSTRUCTION; COMPLEX |
| 77370 | SPECIAL MEDICAL RADIATION PHYSICS CONSULTATION |
| 77427 | RADIATION TREATMENT MANAGEMENT, 5 TREATMENTS |
| 77431 | RADIATION THERAPY MANAGEMENT WITH COMPLETE COURSE OF THERAPY CONSISTING OF 1 OR 2 FRACTIONS ONLY |
| 77520 | PROTON TREATMENT DELIVERY; SIMPLE, WITHOUT COMPENSATION |
| 77522 | PROTON TREATMENT DELIVERY; SIMPLE, WITH COMPENSATION |
| 77523 | PROTON TREATMENT DELIVERY; INTERMEDIATE |
| 77525 | PROTON TREATMENT DELIVERY; COMPLEX |

**EXHIBIT F**

| CPT Code | PBT TREATMENT CODES |
|---|---|
| 77261 | THERAPEUTIC RADIOLOGY TREATMENT PLANNING SIMPLE |
| 77262 | THERAPEUTIC RADIOLOGY TREATMENT PLANNING INTERMEDIATE |
| 77263 | THERAPEUTIC RADIOLOGY TREATMENT PLANNING COMPLEX |
| 77280 | THERAPEUTIC RADIOLOGY SIMULATION-AIDED FIELD SETTING SIMPLE |
| 77285 | THERAPEUTIC RADIOLOGY SIMULATION-AIDED FIELD SETTING INTERMEDIATE |
| 77290 | THERAPEUTIC RADIOLOGY SIMULATION-AIDED FIELD SETTING COMPLEX |
| 77293 | RESPIRATORY MOTION MANAGEMENT SIMULATION |
| 77295 | 3-D RADIOTHERAPY PLAN DOSE-VOLUME HISTOGRAMS |
| 77300 | BASIC RADIATION DOSIMETRY CALCULATION |
| 77301 | RADIOTHERAPY DOSE PLAN IMRT |
| 77306 | TELETHERAPY ISODOSE PLAN SIMPLE |
| 77307 | TELETHERAPY ISODOSE PLAN CPLX |
| 77316 | BRACHYTHERAPY ISODOSE PLAN SIMPLE |
| 77317 | BRACHYTHERAPY ISODOSE INTERMED |
| 77318 | BRACHYTHERAPY ISODOSE COMPLEX |
| 77321 | SPECIAL TELETHERAPY PORT PLAN, PARTICLES, HEMIBODY, TOTAL BODY |
| 77331 | SPECIAL DOSIMETRY |
| 77332 | TREATMENT DEVICES, DESIGN AND CONSTRUCTION; SIMPLE |
| 77333 | TREATMENT DEVICES, DESIGN AND CONSTRUCTION; INTERMEDIATE |
| 77334 | TREATMENT DEVICES, DESIGN AND CONSTRUCTION; COMPLEX |
| 77370 | SPECIAL MEDICAL RADIATION PHYSICS CONSULTATION |
| 77427 | RADIATION TREATMENT MANAGEMENT, 5 TREATMENTS |
| 77431 | RADIATION THERAPY MANAGEMENT WITH COMPLETE COURSE OF THERAPY CONSISTING OF 1 OR 2 FRACTIONS ONLY |
| 77520 | PROTON TREATMENT DELIVERY; SIMPLE, WITHOUT COMPENSATION |
| 77522 | PROTON TREATMENT DELIVERY; SIMPLE, WITH COMPENSATION |
| 77523 | PROTON TREATMENT DELIVERY; INTERMEDIATE |
| 77525 | PROTON TREATMENT DELIVERY; COMPLEX |