## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### Case No. 20-80545-CIV-MARRA

SHARON PROLOW and
MARK LEMMERMAN,
on behalf of themselves and
all others similarly situated,

                Plaintiffs,

      v.

AETNA LIFE INSURANCE
COMPANY,

                Defendant.

_____/

### PLAINTIFF'S MOTION FOR FINAL APPROVAL
### OF CLASS SETTLEMENT AND TO CERTIFY SETTLEMENT CLASS
### <u>AND INCORPORATED MEMORANDUM OF LAW</u>

Plaintiff Mark Lemmerman, on behalf of the Settlement Class,[1] respectfully requests that the Court (1) grant final approval of the Settlement and certify the Settlement Class; (2) grant Class Counsel's unopposed application for attorneys' fees and costs; and (3) approve a separate, agreed-upon general release payment to Lemmerman.

## I.    INTRODUCTION

The Settlement before this Court is not only fair, reasonable, and adequate, as the Court found at the preliminary approval stage, but the reaction of the Settlement Class has been overwhelmingly positive.  The preliminary claims rate is **over 50%** of the Settlement Class. Further, to date, the Claims Administrator has received **no** objections to any aspect of the Settlement and **no** requests for exclusion from the Settlement.

The Parties negotiated an excellent Settlement that provides Settlement Class Members ample relief for the damages alleged.[2] The Settlement makes available $3,408,000 to the Settlement Class Members for the payment of Settlement Claims. Settlement Class Members who filed valid claims are entitled to reimbursement of up to $48,000 for proton beam radiation ("PBT") for the treatment of localized prostate cancer. Settlement administration costs, attorneys' fees, litigation costs, and a general release payment to Lemmerman are to be paid by ALIC separately from the amounts Settlement Class Members may recover under the Settlement. The Parties negotiated the Settlement at arms' length after robust discovery when they had the necessary information to evaluate the risks of continued litigation. The Court should grant final approval.

The Notice Program, which included two rounds of direct mail notice that reached 100% of the 71 potential Settlement Class Members, and included a Settlement website and toll-free number, fulfills the requirements of Rule 23 and Due

---

[1] The Settlement Agreement ("SA" or "Settlement"), including all exhibits thereto, is attached to this Motion as Exhibit 1. Unless otherwise defined, all capitalized terms shall have the same definitions and meanings as set forth in the Settlement.

[2] As set forth previously, the Settlement and this Motion are not, and shall not, in any way be construed as an admission or evidence of wrongdoing or violation by ALIC.

Process as the best notice practicable under the circumstances. To date, the Claims Administrator has identified thirty-seven potential Settlement Class Members who have submitted claims (or 52.11% of the Settlement Class). The Claims Administrator is continuing to evaluate the submitted claim forms and Plaintiff will submit an update of that process prior to the Final Approval Hearing.

## II.   BACKGROUND AND PROCEDURAL HISTORY

This case arises from ALIC's denial of coverage for PBT treatment for the treatment of localized prostate cancer. This matter commenced on March 31, 2020, by Plaintiff Sharon Prolow only. (ECF No. 1.) Plaintiff alleged that ALIC systematically applied its PBT medical guidelines to deny PBT on the basis that it was "unproven" or "not medically necessary." Plaintiff alleged that, in doing so, ALIC ignored the recommendation from Settlement Class Members' oncologists and generally accepted medical standards that PBT is an established, effective, and medically appropriate treatment of cancer. (*Id*.)

On April 28, 2021, Plaintiff Mark Lemmerman was added as a plaintiff in a Second Amended Complaint. (ECF No. 67.) To streamline the case, Plaintiffs subsequently filed a Third Amended Complaint ("TAC") to conform to additional evidence produced in the case and remove allegations related to dismissed counts; the TAC was filed with ALIC's consent pursuant to Rule 15(a)(2). (ECF No. 83.) The TAC, which is the operative complaint in this case, alleges ALIC violated ERISA, 29 U.S.C. § 1132. (*Id*.)

On November 1, 2021, ALIC filed a motion for summary judgment on Plaintiffs' individual claims, and Plaintiffs filed a cross motion for partial summary judgment as to ALIC's liability with regard to Plaintiffs' individual claims. (ECF Nos. 110, 112.) The Court denied ALIC's motion and granted Plaintiffs' cross motion, finding ALIC liable to Plaintiffs on their individual claims. (ECF No. 138.)

The parties engaged in extensive class discovery, including the exchange of over 796,000 pages of documents, data related to individual precertification requests and claims for PBT treatment, interrogatories, requests for admissions, third-party discovery, as well as extensive motion practice. (*See* ECF No. 272-2, at ¶ 9-12.)

Upon the parties' joint motion, on April 10, 2023, the Court entered an Order staying all deadlines in this case pending mediation. (ECF Nos. 235, 236.) The parties mediated with Harry Schafer, Esq., an experienced mediator with extensive knowledge of healthcare-related class action issues, over the next 2 years and over five mediation sessions. (*See id*. at ¶ 13-17.)

On November 15, 2024, Plaintiff Prolow dismissed her individual claims against ALIC; the stipulation of dismissal did not affect the claims asserted by Plaintiff Lemmerman. (ECF No. 262.)

On January 31, 2025, the parties informed the Court that they had reached an agreement in principle to settle the remaining claims in this case on a class-wide basis, subject to Court approval. (ECF No. 264.) The parties spent the next several months negotiating the details of the Settlement and executed the Agreement on June 5, 2025. (ECF No. 272-2, at ¶ 19.)

On June 6, 2025, Plaintiffs filed an Unopposed Motion for Preliminary Approval of the Class Settlement. (ECF No. 272.) The Court preliminarily approved the Settlement on June 10, 2025, and authorized dissemination of Notice to the provisionally certified Settlement Class. (ECF No. 275.) A Final Approval Hearing is scheduled for November 18, 2025, at 10:00 am. (ECF No. 275, at 13.)

## III.   SUMMARY OF SETTLEMENT TERMS

### A.   The Definition of the Settlement Class.

The Settlement Class is defined as:

All members, participants, and beneficiaries of ERISA-governed employee welfare benefit plans administered and/or insured by ALIC, diagnosed with Prostate Cancer (specific ICD-10 codes as identified in the Settlement) where (a) the individual was diagnosed with localized prostate cancer, and (b) with respect to proton beam therapy ("PBT") precertification requests submitted after October 9, 2020, had an intact prostate, and (c) received a denial from January 1, 2015, to March 31, 2024, and (d) such denial cites "experimental," "investigational," "unproven" "superior," "superiority," and/or "more effective" as the basis for the denial of the requested PBT delivery code, unless such terms were expressly included in the definition of "medical necessity"/"medically necessary" set forth in the applicable member's Plan Document/Benefits Booklet, who:

3

(1) (a) Had a PBT precertification request submitted prior to the date of service (unless precertification was not required by the applicable Plan Document/Benefits Booklet), and (b) subsequently received PBT for the same diagnosis code with no allowed post-service PBT benefit claim(s), and (c) a denied post-service claim for the delivery of PBT for the same diagnosis code, and (d) had no allowed claims related to the same diagnosis code for an alternative recognized medical treatment (specific Current Procedural Terminology ("CPT") codes as identified in the Settlement) not including claims related to treatment plans that include PBT in combination with another modality (e.g., concurrent chemotherapy radiation),

OR:

(2) (a) Had an approved PBT precertification request, that was submitted prior to the date of service, and (b) subsequently received PBT for the same diagnosis code with no allowed post-service PBT benefit claim(s), and (c) a denied post-service claim for the delivery of PBT for the same diagnosis code, and (d) had no allowed claims related to the same diagnosis code for an alternative recognized medical treatment (specific CPT codes as identified in the Settlement) not including claims related to treatment plans that include PBT in combination with another modality (e.g., concurrent chemotherapy radiation).

(ECF No. 272-1, § 1.D, p. 5-6.) Excluded from the Settlement Class are: (1) individuals who received coverage for PBT or for an alternative recognized medical treatment from another carrier; and (2) individuals who received a final pre-certification or post-service claim denial for an administrative reason (i.e., member not covered under an insured or administered Aetna health benefit plan). (*Id.*)

## B. The Settlement Benefits

The Benefits to the Settlement Class include the following: (1) each Settlement Class Member who timely submits a valid claim form will receive a minimum payment of $12,000, or a maximum payment of $48,000 in reimbursement, upon submission of adequate proof of payment and/or indebtedness for PBT related treatment as defined in the Settlement; (2) Settlement administration costs paid by ALIC separately; and (3) reasonable attorneys' fees and costs up to $1,675,000 paid by ALIC separately.

4

### 1. The Payments to the Settlement Class Members and Cy Pres.

Each Class Member who submits a timely, valid claim form will receive a minimum payment of $12,000. (ECF No. 272-1, § 3.A-C, at p. 17.) However, in the event a Settlement Class Member paid or incurred debt of over $12,000 to receive PBT, that Settlement Class Member is eligible to receive up to $48,000 in reimbursement, upon submission of adequate proof of payment and/or indebtedness for PBT related treatment as defined in the Settlement. (*Id.*) Settlement Class Members filing claims under the Settlement do not have to demonstrate medical necessity for the PBT treatment. (*See id.*, Ex. D [Claim Form].)

ALIC is making a total of $3,408,000 available to the Settlement Class Members for the payment of Settlement Claims. (*Id.* § 3.C, at p. 17.) This amount represents $48,000 multiplied by the 71 potential Settlement Class Members identified through ALIC's records. Thus, no *pro rata* reduction to Class Member recoveries (up to the individual cap of $48,000 for each) will be required. Should there be funds that remain unclaimed or undistributed after the payment of all valid Settlement Claims, an amount up to but not to exceed the total amount paid to the Settlement Class Members with respect to the Settlement Claims (up to the cap of $3,408,000) will be paid as a *cy pres* award to NRG Oncology Foundation, Inc. (*Id.* § 3.E, at p. 18.) Any portion of the Settlement Amount remaining after payment to the Settlement Class Members and payment of the *cy pres* award reverts to ALIC. (*Id.*)

### 2. The Settlement Administration Costs.

Settlement administration costs will be paid by ALIC separately from the amounts Settlement Class Members may recover under the Settlement. (ECF No. 272-1, § 1.FF, at p. 10; ECF No. 272-2, at ¶ 37.)

### 3. Attorneys' Fees and Expenses.

Class Counsel has requested an award of attorneys' fees and costs in the amount of $1,675,000 (ECF No. 276.) The parties did not negotiate Class Counsel's attorneys' fees and costs before reaching an agreement on the terms of relief for the Class. (ECF No. 272-2, at ¶ 20, 35.) Any award of attorneys' fees and costs will be

paid separately by ALIC upon Court approval and will not reduce the payments to the Class. (ECF No. 272-2, at ¶ 37.)

The Class Notice disclosed to Settlement Class Members that Class Counsel would ask the Court for an award of attorneys' fees and expenses that does not exceed $1,675,000. (Affidavit of Bryn Bridley on Settlement Class Notice and Administration [hereinafter "Claims Admin Aff."] Ex. A, attached as Exhibit 1.) Further, the Plaintiff's Motion for Attorneys' Fees and Costs and Approval of General Release Payment was posted on the Settlement Website so that Settlement Class Members could download and read it. (Claims Admin Aff.¶ 8.) To date, there has been **no** objection by any Settlement Class Member to Class Counsel's request for attorneys' fees and costs. (*See* Claims Admin Aff.¶ 10-11.)

### C. The Settlement Class Members' Release.

Upon entry of final judgment, all Settlement Class Members who do not timely opt out agree to give a release to ALIC and its Affiliated Entities of all Released Claims, defined as:

> any and all past, present and future claims, actions, causes of action, rights or liabilities, costs, expenses, losses, debts, or claims, regardless of forum, arising under federal, state, or local statutory or common law or mandate (including without limitation under any law of any state or territory of the United States, including the District of Columbia, and any federal law or principle of common law or equity, or of international foreign law, which is comparable to section 1542 of the California Civil Code) that were raised or could have been raised in the Action, contingent or non-contingent, accrued or unaccrued, known or unknown, arising out of or related to a precertification or post-service claim denial of health insurance coverage for PBT for a Prostate Cancer diagnosis during the Class Period.

(ECF No. 272-1, § 1.AA, at p. 9.)

### D.   The Individual General Release Payment.

Separate and apart from the benefits to the Settlement Class Members, ALIC agreed to make a payment of $15,000 to Plaintiff Mark Lemmerman, upon Court approval, in exchange for a general release of all claims, including claims unrelated to his precertification or post-service claim denials of health insurance coverage for

PBT for his prostate cancer diagnosis during the Class Period (the "Individual General Release"). (ECF No. 272-1, § 1.R, at p. 8; § 26-28, at p. 32-33.) As set forth in the Plaintiffs' Motion, this is not a payment related to the Settlement Claims, nor does it reduce the funds available to the Settlement Class Members. (*See* ECF No. 276.) The Individual General Release payment will be paid by ALIC upon court approval separately from the amounts Settlement Class Members may recover under the Settlement. (ECF No. 272-1, § 1.FF, at p. 10; ECF No. 272-2, at ¶ 37.)

The Class Notice disclosed to Settlement Class Members that Plaintiff would ask the Court for approval of the Individual General Release Payment. (Claims Admin Aff. Ex. A.) Additionally, the Plaintiff's Motion for Attorneys' Fees and Costs and Approval of General Release Payment was posted on the Settlement Website so that Settlement Class Members could download and read it. (Id. ¶ 8.) To date, there has been **no** objection by any Settlement Class Member to the Individual General Release Payment. (*See id*. ¶ 10-11.)

### E.   The Settlement's Notice Plan

Pursuant to the Court's Preliminary Approval Order (ECF No. 275), the Claims Administrator, Atticus Administration ("Atticus"), disseminated direct notice to the 71 potential Settlement Class Members by First Class U.S. Mail on July 25, 2025. (Claims Admin Aff. ¶ 5; ECF No. 272-1, § 11, at p. 24.) Additional address tracing was conducted for four initially undeliverable addresses; thus, 100% of the 71 potential Settlement Class Members are believed to have successfully received Notice Packets by mail. (Claims Admin Aff. ¶ 6.)

Atticus included in the initial mailing a Notice Packet that consisted of the Court-approved Settlement Notice with an exhibit identifying the applicable codes that may be included for a claim in excess of $12,000, Change of Address Form, Legally Authorized Representatives Form, Settlement Claim Form, and a pre-addressed, postage pre-paid return envelope. (*Id*. ¶ 5.) The Settlement Notice contained an overview of the Settlement, the options available to the Settlement Class and the deadlines for electing the available options, the benefits offered, details on the Final Approval Hearing, and where to find more information about the

Settlement. (*Id.*)

The Settlement Claim Form contained sections for each of the payment options offered by the Settlement. (*Id.*) To receive the minimum payment of $12,000, Settlement Class Members must attest that they are authorized to seek payment under the Settlement. (*Id.* at Ex A.) To receive payment over $12,000 up to $48,000, Settlement Class Members must submit a claim form with proof of payment and/or indebtedness for PBT related treatment as defined in the Settlement. (*Id.*)

On September 5, 2025, Atticus sent a reminder mailing by U.S. First Class Mail to 56 of the potential Settlement Class Members who had not yet filed a Settlement Claim or requested exclusion from the Settlement as of that date. (*Id.* ¶ 7.) The reminder informed recipients of the prior Notice Packet mailing, the claim filing deadline, the benefits available to Class Members who file valid Settlement Claims, and the methods by which claim forms could be submitted. (*Id.*) The reminder mailing also included a Settlement Claim Form and a pre-addressed, postage pre-paid return envelope. (*Id.*)

Additionally, on July 25, 2025, Atticus launched a Settlement Website at www.AetnaPBTSettlement.com, to communicate all important information and deadlines about this action, and the website has been accessible since that date. (*See id.* ¶ 8.) The URL address was printed in the Notice Packet as a place where the potential Settlement Class Members could obtain more Settlement information (*Id.*) Settlement Class Members could also complete and submit the forms electronically through the Settlement Website. (*Id.*) The website has received 2,095 visits to date. (*Id.*)

Atticus also established a toll-free telephone number for this matter, where callers can speak to a live customer service representative during normal business hours or leave a voicemail message after hours or when a representative is unavailable and receive a return call from the support team. (*Id.* ¶ 9.) Atticus has received 18 calls on the toll-free line to date. (*Id.*)

As of October 17, Atticus received a total of thirty-seven non-duplicate Claim Forms from individuals on the Class List (or 52.11% of the Settlement Class). (*Id.* ¶

13.) Atticus received twenty-six additional Claim Forms from twenty-three individuals who are not included in the Class List. (*Id*. ¶ 14.) Atticus is in the process of reviewing the Claim Forms and documentation to determine each claim's validity. (*Id*. ¶ 15) To date, Atticus has received zero objections and zero requests for exclusion from the Settlement Class. (*Id*. ¶ 10-11.)

## IV.   THE COURT SHOULD GRANT FINAL APPROVAL OF THE SETTLMENT.

Rule 23(e) requires judicial approval of a class settlement. "Although class action settlements require court approval, such approval is committed to the sound discretion of the district court." *In re U.S. Oil and Gas Litig*., 967 F.2d 489, 493 (11th Cir. 1992). In exercising that discretion, courts are mindful of the "strong judicial policy favoring settlement as well as by the realization that compromise is the essence of settlement." *Bennett v. Behring Corp*., 737 F.2d 982, 986 (11th Cir. 1984).

Here, all Rule 23(e) requirements[3] are satisfied.

### A.   The Court-Approved Notice Program Satisfies Rule 23 and Due Process.

"For a court to exercise jurisdiction over the claims of absent Class members, there must be minimal procedural due process protection." *Perez v. Asurion Corp*., 501 F. Supp. 2d 1360, 1377 (S.D. Fla. 2007). This requires that class members receive notice that is "the best practicable, 'reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" *Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 812 (1985) (quoting *Mullane v. Central Hanover Bank & Trust Co*., 339 U.S. 306, 314-15 (1950)). The "best notice practicable" requirement of Rule 23,

---

[3] The final three Rule 23(e) requirements are quickly disposed of.  The parties have filed the Settlement Agreement with the Court and there are no additional agreements to disclose, Fed R. Civ. P. 23(e)(3). This action was not previously certified under Rule 23(b)(3), nor have there been any settlement revisions or other issues that would require another round of notice for opt-outs, Fed. R. Civ. P. 23(e)(4). And, although Settlement Class Members were provided adequate notice, none objected to the Settlement, Fed. R. Civ. P. 23(e)(5).

however, does not require that every class member actually receive notice. *Juris v. Inamed Corp.*, 685 F.3d 1294, 1321 (11th Cir. 2012). Notice by "United States mail, electronic means, or other appropriate means" is expressly permitted. Fed. R. Civ. P. 23(c)(2)(B). Such notice "should describe the action and the plaintiffs' rights in it," as well as provide each class member "with an opportunity to remove himself from the class by executing and returning an 'opt out' or 'request for exclusion' form to the court." *Phillips Petroleum Co.*, 472 U.S. at 812. But such notice "need not include every material fact or be overly detailed," *Faught v. Am. Home Shield Corp.*, 668 F.3d 1233, 1239 (11th Cir. 2011) (cleaned up).

The Court-approved Notice Program provided the best notice practicable under the circumstances. Atticus disseminated the Notice directly to the 71 potential Settlement Class Members by First Class U.S. Mail, and Atticus mailed a reminder notice in September 2025, to 56 potential Settlement Class Members who had not yet submitted a claim form or request for exclusion at that time. (Claims Admin. Aff. ¶ 5-7.)

As required, the Court-approved notice described "the substantive claims . . . [and] contain[ed] information reasonably necessary to make a decision to remain a class member and be bound by the final judgment." *In re Nissan Motor Corp. Antitrust Litig.*, 552 F.2d 1088, 1104-05 (5th Cir. 1977). The Notice Packet consisted of a Settlement Notice, Settlement Claim Form, and other relevant forms. Claims Admin. Aff. ¶ 5.) The Settlement Notice contained an overview of the Settlement, described the Class, the release, and the amount and proposed distribution of the Settlement benefits, it informed Settlement Class Members of their right to opt-out and object, the procedures for doing so, the time and place of the Final Approval Hearing, and where to find more information about the Settlement. (*Id.*) The Settlement Website, which has been accessible throughout the claims period, also provides information and deadlines about this action, as well as downloadable copies of the Settlement Class Notice and Claim Form, the Settlement Agreement, the Preliminary Approval Order, and the Plaintiff's Motion for Fees and Costs and Approval of the General Release Payment. (*Id.* ¶ 8.)

Atticus believes that 100% of the 71 potential Settlement Class Members received Notice Packets by mail. (*Id.*) This is an outstanding outreach, which fully satisfies Rule 23 and Due Process. *See In re: Sears, Roebuck & Co. Front-Loading Washer Prods. Liab. Litig.*, No. 06 C 7023, 2016 WL 772785, at *7 (N.D. Ill. Feb. 29, 2016) (direct mail notice to about 89% of class members was sufficient); *see also Mendez v. C-Two Grp., Inc.*, No. 13-CV-05914-HSG, 2017 WL 2861118, at *4 (N.D. Cal. July 5, 2017) (finding notice was adequate where 88% of the notices sent were successfully delivered).

In short, Class Members were provided with the best practicable notice "reasonably calculated, under all the circumstances, to apprise [them] of the pendency of the action and afford them an opportunity to present their objections." *Mullane*, 339 U.S. at 314. Notably, no Settlement Class Member has objected to the sufficiency of the Notice Program.

### B. The Settlement is Fair, Reasonable, and Adequate.

"The Court should approve a proposed class action settlement where it is 'fair, adequate and reasonable and is not the product of collusion between the parties.'" *Saccoccio v. JP Morgan Chase Bank, N.A.*, 297 F.R.D. 683, 691 (S.D. Fla. 2014) (quoting *Bennett*, 737 F.2d at 986). Rule 23(e) sets out several factors relevant to determine whether a proposed settlement is fair, reasonable, and adequate, including whether:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3); and
> (D) the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). A

As explained below, the Settlement is fair, reasonable and adequate under

Rule 23(e)(2).

### 1. The Reaction of the Class

The claims, objection, and exclusion period has expired, and the Settlement Class has responded favorably to the settlement preliminarily approved by this Court. As of this date, over 50% of the Settlement Class Members have submitted claims for Settlement Benefits, and no Settlement Class Members have objected to the Settlement or opted out of the Settlement.

"The reaction of the class" is "an important factor for the Court to consider." *Desue v. 20/20 Eye Care Network, Inc.*, No. 21-CIV-61275-RAR, 2023 WL 4420348, at *9 (S.D. Fla. July 8, 2023). The high preliminary claims rate of over 50%, coupled with no objections or opt-outs to date, "evidences the fairness, reasonableness, and adequacy of the Settlement." *M.D. v. Centene Corp., Inc.*, No. 1:18-CV-22372-JB, 2020 WL 7585033, at *7 (S.D. Fla. Oct. 7, 2020).

### 2. The Settlement Is the Result of Adequate Representation by Plaintiff and Class Counsel and Good-Faith, Informed, and Arm's-Length Negotiations.

The first two factors in Rule 23(e)(2)—adequate representation of the Class and arm's-length negotiations—examine "the conduct of the litigation and of the negotiations leading up to the proposed settlement." *See* Fed. R. Civ. P. 23 advisory committee's note to 2018 amendment. The Court must ensure that Plaintiff and Class Counsel "had an adequate information base" before negotiating and entering into the settlement, s*ee* Rule 23(e)(2)(A) advisory committee's note to 2018 amendment, and the settlement "is not the product of collusion between the parties," *Cotton v. Hinton*, 559 F.2d 1326, 1330 (5th Cir. 1977); *see also Lipuma*, 406 F. Supp. at 1318-19, 1324 (S.D. Fla. 2005).

The Court is aware of how zealously the Parties and their counsel litigated this matter for years, prior to reaching the Settlement. (*See* Preliminary Approval Order, ECF No. 275, at 6; *see also* ECF No. 272-1, at ¶ 4-17, 22.) Class Counsel defeated several dispositive motions and obtained partial judgment on Plaintiffs' individual claims, conducted fulsome discovery, including review of hundreds of thousands of

pages of documents, and retained appropriate experts to assist them in developing the claims and evaluating the defenses in the case. (*Id*.) Plaintiff was likewise actively engaged in the litigation by providing relevant documents and materials. (*Id*. ¶ 33-34.)

The contested nature of this case readily shows the lack of fraud or collusion behind the Settlement. *See, e.g., In re Sunbeam Sec. Litig.*, 176 F. Supp. 2d 1323, 1329 n.3 (S.D. Fla. 2001); *Ingram v. Coca-Cola Co.*, 200 F.R.D. 685, 693 (N.D. Ga. 2001) (court had "no doubt that this case has been adversarial, featuring a high level of contention between the parties"); *In re Motorsports Merch. Antitrust Litig.*, 112 F. Supp. 2d 1329, 1338 (N.D. Ga. 2000) ("This was not a quick settlement, and there is no suggestion of collusion."); *Warren v. City of Tampa*, 693 F. Supp. 1051, 1055 (M.D. Fla. 1988) (record showed no evidence of collusion, but to the contrary showed "that the parties conducted discovery and negotiated the terms of settlement for an extended period of time"), *aff'd*, 893 F.2d 347 (11th Cir. 1989).

Moreover, this Settlement was only reached after extensive, arm's-length negotiations between experienced class-action attorneys with an experienced mediator. (ECF No. 272-2, at ¶ 4-17, 22.) The negotiations were informed by a well-developed factual record, including additional documents produced during the mediation process (ECF No. 272-2, at ¶ 16), which enabled Class Counsel to make a reasoned judgment as to the Settlement. *See In re General Motors Corp. Pick-up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 813 (3d Cir. 1995) (considering "the degree of case development that class counsel have accomplished prior to settlement" to ensure that "counsel had an adequate appreciation of the merits of the case before negotiating"); *see also Wilson v. EverBank*, 2016 WL 457011, at *6 (S.D. Fla. Feb. 3, 2016) (noting that settlement facilitated by a mediator weighs heavily in favor of approval).

This Settlement was achieved in a procedurally fair manner and in the absence of collusion.

13

### 3. The Settlement Provides Significant Relief to Settlement Class Members.

Under Rule 23(e)(2)(C) courts consider whether "the relief provided for the class is adequate," looking at factors including the costs, risks, and delay of trial and appeal, the effectiveness of any proposed method of distributing relief to the class, the terms of any proposed award of attorneys' fees, and any other agreements between the parties.[4] Settlements are reasonable even where class members recover only part of their actual losses. *See Behrens v. Wometco Enters., Inc.*, 118 F.R.D. 534, 542 (S.D. Fla. 1988) ("[T]he fact that a proposed settlement amounts to only a fraction of the potential recovery does not mean the settlement is unfair or inadequate.").

As this Court previously recognized, the Settlement is fair, reasonable, and adequate. (ECF No. 275, at 6.) Indeed, the monetary benefits of the Settlement are substantial. The Settlement ensures that Settlement Class Members receive a minimum payment of $12,000 and up to a maximum of $48,000 for PBT. (ECF No. 272-1, § 3.A-C, at p. 17.) Plaintiff's expert's reasonable estimate[5] is that Settlement Class Members will, on average, have paid around $42,975 to $51,570 for PBT for the treatment of prostate cancer. (ECF No. 272-3, at ¶¶ 10-13). No *pro rata* reduction to Settlement Class Member's recoveries will be required under the Settlement. (ECF No. 272-2, at ¶ 29.)

This Settlement compares favorably with other ERISA class action settlements. *See, e.g., Cunningham v. Wawa, Inc.*, 2021 WL 1626482, at *6 (E.D. Pa. Apr. 21, 2021) (finding ERISA settlement where recovery was 18%-28% of maximum losses was in line with other cases); *Hochstadt v. Boston Scientific Corp.*, 708

---

[4] There is no other agreement between the parties required to be identified by Rule 23(e)(3) nor any agreement made in connection with the Settlement that is not memorialized in the Settlement. The Court can determine the fairness and adequacy of the parties' proposal for settlement by looking solely to the Settlement.

[5] For comparison, Plaintiff Lemmerman individually paid $35,036.76 for PBT treatment for his prostate cancer. ALIC neither endorses nor takes a position with respect to Plaintiff's representations, whether herein or in associated declarations, regarding the typical costs for PBT treatment of localized prostate cancer.

F.Supp.2d 95, 109 (D. Mass 2010) (holding over objection of class member that 27% recovery was "plainly reasonable" in ERISA class action involving allegations of misleading disclosures). Given the notoriously complex nature of ERISA cases, courts approving ERISA settlements have described settlements of 29% to be "an exceptional result" *See, e.g., Marshall v. Northrop Grumman Corp.*, 2020 WL 5668935, \*2–3 (C.D. Cal. Sept. 18, 2020); *see also Hurtado v. Rainbow Disposal Co., Inc.*, 2021 WL 2327858, at \*4 (C.D. Cal. May 21, 2021) (ERISA settlement between 23% and 34% of maximum losses was an "impressive result").

Moreover, when evaluating the terms of the settlement in relation to the likely benefits of a successful trial, "the trial court is entitled to rely upon the judgment of experienced counsel for the parties." *Cotton*, 559 F.2d at 1330. "Indeed, the trial judge, absent fraud, collusion, or the like, should be hesitant to substitute its own judgment for that of counsel." *Id.* While Class Counsel are confident in the strength of their class case and were able to obtain partial judgment on the merits of the Plaintiff's individual claim, they recognize ALIC has mounted a vigorous defense, and there are always risks and delays inherent to litigation. Plaintiff expects ALIC would vigorously oppose class certification, challenge Plaintiff's class-wide liability and damages theories, and provide its own experts. The Settlement saves Plaintiff and the Settlement Class from facing these substantial obstacles and eliminates the significant risk that they would recover nothing at all after several more years of litigation and appeals. (ECF No. 272-2, at ¶¶ 26, 31-32.) *See, e.g., Lipuma*, 406 F. Supp. 2d at 1322 (likelihood that appellate proceedings could delay class recovery "strongly favor[s]" approval of a settlement). Facing these headwinds, the results achieved for the Settlement Class are extraordinary. This Settlement provides immediate and substantial relief and is therefore reasonable and adequate.

Further, as this Court previously recognized, "the method of distributing the Settlement Payments is efficient, relying on ALIC's records and requiring the timely submission of a straightforward Settlement Claim Form and supporting documentation for Settlement Class Members." (ECF No. 275, at 7.) Settlement Class Members had the ability to submit a Claim Form and supporting documents online

or by mail. After reviewing claims for completeness and eligibility, the Claims Administrator will disburse funds accordingly.

Finally, the requested attorneys' fees and costs are reasonable and not the result of collusion. As part of the Settlement, Class Counsel agreed not to seek payment of any amount of attorneys' fees and costs in excess of $1,675,000, and ALIC agreed not to oppose Plaintiff's request for an award of attorneys' fees and costs of up to $1,675,000. The parties did not negotiate Class Counsel's attorneys' fees and costs before reaching an agreement on the terms of relief for the Class, and fees and costs were negotiated through mediator Harry Schafer. (ECF No. 272-2, at ¶ 20, 35.) *See Poertner v. Gillette Co.*, 618 F. App'x 624, 630 (11th Cir. 2015) (record refuted self-dealing where "the parties settled only after engaging in extensive arms-length negotiations moderated by an experienced, court-appointed mediator"); *James D. Hinson Elec. Contracting Co., Inc. v. BellSouth Telecomm. Inc.*, No. 3:07-cv-598, 2012 WL 12952592, at *2 (M.D. Fla. July 30, 2012) (because agreement as to amount of attorneys' fees "was not reached until after a settlement had been reached in principle on its other terms and that the agreement was not the product of collusion or fraud[,]" it was entitled to "substantial weight"). Class Counsel has separately filed a motion in support of their request for attorneys' fees and costs. (ECF No. 276.)

### 4. The Settlement Treats All Settlement Class Members Equitably

Rule 23(e)(2)(D) considers "whether the apportionment of relief among Class Members take[s] appropriate account of differences among their claims." *See* Rule 23(e)(2)(D) advisory committee's note to 2018 amendment. This factor "requires equity, not equality, and treating class members equitably does not necessarily mean treating them all equally." *In re Blue Cross Blue Shield Antitrust Litig.*, 85 F.4th 1070, 1093 (11th Cir. 2023). In other words, "the court's goal is to ensure that similarly situated class members are treated similarly and that dissimilarly situated class members are not arbitrarily treated as if they were similarly situated." Newberg on Class Actions § 13:56.

Here, Settlement Class Members are treated equitably even though the

amounts paid by each Class Member will vary based on their incurred costs. Each Class Member who submits a valid claim is entitled to a minimum payment of $12,000; any payment over that amount is based on the Class Member's PBT expenses, up to $48,000. While the percentages of an individual Class Member's recovery compared to their incurred costs will vary depending on the cost, location, and amount of the PBT treatment, the recovery available to each Settlement Class Member—up to $48,000—is significant and fair. (*See* ECF No. 272-2, at ¶ 30; ECF No. 272-3, at ¶ 4.)

### C. The Court Should Grant Final Certification of the Settlement Class.

In its Preliminary Approval Order, this Court previously found the requirements of Rules 23(a), 23(b)(1), and 23(b)(3) to be satisfied for the Settlement Class. (ECF No. 275, at 2-5.) As neither the Class definition nor the Settlement terms have changed, there is no reason for this Court to depart from its previous findings that certification of the Class is warranted.

### 1. The Class Meets the Requirements of Rule 23(a)

As the Court preliminarily found, the Settlement Class satisfies the Rule 23(a) pre-requisites for class certification: ascertainability, numerosity, commonality, typicality, and adequacy. (ECF No. 275, at 3-5.)

The proposed Class is defined by objective criteria and ascertainable from ALIC's records. In broad strokes, Settlement Class Members must have been covered under an ERISA-governed health plan administered or insured by ALIC; had localized prostate cancer; had an intact prostate for precertification requests submitted after October 9, 2020; and were denied coverage for PBT between January 1, 2015, and March 31, 2024, citing certain clinical reasons. ALIC's records have identified 71 potential Settlement Class Members nationwide, which is sufficient to satisfy numerosity in this Circuit. *See Kilgo v. Bowman Trans.*, 789 F.2d 859, 878 (11th Cir. 1986) (numerosity satisfied where plaintiffs identified at least 31 class members "from a wide geographical area").

The commonality requirement is satisfied because there are many questions of

law and fact common to the Class, including whether ALIC wrongfully denied coverage for PBT by claiming it was "unproven" or "not medically necessary" based on the uniform application of its medical guidelines; and whether such denial of coverage was in violation of Settlement Class Members' materially similar plan terms. *See Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) ("Commonality requires that there be at least one issue whose resolution will affect all or a significant number of the putative class members.").

Plaintiff's claim is coextensive with those of the absent Settlement Class Members, such that the Rule 23(a)(3) typicality requirement is satisfied. Plaintiff, like all Settlement Class Members, was diagnosed with prostate cancer, sought coverage for PBT from ALIC, and was denied coverage. *See Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001) (named plaintiffs are typical of the class where they "possess the same interest and suffer the same injury as the class members"); *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d 1332, 1337 (11th Cir. 1984) (typicality satisfied where claims "arise from the same event or pattern or practice and are based on the same legal theory");

Plaintiff also satisfies the adequacy-of-representation requirement. Adequacy under Rule 23(a)(4) considers (1) whether the proposed class representatives have interests antagonistic to the class; and (2) whether the proposed class counsel has the competence to undertake this litigation. *Fabricant v. Sears Roebuck*, 202 F.R.D. 310, 314 (S.D. Fla. 2001); *Lyons v. Georgia-Pacific Corp. Salaried Emp. Ret. Plan*, 221 F.3d 1235, 1253 (11th Cir. 2000) (quotation omitted). Plaintiff and Settlement Class Members have a coextensive interest in obtaining the relief offered by the Settlement. (ECF No. 272-2, at ¶ 33.) Plaintiff is familiar with the facts of this case and will continue to protect the Class, as he has throughout this litigation. (*Id.* ¶ 36.) Further, Plaintiff is represented by qualified and competent counsel with experience prosecuting class actions and ERISA actions. (*Id.* ¶ 2-3.)

## 2.   The Class Meets the Requirements of Rule 23(b)

As the Court previously found, the Settlement Class meets the requirements of Rule 23(b)(1) and 23(b)(3).

The Settlement Class meets the requirements of Rule 23(b)(1) because the prosecution of separate actions by individual Class Members would create a risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for ALIC. Fed. R. Civ. P. 23(b)(1)(A). For example, some courts may find an ERISA violation, whereas other courts could potentially find ALIC's conduct permissible. Pursuit of similar claims for systemic reform through multiple individual suits would not only be inefficient, it would create a risk that different courts might order divergent or even conflicting relief. If this Court were to find Defendant's policies require Defendant "to act in a certain fashion, ERISA would require [Defendant] to act in a similar fashion toward all beneficiaries—the quintessential (b)(1)(B) scenario." *Z.D. ex rel. J.D. v. Group Health Co-op.*, 2012 WL 1977962, at \*7 (W.D. Wash. June 1, 2012); *see also Tracey v. MIT*, 2018 WL 5114167, at \*6 (D. Mass. Oct. 19, 2018).

The Settlement Class also meets the requirements of Rule 23(b)(3) as the questions of law or fact common to the Settlement Class Members predominate over any questions affecting only individual members, and a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. Fed. R. Civ. P. 23(b)(3); ECF No. 276, at 4-5. Liability questions common to all Settlement Class Members substantially outweigh any possible issues that are individual to each Class Member. The evidence necessary to establish liability is also common to all members of the Class, as they would seek to prove that PBT is a covered treatment for localized prostate cancer, that PBT is a covered treatment for cancer of an intact prostate for precertification requests submitted after October 9, 2020, and ALIC uniformly applied its medical guideline to deny coverage for PBT in a manner inconsistent with generally accepted standards of care and the terms of Settlement Class Members' materially similar plans. And, as this Court preliminarily found, a class action is superior to individual actions because: (i) the interests of certifying the Settlement Class outweigh the interests of the individual Class Members in individually controlling the prosecution or defense of separate actions, (ii) there is no other litigation concerning the controversy already commenced by or against the

Settlement Class, (iii) it is desirable to concentrate the litigation of the claims at issue in this forum, and (iv) the difficulties likely to be encountered in the management of a class action are fewer than if the individual Class Members filed independent actions. (ECF No. 275, at 4-5.)

## V.      CONCLUSION

Plaintiff Mark Lemmerman, on behalf of the Settlement Class, respectfully requests that the Court (1) grant final approval of the Settlement and certify the Settlement Class; (2) grant Class Counsel's unopposed application for attorneys' fees and costs; and (3) approve a separate, agreed-upon general release payment to Lemmerman. A proposed Final Approval Order is attached to this Motion.

Dated: October 17, 2025

Respectfully submitted,

**COLSON HICKS EIDSON**
255 Alhambra Circle, Penthouse
Coral Gables, Florida 33134
Telephone: (305) 476-7400
E-mail: eservice@colson.com

By: **Stephanie A. Casey**
Stephanie A. Casey
Florida Bar No. 97483
scasey@colson.com
Sabrina Saieh
Florida Bar No. 125290
sabrina@colson.com

– and –

**KOZYAK TROPIN & THROCKMORTON, LLP**
2525 Ponce de Leon, 9th Floor
Coral Gables, Florida 33134
Telephone: (305) 372-1800
Facsimile: (305) 372-3508

By: **Robert Neary**
Harley S. Tropin

20

Florida Bar No. 241253
Email: hst@kttlaw.com
Maria D. Garcia
Florida Bar No. 58635
Email: mgarcia@kttlaw.com
Robert Neary
Florida Bar No. 81712
Email: rn@kttlaw.com


*Attorneys for Plaintiff and the Settlement Class*